**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| JOHN C. KITCHIN, JR. and<br>NORTH WEST AUTO BODY COMPANY,<br>*on behalf of themselves and all others*<br>*similarly situated*,<br><br>          Plaintiffs,<br><br>vs.<br><br>BRIDGETON LANDFILL, LLC; REPUBLIC<br>SERVICES, INC.; and ALLIED SERVICES,<br>LLC;<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453, Defendant Bridgeton

Landfill, LLC (on its own behalf and as the merger successor of West Lake Landfill, Inc. [1] and

the merger successor of Rock Road Industries, Inc. ("Rock Road") [2]) ("Bridgeton"), on its own

behalf and with the consent of the other named defendants Republic Services, Inc. ("Republic")

and Allied Services, LLC ("Allied") (collectively, "Defendants"), hereby removes the above-

styled action to this Court from the Circuit Court of St. Louis County, Missouri.  This Court's

jurisdiction arises under both federal question and diversity jurisdiction.  In support of this

removal, Defendant states as follows:

---

[1] West Lake Landfill, Inc. underwent a name change in 1988 and a subsequent merger in 1997, resulting in its merger into Bridgeton Landfill, LLC.  Defendants are not raising as an issue the naming of "West Lake Landfill, Inc." by Plaintiffs at this time, but are not waiving any defenses on this issue and expressly reserve the right to raise any such defenses in future pleadings.  Any reference to the "West Lake Landfill" in this removal denotes the physical site of the West Lake Landfill and is not a reference to the entity once known as West Lake Landfill, Inc.

[2] As of April 9, 2018, Rock Road Industries, Inc. formally merged into Bridgeton Landfill, LLC, a Delaware Limited Liability Company.

## INTRODUCTION

1.      On February 20, 2018, Plaintiffs instituted in the Circuit Court of St. Louis County, Missouri, the instant action styled, *John C. Kitchin, Jr., et al. v. Bridgeton Landfill, LLC., et al.*, Case No. 18SL-CC00613 (the "Lawsuit").

2.      On April 2, 2018, Plaintiffs filed a First Amended Class Action Petition ("the Complaint").

3.      A copy of the Complaint together with the complete file of the action filed in St. Louis County, Case No. 18SL-CC00613, is attached hereto as **Exhibit 1**.  Defendant is unaware of the existence of any process, pleadings, or orders other than the documents included in the exhibits attached hereto.  There are no motions or hearings pending before the Circuit Court of St. Louis County, Missouri in this matter.

4.      Plaintiffs and putative class members are owners of real property in St. Louis County, Missouri and current or former residents of Bridgeton, Missouri. *See* Compl. ¶¶ 9-11, 22, 23, 34, 35.

5.      Plaintiffs allege that, over the span of several decades, radioactive materials were released into the environment in and around the Bridgeton and West Lake Landfills in Bridgeton, Missouri ("the Landfills"), contaminating Plaintiffs' properties with radioactive materials and causing property damage. *Id*. ¶¶ 61-115

6.      Plaintiffs allege Defendants are responsible for radioactive contamination of Plaintiffs' properties, stemming from their operation and maintenance of the Landfills. *Id*. ¶¶ 1, 6, 7, 27-30, 115

7.      Plaintiffs seek to bring claims on behalf of purported classes of property owners and residents within an 11-square mile area in the vicinity of the Landfills. *Id*. ¶¶ 34, 35.

8.      Plaintiffs allege "Defendants recklessly dumped radioactive waste" at the Landfills and contaminated the land of all putative class members. *Id*. ¶ 40.

9.      The nine-count Complaint asserts causes of action for trespass, permanent nuisance, temporary nuisance, negligence, negligence per se, strict liability, civil conspiracy, and also claims for injunctive relief and punitive damages.

10.     Plaintiffs claim they are entitled, as a result of Defendants' alleged conduct to compensation for loss and use of enjoyment of property; annoyance and discomfort; damage to personal property; diminution in the market value of property; as well as costs and expenses supposedly incurred as a result of exposure to radioactive emissions, including costs of remediation and relocation. *Id*. at 44-45.

11.     Plaintiffs also seek double damages for malicious trespass under R.S.Mo. § 537.330 and punitive damages. *Id*. at 45.

12.     Plaintiffs also seek injunctive relief in the form of removal of waste from Plaintiffs' properties, and removal of radioactive waste from the Landfill, and also medical monitoring.  *Id*. at 45; **Exhibit 4** Transcript at 10:14-:25; 35:6-36:5.

<u>**NOTICE OF REMOVAL IS TIMELY**</u>

13.     Plaintiffs filed their original pleading on February 20, 2018 and their amended Complaint on April 2, 2018.

14.     Bridgeton and Allied were served with a copy of the original pleading on March 29, 2018.

15.     Republic was served on March 28, 2018.

16.     This Notice of Removal is timely because it is filed within thirty (30) days of Bridgeton's receipt of service of the original pleading and within one year of the Lawsuit being commenced.

- 3 -

17.     No previous request has been made for the relief requested in this Notice.

18.     All Defendants join in this Notice of Removal. *See* Consents of Republic

Services, Inc. and Allied Services, LLC at **Exhibits 2, 3**.

## FEDERAL QUESTION JURISDICTION EXISTS

19.     Pursuant to 28 U.S.C. § 1331, this Court has subject-matter jurisdiction over this

action because it "arises under" federal law, specifically, the Price-Anderson Act ("PAA" or "the

Act"), 42 U.S.C. § 2011 *et seq.*, which completely preempts Plaintiffs' state-law causes of

action, and also the Comprehensive Environmental Response, Compensation, and Liability Act,

42 U.S.C. § 9601, *et seq.*

20.     Under the artful pleading doctrine, a federal court has jurisdiction if a plaintiff has

carefully drafted the complaint to avoid naming a federal statute as a basis for the claim but

where the claim is, in fact, based on a federal statute. *See Franchise Tax Bd. v. Constr. Laborers*,

463 U.S. 1, 22 (1983) ("A plaintiff may not avoid federal jurisdiction by omitting from the

complaint federal law essential to his or her claim or by casting in state terms a claim that can be

made only under federal law.").

21.     The artful pleading doctrine requires courts to "delve beyond the face of the  state

court complaint and find federal question jurisdiction" by "recharacteriz[ing] a plaintiff's

state-law claim as a federal claim." *Precision Pay Phones v. Qwest Comms. Corp.*, 210 F. Supp.

2d 1106, 1112-13 (N.D. Cal. 2002) (citing *Hunter v. United Van Lines*, 746 F.2d 635, 640 (9th

Cir. 1985)); *see also State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1109 n. 4 (8th

Cir. 1999) (under the artful pleading doctrine, federal courts have subject matter jurisdiction over

purported state law claims if a plaintiff failed to plead a federal right  or immunity that  is  an

essential  element  of cause  of  action); *Missouri v. Webb*, No. 4:11CV1237, 2012 WL 1033414,

at *3 (E.D. Mo. Mar. 27, 2012) ("[u]nder the 'artful pleading' doctrine…a plaintiff may not

defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim," and "[o]nce an area of state law has been completely pre-empted by the operation of a federal statute, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law").

I.      **The PAA Provides an Exclusive, Retroactive Federal Cause of Action that Completely Preempts Plaintiffs' State-Law Claims**

A.      **Plaintiffs Allege Injury Constituting a "Nuclear Incident" and, Therefore, Their Claims are Governed by the Price-Anderson Act**

22.     The allegations in Plaintiffs' Complaint arise from a "nuclear incident" as defined by the PAA.

23.     Under the Act, federal courts have exclusive jurisdiction over "public liability actions." 42 U.S.C. § 2210(n)(2).  A "public liability action…means any suit asserting public liability." 42 U.S.C. § 2014(hh).  "Public liability," in turn, "means any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation[.]" 42 U.S.C. § 2014(w).  A "nuclear incident…means any occurrence…within the United States causing…bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material…." 42 U.S.C. § 2014(q).

24.     "To summarize, a 'public liability action' is a suit in which a party asserts that another party bears any legal liability arising out of an incident in which the hazardous properties of radioactive material caused bodily injury, sickness, or property damage." *McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1186 (E.D. Mo. 2013) (citing *Cotroneo v. Shaw Env't & Infrastructure, Inc.,* 639 F.3d 186, 194 (5th Cir. 2011)).

25.     This case arises from an alleged nuclear incident because it is premised on allegations that radioactive waste caused bodily injury and sickness to Plaintiffs and the putative class members and damage to Plaintiffs' and the putative class members' properties.

26.     Plaintiffs allege their property is "contaminated with radioactive wastes from the Landfill . . . ." Compl. ¶ 9-11.  They allege each of the class members suffered similar damage "due to the contamination of their property by radioactive waste from the West Lake Landfill." *Id*. ¶ 44.

27.     Plaintiffs dedicate at least thirty paragraphs alleging the history of radioactive waste at the Landfill. *Id*. ¶¶ 51-81 (titled "Radioactive Wastes," "Radioactive Waste in the St. Louis Area," "The Landfill," and "Radioactive Waste at the West Lake Landfill").

28.     Plaintiffs also detail how they believe their properties, and the properties of putative class members, are damaged by radioactivity from the Landfill. *Id*. ¶¶ 24, 44, 92-104 (titled "The Spread of Defendants' Radioactive Waste to Off-Site Businesses and Homes"), 106-115 (titled "Defendants' Radioactive Particles Contaminated the Plaintiffs' Property").

29.     Indeed, every count in the Complaint stems from allegations regarding injury purportedly caused by radioactive waste at the Superfund Site. *Id.* ¶¶ 120-125 (Count I); 133-37 (Count II); 146-48 (Count III); 159-161, 163-64 (Count IV); 173, 174 (Count V); 178-183 (Count VI) 185, 187 (Count VII); 193 (Count VIII); 196 (Count IX).

30.     The words "radioactive" and "hazardous" are used, respectively, approximately 172 and 36 times in the Complaint.

31.     Plaintiffs allege Defendants have not properly handled the waste or remediated issues arising from the waste. *Id.* ¶¶ 99-104.  Further, Plaintiffs speculate as to issues or impacts which may occur in the future with the waste at the Site. *Id.* ¶¶ 96, 110.  For example, Plaintiffs

allege concern if the radioactive waste were ever reached by a subsurface exothermic chemical reaction at the Bridgeton Landfill. *Id.* ¶¶ 85, 86, 89.

32.     Plaintiffs allege the radioactive waste has caused them property damage, loss of use and enjoyment of their property, and prospective bodily injury and seek medical monitoring. *Id.* at ¶¶ 128, 141, 152, 164, 174, 180, 189, pp. 44-45.

33.     In short, the factual allegations underlying Plaintiffs' purported injuries of property damage, lost property use, and prospective bodily injury all relate to the Defendants' conduct in connection with nuclear and radioactive materials.  As a result, Plaintiffs' claims arise out of an alleged nuclear incident and, pursuant to the PAA, a public liability action is the "exclusive federal cause of action" for Plaintiffs' alleged "radiation injur[ies]." *See Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1306 (11th Cir. 1998).  Given Plaintiffs' injuries arise from an alleged nuclear incident, liability in this matter is governed by the PAA.

### B.     Plaintiffs' State Law Claims are Preempted

34.     Because they effectively allege a "nuclear incident" under the Act, Plaintiffs' state law claims are completely preempted.  Pursuant to the complete preemption doctrine, while a defendant may not generally remove a case to federal court unless the plaintiff's complaint cites federal law, the Supreme Court has recognized that a "state claim may be removed" if "a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Beneficial Nat'l. Bank v. Anderson*, 539 U.S. 1, 8 (2003).  "This is so because '[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004) (quoting *Beneficial Nat'l Bank*, 539 U.S. at 8).  The PAA "expressly provides for removal of [tort actions arising out of nuclear

accidents] brought in state court even when they assert only state-law claims." *Beneficial Nat'l Bank*, 539 U.S. at 6.

35.     A public liability action under the PAA (i.e. an action asserting liability arising out of the hazardous properties of radioactive materials, *see McClurg*, 933 F. Supp. 2d at 1186) is the exclusive, retroactive federal cause of action governing liability for injuries arising out of nuclear incidents. Pub. L. No. 100-408 § 20 (b)(1), 102 Stat. 1084 ("The amendments made [to judicial review of claims arising out of a nuclear incident] shall apply to nuclear incidents occurring before, on, or after the date of the enactment of this Act."); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1099-1100 (7th Cir. 1994) (holding that under the PAA, as amended, "a state cause of action is not merely transferred to federal court; instead, a new federal cause of action supplants the prior state cause of action").

36.     The Supreme Court has stated the PAA contains an "unusual preemption provision" that "transforms into a federal action" any public liability action. *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 484, 119 S. Ct. 1430, 1437 (1999).

37.     "The Act… provides for removal to a federal court as of right if a putative Price-Anderson action is brought in a state court[.]" *Id.*

38.     "Although the Eighth Circuit has not ruled on the issue of PAA preemption of state-law claims, other appellate courts have exhaustively examined this issue following the 1988 amendments to the PAA, and they have found federal preemption of state-law claims for nuclear incidents." *Dailey v. Bridgeton Landfill, LLC*, No. 4:17 CV 24 CDP, 2017 U.S. Dist. LEXIS 178309, at *12 (E.D. Mo. Oct. 27, 2017).

39.     Indeed, virtually every circuit court to address the issue has concluded the Act completely preempts state law causes of action for public liability resulting from a nuclear

- 8 -

incident. *See In re Berg Litig.*, 293 F.3d 1127, 1132 (9th Cir. 2002); *Roberts*, 146 F.3d at 1306;

*Kerr–McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir. 1997); *Nieman v. NLO, Inc.*, 108

F.3d 1546, 1553 (6th Cir. 1997); *O'Conner,* 13 F.3d at 1100, 1105; *In re TMI Litig. Cases*

*Consol. II* ("*TMI II*"), 940 F.2d 832, 854 (3d Cir. 1991).

40.     "By creating this federal program which requires the application of federal law,

Congress sought to effect uniformity, equity and efficiency in the disposition of public liability

claims." *TMI II*, 940 F.2d at 856-57.  The complex federal framework envisioned by the PAA

included "pervasive federal regulation" that "occupied the entire field of nuclear safety

concerns." *Id.* at 858 (citing *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev.*

*Comm'n*, 461 U.S. 190, 212 (1983)).  "[T]he field of nuclear safety has been occupied by federal

regulation; there is no room for state law." *O'Conner*, 13 F.3d at 1105.  "A claim growing out of

any nuclear incident is compensable under the terms of the Amendments Act or *it is not*

*compensable at all.*" *TMI II*, 940 F.2d at 854 (emphasis in original).

### C.     Plaintiffs' Arguments Regarding the PAA are Incorrect

#### i.     Licenses and Indemnification Agreements Are Not Required

41.     Moreover, Plaintiffs' argument here that licenses and indemnity agreements are

prerequisites to application of the PAA is misguided.  Plaintiffs allege the Act does not apply to

their claims because "[t]he Landfill is not and has never been a licensed nuclear facility" and

"Defendants have never entered into an indemnification agreement[.]" Compl. ¶ 18.

### a.   1988 Amendments Broadened the Act

42.     Prior to 1988, automatic federal jurisdiction under the Act applied only to claims arising out of an "extraordinary nuclear occurrence."[3] *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

43.     The Three Mile Island nuclear power plant accident laid bare the difficulty in the Act's narrow applicability.  Because the accident did not meet the substantiality requirements of an "extraordinary nuclear occurrence," the resulting claims could not be consolidated in federal court. *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 477 (1999).

44.     As a result, Congress amended the Act to broaden federal jurisdiction. *Id.*  The 1988 Amendments Act amended section 2210(n)(2) to read, in relevant part:

45.     With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place…shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy. Upon motion of the defendant…any such action pending in any State court…shall be removed…to the United States district court having venue under this subsection.

46.     Federal jurisdiction now exists "over any actions 'asserting public liability' arising from a 'nuclear incident,' which generally includes any 'occurrence' causing physical harm [or property damage] resulting from the radioactive properties of nuclear materials." *Estate of Ware v. Hosp. of the Univ. of Pa.*, 871 F.3d 273, 279 (3d Cir. 2017) (hereinafter "*Estate of Ware II*") (citing *El Paso*, 5287 U.S. at 279).  The amendments "deliberately increased the scope of the Act's coverage." *Id.*  "[O]ne purpose behind the 1988 amendments was to expand the

---

[3] Under the PAA, an "extraordinary nuclear occurrence" is a release of radioactive material which results in offsite radiation levels and damage *which are found to be substantial in nature* by the Nuclear Regulatory Commission.  *See* 42 U.S.C. § 2014(j).  The substantiality requirement was the component which limited the cases that qualified for PAA jurisdiction in the pre-1988 amendment period.

scope of federal jurisdiction beyond actions arising from 'extraordinary nuclear occurrences' only." *Acuna*, 200 F.3d at 339.

### b.   A License is Not a Prerequisite to Application of the Act

47.     The definition of a "public liability action" does not require the involvement of a licensee.  The PAA applies when an occurrence causes harm to person or property due to radioactive sources. 42 U.S.C. § 2014(q).  "[A] 'public liability action' is a suit in which a party asserts that another party bears any legal liability arising out of an incident in which the hazardous properties of radioactive material caused bodily injury, sickness, or property damage." *McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1186 (E.D. Mo. 2013) (citing *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 194 (5th Cir. 2011)).

48.     Nothing in the PAA or its definition of a "nuclear incident" limits jurisdiction under the Act based on whether a defendant is also a licensee.

49.     Federal courts have repeatedly held that the PAA applies to a broad range of radiation injuries.  "In passing the Price-Anderson Act, Congress recognized that a nuclear incident might be caused by any number of participants in the nuclear industry beyond the actual licensee." *O'Conner v. Commonwealth Edison Co.*, 807 F. Supp. 1376, 1378 (C.D. Ill. 1992), aff'd, 13 F.3d 1090 (7th Cir. 1994). *See also Estate of Ware v. Hosp. of the Univ. of Pa.*, 73 F. Supp. 3d 519, 530 (E.D. Pa. 2014) (hereinafter "*Estate of Ware I*") (expressly rejecting that a public liability claim under the PAA is "limited to nuclear incidents occurring at utilization and production facilities and other licensed facilities") (internal quotations omitted); *Cotromano v. United Techs. Corp.*, 7 F. Supp. 3d 1253, 1257-58 (S.D. Fla. 2014) ("demonstration of a license for radioactive materials is not a prerequisite to federal jurisdiction under the plain language of the [PAA.]"); *Carey v. Kerr-McGee Chem. Corp.*, 60 F. Supp. 2d 800, 804 (N.D. Ill. 1999)

(rejecting argument to limit PAA to release from a facility that is licensed by the NRC and covered by an indemnification agreement).

### c. A Written Indemnification Agreement is Not a Prerequisite to PAA Jurisdiction

50.     Nor does the PAA limit itself to parties to indemnification agreements.

51.     The Act provides that a "person indemnified" by the licensee and the federal government is "the person with whom an indemnity agreement is executed or who is required to maintain a financial protection, **and any other person who may be liable for public liability**." 42 U.S.C. § 2014(t) (emphasis added).  If only those with an indemnification agreement could be sued for public liability, then Congress' express directive that indemnification extends to "and any other person who may be liable for public liability" would be superfluous because no other person could be liable. The entire bolded clause, above, would mean nothing.

52.     Federal courts have held the Act's plain meaning indicates the PAA is not limited to parties to indemnification agreements.  The Fifth Circuit Court of Appeals wrote, "There is nothing in the definition of 'nuclear incident' which suggests it should be contingent on…whether the facility is covered under the separate indemnification portions of the Act." *Acuna*, 200 F.3d at 339. *See also Estate of Ware I*, 73 F. Supp. 3d at 530-31 (adopting analysis of courts "which have concluded that possession of…an indemnification agreement is unrelated to establishing jurisdiction under PAA"); *Cotromano*, 7 F. Supp. 3d at 1259 ("Whether or not Defendants have indemnification agreements with the federal government is not dispositive of the applicability of Price-Anderson"); *Carey*, 60 F. Supp. 2d at 806 ("there can be an [extraordinary nuclear occurrence] to which no indemnity agreement applies.").

53.     Simply put, whether the conduct alleged by Plaintiffs is a licensed activity or not, or by a licensee or not, and whether any indemnification agreement applies or not, has no bearing

on whether the PAA applies and supplies jurisdiction to this Court because none of these conditions is used to define "occurrence" or, therefore, a "nuclear incident." Because Plaintiffs seek redress for a nuclear incident, the PAA applies and all state law causes of action are completely preempted.

### d.  Cotter's 1969 Source Material License Applies

54.     Fundamentally, this case concerns radioactive materials that were allegedly handled, transported, disposed of and possessed by Cotter Corporation (N.S.L.) ("Cotter") as a licensee of the Atomic Energy Commission ("AEC").

55.     Plaintiffs allege the material at the West Lake Landfill originated from a storage site on Latty Avenue in Hazelwood, Missouri (the "Latty Avenue Site"), and that the movement and disposal of the material at the Landfill resulted in harm to them. Doc. No. 17 ¶¶ 14-21.

56.     The material and activities at the Latty Avenue Site were covered by Source Material License No. SUB-1022, issued to Cotter by the AEC (the "Cotter License"). Feingold Decl. (**Exhibit 5**) ¶ 5, Ex. D.[4]  Handling, processing, and movement (including off-site disposition) of the radioactive material located at the Latty Avenue Site was activity the license not only contemplated but required of the licensee, Cotter.

57.     Further, in support of its application for termination of the license, Cotter certified that the material had been disposed of in accordance with federal law. Letter from Edward J. McGrath to W. Burkhardt (May 10, 1974), enclosing Certification of Status of Source Material

---

[4] The Feingold Declaration was filed in *Dailey v. Bridgeton Landfill, LLC, et al.* E.D. Mo. Case No. 4:17-cv-00024-CDP at Doc. No. 64-1.  Ms. Feingold is an attorney for Cotter in that action.  The Declaration describes and attaches Source Material Licenses issued between 1963 and 1969 by the Atomic Energy Commission for radioactive material stored and activities performed at the St. Louis Airport Site ("SLAPS") and the Latty Avenue Site.  ¶¶ 1-5, Ex. A-D.  For ease of reference, Defendants have attached a true and accurate copy of the Feingold Declaration (and exhibits referenced therein) as **Exhibit 5** to this Notice.

Activities ("Application for Termination"), a true and accurate copy of the relevant portion of which is attached as **Exhibit 6**.

58.     The license was terminated by the AEC in reliance on Cotter's Certification and Application for Termination (among other things). *See* Feingold Decl. (**Exhibit 5**) ¶ 6, Ex. E.

59.     Thus, Cotter's disposal of material at the West Lake Landfill arose from a licensed activity, and the Cotter License is inextricably part of Plaintiffs' claim.

ii.     <u>**Plaintiffs Misrepresent Defendants' Statements in** *Adams*</u>

60.     The statement quoted from Defendants Rock Road and Bridgeton's Memorandum in Support of Motion to Dismiss (the "Memorandum") in *Adams v. MI Holdings, Inc.* (Eastern District of Missouri Case No. 4:12-cv-00641) (Doc. No. 15), are taken out of context and distinguishable from the case at bar. *See* Compl. ¶ 17.

61.     In their Complaint, Plaintiffs cherry-picked a single statement from the two Defendants' court filings and ignored the context of the statement.

62.     *Adams v. MI Holdings, Inc.* (Eastern District of Missouri Case No. 4:12-cv-00641) named only Defendants Rock Road and Bridgeton, and not Republic or Allied.

63.     The *Adams* Complaint incorrectly alleged "Defendants or their predecessors and/or agents have at all relevant times held such federal [Nuclear Regulatory Commission] licenses." Case No. 4:12-cv-00641, Doc. No. 1 ¶ 65.  A PAA claim was alleged *based upon* the possession of these licenses and activities in which Defendants Rock Road and Bridgeton were never involved. *Id*. ¶¶ 63-69.

64.     In Defendants Rock Road and Bridgeton's Memorandum in Support of Motion to Dismiss (Doc. No. 15), Rock Road and Bridgeton refuted the <u>specific allegations</u> appearing in

the *Adams* Complaint and the purported effect of those allegations.  Rock Road and Bridgeton did not make a general statement of PAA applicability.

65.     Rock Road and Bridgeton's Reply Memorandum ("Reply Memorandum") specifically addressed the argument Plaintiffs make here, stating:

> It was not the intent of Rock Road and Bridgeton Landfill to argue that non-NRC licensees like defendants Rock Road and Bridgeton Landfill *could not ever* be subject to public liability actions under the Price Anderson Act.  Rather, defendants simply state that the allegations contained in Count One of the Complaint, as a matter of fact and by the Complaint's own terms, do not apply to defendants Rock Road and Bridgeton Landfill.

Case No. 4:12-cv-00641, Doc. No. 65 at 12.

66.     The *Adams* Motion to Dismiss argued against the exact allegations asserted by those plaintiffs.  As clarified in the Reply Memorandum, the *Adams* plaintiffs failed to properly allege a PAA claim against Rock Road and Bridgeton because of the specific wording of that Complaint.

67.     By contrast, the instant lawsuit is unquestionably a public liability action alleging a nuclear incident, bringing it within the ambit of the PAA and preempting the state law claims.

68.     In failing to include Defendants' clear statement from the *Adams* Reply Memorandum, Plaintiffs misrepresent the pleadings and Defendants Rock Road and Bridgeton's position in that case.

## II.    Federal Question Jurisdiction Exists Under the Comprehensive Environmental Response, Compensation, and Liability Act

### A.    CERCLA

69.     This Court also has federal question jurisdiction because Plaintiffs seek injunctive relief challenging a Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq*., cleanup in progress at the West Lake Landfill and the

Bridgeton Landfill, both of them parts of the West Lake Landfill Superfund Site ("Superfund Site").

70.     These challenges to a CERCLA cleanup in progress create a separate basis for federal question jurisdiction under 28 U.S.C. § 1331.

71.     The Complaint admits the West Lake Landfill and the Bridgeton Landfills are part of the Superfund Site. Compl. ¶ 8.

72.     The United States Environmental Protection Agency (the "EPA") placed the Superfund Site on the National Priorities List ("NPL") in 1990. *See* https://www.epa.gov/mo/west-lake-landfill

73.     With limited exceptions not applicable here, a district court "shall have exclusive jurisdiction over all controversies arising under [CERCLA]." 42 U.S.C. § 9613(b).

74.     In keeping with the broad interpretation of the goals and purposes of CERCLA, federal jurisdiction under 42 U.S.C. § 9613(b) is more expansive than only those claims expressly created by CERCLA, and covers any challenge to a CERCLA cleanup.  *Fort Ord Toxics Project, Inc. v. Cal. Envt'l Prot. Agency*, 189 F.3d 828, 832 (9th Cir. 1999).

75.     When claims asserted by a party, including state-law claims, interfere with the "primary objectives of CERCLA which include 'effectuating quick cleanups of hazardous waste sites' and 'encouraging voluntary private action to remedy environmental hazards,'" and threaten to "circumvent the goals of CERCLA," such claims constitute a challenge to CERCLA and "compels [the federal court] to exercise jurisdiction." *Lehman Bros. Inc. v. City of Lodi*, 333 F. Supp. 2d 895, 904-06 (E.D. Cal. 2004) (quoting *Fireman's Fund Ins. Co. v. City of Lodi*, 296 F. Supp. 2d 1197, 1217 (E.D. Cal. 2003)).

- 16 -

76.    Accordingly, in order to best effectuate the intent of Congress to promote the swift execution of CERCLA cleanups, the exclusive federal jurisdiction provision of 42 U.S.C. § 9613(b) is interpreted to cover any challenge to a CERCLA cleanup, including a challenge to, or interference with, the goals and purposes of CERCLA.  *See Fort Ord*, 189 F.3d at 832; *Lehman Bros. Inc.*, 333 F. Supp. 2d at 905-06.

**B.    Plaintiffs' Claims**

77.    As described above, this lawsuit centers on allegations of radioactive waste. Every cause of action and relief requested relates to allegations that radioactive waste from the Landfill caused damage to Plaintiffs. *See* Compl. ¶¶ 120-125 (Count I); 133-37 (Count II); 146-48 (Count III); 159-161, 163-64 (Count IV); 173, 174 (Count V); 178-183 (Count VI) 185, 187 (Count VII); 193 (Count VIII); 196 (Count IX).

78.    Because of the alleged harm, "Plaintiffs bring this action…to obtain injunctive relief in the form of a total and complete cleanup of the contamination and to prevent and eliminate further contamination." *Id.* ¶ 32.

79.    The injunctive relief Plaintiffs seek is squarely within the exclusive purview of the EPA because Plaintiffs are challenging the cleanup at the Superfund Site.

80.    At a press conference on February 21, 2018, Plaintiffs' counsel Ryan Keane doubled down on Plaintiffs' challenge to EPA's currently-proposed cleanup.  The statements were transcribed on February 26, 2018 by a certified court reporter. Transcript at 1.[5]  Counsel emphasized the centrality of the injunctive relief sought.  He stated:

> [I] want more attention on this, and I want this to be fixed now.  That's why we're bringing these cases.  Our cases are not just about getting compensation…No, we have—our class action is two-fold.  **And perhaps the most important thing that**

---

[5] The transcript is certified by the court reporter. Tr. At 40.  A copy of the video of the press conference can be provided to the Court upon request.

**we are trying to strive to do is get injunctive relief.  We are going to ask the courts to enter an injunction forcing these defendants to fix this mistake.**

Tr. at 10:14-:25 (emphasis added).

81.     Counsel continued:

[**O**]**ne of the major goals in this case is to get the defendants**, not only to compensate these people, but **to clean up this mess and stop it from getting worse**.  So our class action is not only seeking financial compensation for these homeowners who have their homes values diminished, but also **to have them -- the defendants clean up this property.  To clean up the landfill, to get rid of this radioactive waste, to do a full and extensive remediation, not 70 percent or part of the way as the EPA may be proposing but now, clean it up now and clean it up thoroughly** because this is a disaster. And to make sure this fire does not reach this radioactive waste.  I'm telling you, there's not enough attention on this. It's a scary, scary proposition, and it needs to be addressed. And it just -- **there's been too much inaction**.  And so, you know, I'm proud to get involved in this to try to do my best as an attorney to bring attention to this and to use the legal system to try to bring about a remedy.

Tr. at 35:6-36:5 (emphasis added).

82.     Plaintiffs' attack of EPA's jurisdiction over the Superfund Site and request for injunctive relief dictating the cleanup clearly makes this a CERCLA challenge.  These representations regarding the lawsuit show the importance of the injunctive relief to this lawsuit.

83.     Counsel's statements at the press conference are properly considered an "other paper" under 28 U.S.C. § 1446(b) rendering this matter removable.  Transcribed oral statements can qualify as an "other paper."  In the Eighth Circuit, a plaintiffs' attorney's statements at a hearing "later transcribed, like deposition testimony, satisfy § 1446(b)(3)'s 'other paper' requirement." *Atwell v. Boston Sci. Corp.*, 740 F.3d 1160, 1162 (8th Cir. 2013). *See also Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 365 (6th Cir. 2015) (noting hearing transcripts can be "other papers"); *Middlebrooks v. Johnson & Johnson Co.*, 4:08-CV-54 (CDL), 2008 WL 4003926, at *3 (M.D. Ga. Aug. 26, 2008) (hearing transcript qualified as an "other paper" and the 30-day period to file for removal began after the plaintiff provided an unambiguous statement

regarding the value of her claim at a hearing). Likewise, deposition responses can constitute "other paper" within the meaning of section 1446(b). *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 887 (9th Cir. 2010); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 465 (6th Cir. 2002) (collecting cases).

84.     When an attorney clarifies his position on relief sought, the clarification can be an "other paper" rending a case removable. *See Berera*, 779 F.3d at 365 (noting correspondence between parties and attorneys can be 'other paper'); *Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 975 (9th Cir. 2007) (letter from attorney is 'other paper'); *Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759, 761-62 (5th Cir. 2000) (post complaint demand letter seeking an amount greater than $ 75,000 is 'other paper').

85.     Counsel's statements make it impossible to mistake what Plaintiffs seek in this lawsuit.

86.     Plaintiffs' requests are a challenge to the ongoing investigation and remedy selection support that is being conducted by certain of the Defendants, under the direction of the EPA, in accordance with CERCLA.

87.     Plaintiffs' allegations regarding radioactive contamination at their property inherently bring the property under the EPA's jurisdiction because Plaintiffs allege the property contains contamination from the Superfund Site.

88.     The Complaint presents a challenge under CERCLA because the relief Plaintiffs seek would interfere with the proposed cleanup that is currently progressing under the Act, would compromise the objectives of CERCLA, and would directly contravene the primary objective of encouraging voluntary action, with federal oversight, to remedy environmental hazards.

89.     Here, the EPA – a federal agency with particular expertise in the area of environmental remediation – has jurisdiction over all radiologically impacted material from the Superfund Site.  Thus, under Plaintiffs' allegations that their property has radioactive waste from the Superfund Site, any relief sought in this Complaint would interfere with the EPA's jurisdiction and potentially subject Defendants to inconsistent judgments.

90.     Plaintiffs' claims concerning radioactive waste, allegations regarding failure to properly remediate the same at the Superfund Site, and requests for injunctive relief therefore require resolution of significant questions of federal law over which this Court has exclusive jurisdiction.

## DIVERSITY JURISDICTION EXISTS

91.     This Court also has diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453.

92.     "Under CAFA, federal courts have jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 in the aggregate; there is minimal (as opposed to complete) diversity among the parties, i.e., any class member and any defendant are citizens of different states; and there are at least 100 members in the class." *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010)

### I.     The Amount in Controversy is Met

93.     The matter in controversy exceeds $5,000,000, exclusive of interest and costs.  To calculate the amount in controversy under CAFA, "the claims of the individual class members shall be aggregated[.]" 28 U.S.C. § 1332(d)(6)

94.     "[W]hen determining the amount in controversy, the question is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are." *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013) (emphasis in

original, internal citations omitted).  So long as it is legally possible for an amount to be

awarded, the amount may be considered, even if it is highly improbable that Plaintiffs will

recover the amounts. *Dammann v. Progressive Direct Ins. Co.*, 856 F.3d 580, 584 (8th Cir. 2017)

95.     Exclusive of interests and costs, Plaintiffs request:

- compensatory damages for the loss and use of enjoyment of Plaintiffs' property;

- annoyance and discomfort;

- damage to Plaintiffs' personal property;

- the diminution in the market value of Plaintiffs' property;

- costs and expenses incurred as a result of Plaintiffs' exposure to radioactive emissions, including costs of remediation and relocation;

- double damages for malicious trespass as provided for under Mo. Rev. Stat. § 537.330;

- punitive and exemplary damages;

- injunctive and equitable relief, including directing Defendants to identify members of the class in order to compensate them and to clean up all contamination, and including medical monitoring

Compl. at 44-45.

**A.     Compensatory Damages**

96.     Plaintiffs seek recovery of damages for economic loss and non-economic loss.

Plaintiffs have not limited their demand for damages to less than $5,000,000.

97.     There is no precise formula or bright line test that may be used to calculate

compensatory damages for determining non-economic losses. *Moore v. Weeks*, 85 S.W.3d 709,

716 (Mo. Ct. App.) (citing *Alcorn v. Union Pacific R.R. Co.,* 50 S.W.3d 226, 250 (Mo. banc

2001)).  "Each case must be considered on its own facts, with the ultimate test being whether the award fairly and reasonably compensates the plaintiff for the injuries sustained." *Id.*

98.     When Plaintiffs' claims are aggregated, as CAFA permits, the amount in controversy easily exceeds $5,000,000.

       **i.**     **Trespass**

99.     The measure of damages for an alleged trespass to real property such as Plaintiffs' allegations concerning extensive injury, the measure of damages is diminished property value, measured by the difference in fair market value of the entire tract before and after the alleged trespass. *Sterbenz v. Kan. City Power & Light Co.*, 333 S.W.3d 1, 9 (Mo. Ct. App. 2010).

100.    Plaintiffs also seek damages under R.S.Mo. § 537.330.  That statute permits recovery of "double the value of the things so damaged or destroyed" for malicious trespass to "personal property, goods, chattels, furniture or livestock[.]"

101.    Plaintiffs allege widespread injury.  They allege radon gas and radioactive particles have migrated onto their property, causing "direct physical interference with Plaintiffs' property." Compl. ¶ 125.  They allege Defendants are "illegally and improperly using Plaintiffs' property to store hazardous, toxic, carcinogenic, radioactive wastes." *Id.* ¶ 126.  This is alleged to have caused "significant damage" to Plaintiffs' property. *Id.* ¶ 127.

102.    Across Plaintiffs' large proposed class, allegations of "hazardous, toxic, carcinogenic, radioactive wastes" being found on the properties which could be remedied by an award of diminished property value result in a significant award.  Missouri's allowance of double damages for Plaintiffs' allegation of malicious trespass to personal property could enlarge an award and must be made part of the amount in controversy.

ii.   **Nuisance**

103.   Counts II and III seek recovery for permanent and temporary nuisance, respectively.

104.   Damages for injury from a temporary nuisance include depreciation in the rental or usable value of the property during the continuance of the injury as well as non-economic damages such as discomfort and lost quality of life. *Burg v. Dampier*, 346 S.W.3d 343, 358 (Mo. Ct. App. 2011); *Owens v. ContiGroup*, 344 S.W.3d 717, 729 (Mo. Ct. App. 2011)

105.   In *Owens*, 344 S.W.3d at 721, the Missouri Court of Appeals for the Western District affirmed a state court verdict totaling $11,500,000 awarded as compensatory damages to fifteen individuals claiming economic and non-economic damages caused by a temporary nuisance.  One year later, the same court affirmed multiple $75,000 verdicts awarded as compensatory damages to individuals solely claiming non-economic losses caused by a temporary nuisance. *See McGuire v. Kenoma, LLC*, 375 S.W.3d 157, 184 (Mo. Ct. App. 2012).

106.   Given Missouri courts have affirmed large awards for cases involving solely temporary nuisance and with less individuals than in Plaintiffs' class, a factfinder might find for Plaintiffs with a large measure of damages.

107.   "Damages for a permanent nuisance are measured by the difference in the land's market value immediately before and after injury[.]" *Frank v. Envtl. Sanitation Mgmt., Inc.*, 687 S.W.2d 876, 883 (Mo. 1985).

108.   As with Plaintiffs' allegations for trespass, calculation of diminished property value across Plaintiffs' large proposed class could result in a sizeable award.

### B.     Injunctive Relief

109.    Plaintiffs filed this lawsuit to require Defendants perform broad injunctive relief. The Complaint requests "injunctive and equitable relief, including directing Defendants to identify members of the Class in order to compensate them and to clean up all contamination, and including medical monitoring [*sic*]…" Compl. at 45.

110.    Calculation of the amount in controversy must include "the value of the injunctive relief that the class demands." *Keeling v. Esurance Ins. Co.*, 660 F.3d 273, 274 (7th Cir. 2011). *See also S. Fla. Wellness v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) (value of injunctive or declaratory relief is value of the "object of the litigation")

111.    Plaintiffs describe physical injuries they allege may result due to environmental exposure to radioactive waste. *E.g.*, Compl. ¶¶ 5, 53-57, 74, 89.  As a result, they request medical monitoring. *Id*. ¶¶ 35, 189.

112.    In 2004 and 2005, respectively, Missouri juries awarded $20 million and $15 million to plaintiffs in cases regarding exposure to an environmental contaminant and bronchiolitis obliterans (commonly referred to as popcorn lung). *Peoples v. Int'l Flavors, et al.*, Case No. 01CV683025-07; *Brand v. Bush, et al.*, Case No. 01CV683025-30. *See also* "*$20 Million Lawsuit Verdict, Popcorn Lung Disease*," "*$15 Million Lawsuit Verdict, Diacetyl Personal Injury – Popcorn*" <http://www.hfmlegal.com/verdicts/>.

113.    These cases are akin to the case at bar because they also involve allegations of exposure to an alleged contaminant which plaintiffs claim resulted in personal injury.  These awards were in the case of husband and wife plaintiffs, not class actions.  It is therefore reasonable to infer that had these allegations of exposure to contaminants causing medical damage been plead across a class the size of Plaintiffs' proposed class, the award would be in

excess of $5,000,000.  The decisions in these cases establish that under Missouri law a fact finder could reasonably determine that Plaintiffs' claims against Defendants could result in an award of damages in excess of $5,000,000, exclusive of interest and costs.

114.    In the press conference, counsel clarified that Plaintiffs aim to make Defendants excavate the radiologically impacted materials ("RIM") from the West Lake Landfill. Tr. at 10:14-:25; 35:6-36:5.

115.    As part of the Superfund process, the Potentially Responsible Parties at the Superfund Site have estimated costs for full excavation of RIM.  At a 7% discount rate, the 30-year present worth costs of the projects are: $455 million for the Full Excavation of RIM with Off-Site Disposal Alternative and $391 million for the Full Excavation of RIM with On-Site Disposal Alternative. "Final Feasibility Study," dated January 26, 2018, page ES-7, 545 available at <https://semspub.epa.gov/work/07/30352116.pdf>

116.    Thus, Plaintiffs' requested injunctive relief alone requires well in excess of $5,000,000.

### C.    Compensatory Damages

117.    Plaintiffs request punitive damages against Defendants. Compl. ¶¶ 196-199.

118.    This amount should be included when determining the amount in controversy. *See Raskas*, 719 F.3d at 887 (including punitive damages in calculation of CAFA amount in controversy); *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 348 (8th Cir. 2007) (punitive damages can be included when determining the amount in controversy).

119.    In Missouri, punitive damages can be up to "the greater of five hundred thousand dollars or five times the net amount of the judgment[.]" R.S.Mo. § 510.265.  The "net amount of

the judgment" for purposes of calculating punitive damages includes the attorney's fee award. *Hervey v. Mo. Dep't of Corr.*, 379 S.W.3d 156, 165 (Mo. 2012).

120.    Thus, to the extent a factfinder finds Plaintiffs are entitled to punitive damages and attorney's fees, subject to Constitutional constraints, the greater of $500,000 or five times the net judgment could be added to the award and, therefore, must be added to the amount in controversy.

121.    All told, Plaintiffs seek varied damages across a broad class definition in a metropolitan area.  Together, Plaintiffs' allegations and relevant Missouri law establish it is legally possible, even if not probable, that Plaintiffs' claims can exceed $5,000,000.  Bridgeton is informed and believes, and on that basis alleges, that the amount in controversy in this case satisfies the requirements of 28 U.S.C. § 1332(d) because the amount in controversy in the Lawsuit exceeds $5,000,000, exclusive of interests and costs.

## II.    Minimal Diversity Exists

122.    Minimal diversity is present in this matter.  Plaintiffs are Missouri citizens. Compl. ¶ 13.  Defendant Republic Services, Inc. is a Delaware corporation with its principal place of business in Arizona.  Accordingly, Republic is a citizen of Delaware and Arizona for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1).

## III.    There Are At Least 100 Members in the Proposed Classes

123.    The requirement that the class contain at least 100 members is measured by "the proposed plaintiff classes [.]  28 U.S.C. § 1332(d)(5)(B).  It is measured by the class as proposed by the plaintiff in the complaint. *See Brown v. Mortg. Elec. Registration Sys.*, 738 F.3d 926, 932 (8th Cir. 2013) (CAFA removal appropriate even when, on appeal, plaintiff tries to restrict class to fall below 100 members).

124.    There are at least 100 members in the proposed classes.  Plaintiffs propose a "Property Damage Subclass" and a "Medical Monitoring Subclass."  Both are defined with the same approximately 11-square mile area in a major metropolitan area. *See* Compl. ¶¶ 34, 35.

125.    The "Property Damage Subclass" is defined as:

All Missouri citizens who currently own real property within the 11.0 square mile geographic region in the vicinity of the West Lake Landfill, as shown in the map in Figure 1 below, bounded by the Missouri River to the west and a line south of Rt. 370 to the north, with the eastern boundary following a southerly line across Old St. Charles Rd. before crossing the residential area lying to the south of the landfill.

*Id.* ¶ 34.

126.    The "Medical Monitoring Subclass" is defined as:

All Missouri citizens who currently reside, or have resided since 1973, on a property within the 11.0 square mile geographic region in the vicinity of the West Lake Landfill, as shown in the map in Figure 1 above, bounded by the Missouri River to the west and a line south of Rt. 370 to the north, with the eastern boundary following a southerly line across Old St. Charles Rd. before crossing the residential area lying to the south of the landfill.

*Id.* ¶ 35.

127.    "'Own,' in the context of the class and subclass definitions, includes those who hold any fee simple estate or life estate." *Id.* ¶ 34.

128.    Plaintiffs allege, "The proposed Classes are so numerous that the individual joinder of all absent class members is impracticable." *Id.* ¶ 38.

129.    As proposed by Plaintiffs, these classes will clearly have more than 100 members. With Plaintiffs' definition of "own," including any holders of fee simple or a life estate, the number of proposed class members exceeds the number of parcels in the area. The 11-square mile area proposed is in a major metropolitan area in North St. Louis County, Missouri.  On

information and belief, there are over 100 businesses and personal properties in the proposed

class.  As such, there are over 100 members of the proposed plaintiff classes.

## REMOVAL TO THIS JUDICIAL DISTRICT IS PROPER

130.     Venue is proper in the Eastern Division of the United States District Court for the

Eastern District of Missouri under 28 U.S.C. §§ 1441(a) and 1446(a) because the Circuit Court

of St. Louis County, Missouri is located within the Eastern Division of this judicial district

pursuant to Local Rule 3-2.07(A)(1).

131.     Venue is also proper pursuant to Local Rule 3-2.07(B)(2) because the lawsuit is a

civil action brought against multiple defendants, at least one of which is a resident, and the

claims for relief are alleged to have arisen in Bridgeton, St. Louis County, Missouri.

## DEFENDANTS HAVE COMPLIED WITH ALL PROCEDURAL
## REQUIREMENTS OF REMOVAL

132.     As required by 28 U.S.C. § 1446(a) and Local Rule 81-2.03, true and correct

copies of all pleadings on file with the Circuit Court of St. Louis County to date are attached

hereto.

133.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of

Removal will be promptly served on Plaintiffs' counsel and the Clerk of the Circuit Court of St.

Louis County.

134.     Bridgeton reserves the right to assert any and all defenses to Plaintiffs'

Complaint.

135.     Defendants reserve the right to amend or supplement this Notice of Removal.

136.     Pursuant to Local Rules 3-2.03 and 3-2.09, attached hereto are Defendants' Civil

Cover Sheet and the Original Filing Form.  Defendants' Disclosure of Organizational Interests

Certificates will be separately filed by the individual Defendants.

137.    Defendants have not answered the Petition in state court, and will do so consistent with Fed. R. Civ. P. 8.

WHEREFORE, Bridgeton Landfill, LLC (on its own behalf and as the merger successor of West Lake Landfill, Inc. and the merger successor of Rock Road Industries, Inc.), with the consent of Defendants Republic Services, Inc. and Allied Services, LLC, respectfully removes the Lawsuit now pending in the Circuit Court of St. Louis County, State of Missouri to this Court.

Dated: April 27, 2018                    LATHROP GAGE LLP

By: /s/ *William G. Beck*
    William G. Beck          26849MO
    Peter F. Daniel          33798MO
    Allyson E. Cunningham  64802MO
    2345 Grand Boulevard, Suite 2200
    Kansas City, Missouri  64108-2618
    Telephone:        (816) 292-2000
    Telecopier:       (816) 292-2001
    wbeck@lathropgage.com
    pdaniel@lathropgage.com
    acunningham@lathropgage.com

    Patricia Lehtinen Silva    67213MO
    Pierre Laclede Center
    7701 Forsyth Boulevard, Suite 500
    Clayton, Missouri  63105
    Telephone:        (314) 613-2800
    Telecopier:       (314) 613-2801
    psilva@lathropgage.com

    ATTORNEYS FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above pleading was served via the U.S. District Court ECM/ECF system and via First Class Mail, postage prepaid, on the following counsel of record, this 27th day of April, 2018:

Ryan A. Keane                                   Barry J. Cooper
Alex Braitberg                                  Celeste Brustowicz
7777 Bonhomme Ave., Ste. 1600                   508 St. Philip Street
St. Louis, MO 63105                             New Orleans, LA 70116

Anthony D. Gray                                 Ron A. Austin
319 North 4th Street, Ste. 212                  Catherine Hilton
St. Louis, MO 63102                             920 4th Street
                                                Gretna, LA 70053

ATTORNEYS FOR PLAINTIFFS


                                    */s/ William G. Beck*
                                    An Attorney for Defendants