Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

**TWENTY-FIRST JUDICIAL CIRCUIT OF THE STATE OF MISSOURI**
**ST. LOUIS COUNTY**

| | | |
|---|---|---|
| JOHN C. KITCHIN, JR., NORTH WEST AUTO BODY COMPANY, and MARY MENKE, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Cause No. 18SL-CC00613 |
| vs. | ) ) | Division No. 2 |
| BRIDGETON LANDFILL, LLC, REPUBLIC SERVICES, INC., ALLIED SERVICES, LLC, and ROCK ROAD INDUSTRIES, INC., | ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## FIRST AMENDED CLASS ACTION PETITION

COME NOW Plaintiffs John C. Kitchin, Jr., North West Auto Body Company, and Mary Menke, on behalf of themselves and all others similarly situated, by and through counsel, and for their First Amended Class Action Petition against Defendants Bridgeton Landfill, LLC, Republic Services, Inc., Allied Services, L.L.C., and Rock Road Industries, Inc, state and allege as follows:

1.      Since World War II, big companies have made significant profits processing, handling, and storing radioactive materials in the St. Louis area.  This activity began seven decades ago, when a government contractor began processing uranium ores in downtown St. Louis City. The hazardous, toxic, carcinogenic, radioactive wastes resulting from the processing of these ores are ounce for ounce some of the most dangerous materials on the planet.  Despite knowing that that these materials were some of the most harmful substances on Earth, the Defendants accepted these wastes and used them for daily cover at their landfill. Despite knowing that these materials were radioactive, the Defendants allowed them to be released as building material to an unknown

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

number of people, which was subsequently incorporated into buildings and driveways in the St. Louis metropolitan area. Defendants treated these hazardous, toxic, carcinogenic, radioactive wastes with about the same level of care that a reasonable person might give to common household garbage, dumping it without authority from the State of Missouri and in violation of law, like everyday trash into the West Lake Landfill—a landfill which experts indicate is not even suitable for garbage, as it contains no liner.

2.      Since then, that radioactive material, negligently dumped in an area surrounded by peaceful neighborhoods and playgrounds, has tormented the lives of everyday people—moms and dads who thought they were raising their kids in a clean home in a safe, quiet neighborhood; kids who want nothing more than to play in the backyard; and small business owners who had invested everything to build the American dream for their families.  These everyday St. Louisans now find their lives disrupted, their homes contaminated, their businesses upended, and their properties devalued.  They find their once-quaint neighborhoods filled with technicians testing and prodding their backyards and the dust of their vacuum cleaners to identify the quantity and the toxicity of the radioactive material Defendants have dumped into their lives.

3.      Business owners spent substantial sums of money developing Earth City, which is now encompassed within impacted zone, and included in the scope of the class, as defined herein.

4.      Tests conducted by representatives of the United States of America and others now confirm that the areas around the West Lake and Bridgeton Landfills (referred to herein as the "Landfill" which consists of several inactive landfills including West Lake and Bridgeton) are contaminated with the same radioactive wastes generated in the processing of uranium ores in the St. Louis area.  The off-site radioactive waste found today in the real property, which contains

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

business and homes, surrounding the Landfill has the fingerprint (or profile) of the ore processed in St. Louis which generated the hazardous, toxic, carcinogenic, radioactive wastes that were dumped into and around the Landfill.

5.     These radioactive wastes are known human carcinogens that can cause chronic damage to the skin, reproductive system, blood forming system, digestive system, central nervous system, and immune system in addition to numerous cancers. Illnesses such as cancers or birth defects may take a number of years after exposure to the radioactive material to appear.

6.     Defendants have failed to take responsibility for their negligent behavior, failed to clean up the area, failed to move the residents and businesses out, and failed to make amends for the widespread damage they have caused.  Instead, Defendants have hidden behind misstatements and omissions, misleading the public about the widespread contamination Defendants have caused and minimizing the immense risks to public health and safety that resulted from Defendants' actions.

7.     It is time that Defendants finally be held accountable for their reckless and tortious conduct.  This particular lawsuit seeks to correct the harm Defendants inflicted on just a few of the victims.

8.     The Landfill is Superfund site, and the U.S. Environmental Protection Agency ("EPA") administrator, Scott Pruitt, has recently ordered at least a $200 million plus cleanup that will take many years to complete. This cleanup will result in the uncovering and handling of radioactive wastes that will result in additional releases from the site. (This statement is provided for informational purposes only, as Plaintiffs are making no claims under the laws of the United States).

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

9.     Plaintiff John C. Kitchin, Jr. owns property in Bridgeton, Missouri that Defendants contaminated.  His property, including the land and building (hereinafter "North West Auto Body Property"), is contaminated with radioactive wastes from the Landfill, that are hazardous, toxic, carcinogenic.

10.     Plaintiff North West Auto Body Company has lost significant business, revenue and customers as a result of the hazardous, toxic, carcinogenic, radioactive wastes from the Landfill, and will incur substantial additional costs in the future, including but not limited to future lost business and relocation costs.

11.     Plaintiff Mary Menke owns and resides in property in Bridgeton, Missouri that Defendants contaminated.  Her property, including the land and building (hereinafter "Menke Property"), is contaminated with radioactive wastes from the Landfill, that are hazardous, toxic, carcinogenic.

12.     Plaintiffs, as well as all members of the proposed class, have sustained significant damages, as a result of Defendants' conduct.  Defendants should compensate Plaintiffs for their damages, and provide further relief as set forth below in this Petition.

## JURISDICTION AND VENUE

13.     This court has jurisdiction over the subject matter and the parties in this case because the causes of action stated in this Petition arose out of business activities conducted solely in Missouri, and out of torts committed solely in Missouri by resident and non-resident defendants.

14.     Complete diversity does not exist in this matter as Defendant Rock Road Industries is a Missouri corporation and Plaintiffs are Missouri citizens.

4

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

15.     Venue is proper in this court pursuant to Mo. Rev. Stat. §508.010, because Defendants' conduct giving rise to this action took place in St. Louis County, Missouri.

16.     Plaintiffs do not allege any causes of actions arising under any laws of the United States.

17.     Defendants Rock Road Industries and Bridgeton Landfill, LLC previously declared that the Price-Anderson Act does not apply to them because the West Lake Landfill is not a licensed nuclear facility: "Count One, arising under the Price-Anderson Act, is wholly inapplicable to Rock Road and Bridgeton Landfill, as the West Lake Landfill is not a nuclear facility subject to licensing by the nuclear Regulatory Commission."[1]

18.     Plaintiffs' claims do not fall within the scope of the Price-Anderson Act.  The Landfill is not and has never been a licensed nuclear facility.  The landfill has never received a license to possess, transport, or dispose of any radioactive wastes.  Defendants have never entered into an indemnification agreement with the United States government under 42 U.S.C. § 2210 with respect to the complained activities.

19.     Plaintiffs expressly contend that no occurrences that form the basis for this suit rise to the level of a nuclear incident. Plaintiffs' claims are freestanding state law claims concerning traditional state regulation and do not implicate the Price-Anderson Act and its textually manifest concerns related to liability limitation and indemnification. This principle was clearly enunciated by the Hon. Neil Gorsuch in the case of *Cook v. Rockwell Intern. Corp.*, 790 F.3d 1088 (10th. Cir. 2015) also known as the Rocky Flats litigation.

---

[1] Defendants Rock Road Industries and Bridgeton Landfill, LLC's Memorandum in Support of Motion to Dismiss (Doc 15), Adams v. MI Holdings, Inc. Case No. 4:12-cv-00641-JCH

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

20.     At the time of the outrageous, reckless, negligent acts that form the basis for this lawsuit occurred, the Price-Anderson Act did not apply because the wastes at issue were not subject to said Act.

21.     The Price-Anderson Act does not apply to the indisputably hazardous, toxic and carcinogenic wastes at issue in this First Amended Petition.

## THE PARTIES

### Plaintiffs

22.     Plaintiff John C. Kitchin, Jr. is a Missouri citizen who owns real property located at 12990 St. Charles Rock Road, ("North West Auto Body Property") including an automotive body shop owned and operated by Mr. Kitchin's family, North West Auto Body Company. Plaintiff purchased the North West Auto Body Property in 1995.  The property adjoins what is now the Landfill in Bridgeton, Missouri. Plaintiff John C. Kitchin, Jr. first learned that the North West Auto Body Property was contaminated with radioactive material in 2017.

23.     Plaintiff Mary Menke is a Missouri citizen who owns real property located at 3388 Tortosa Dr.  in Bridgeton, Missouri. Plaintiff Mary Menke first learned that her property was contaminated with radioactive material in 2018.

24.     As a result of Defendants' acts and omissions, Plaintiffs have sustained significant damages including damages to their property and the loss of use and enjoyment thereof.

### Defendants

25.     In this Petition, the defendants in this lawsuit are categorized into two groups, namely the owners and operators of the Landfill:

A.  Landfill Owner Defendants

6

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

      i.  Bridgeton Landfill, LLC, which owns the Bridgeton and West Lake Landfills; and

     ii.  Rock Road Industries, Inc., which owned or owns the West Lake Landfill.

B. Landfill Operator Defendants

      i.  Republic Services, Inc., which owns, oversees, and directs the environmental decisions and conduct of Bridgeton Landfill, LLC, Allied Services, L.L.C., and Rock Road Industries, Inc., and operates the Bridgeton and West Lake Landfills; and

     ii.  Allied Services, L.L.C., which operates Bridgeton and West Lake Landfills.

26.     Since at least November 2010, the Defendants have owned and/or operated the Bridgeton and West Lake Landfills.

27.     Republic Services, Inc. ("Republic") is a Delaware corporation with its principal place of business in the State of Arizona that carries on continuous and systematic business activities within the State of Missouri.

A. Republic describes itself as "the second largest provider of services in the domestic non-hazardous solid waste industry, as measured by revenue as well as a Fortune 500 company, publicly traded on the New York Stock Exchange (NYSE; RSF)."[2] Despite Republic's record of violations and the widespread injuries resulting from Republic's conduct, Republic promises the public that it lives by "high environmental and sustainability standards."[3]   Republic has engaged in extensive

---

[2]  https://www.republicservices.com/about-us
[3]  http://www.republicservices.com/customer-support/facilities

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

professional public relations efforts to downplay the significance of the problem, and their misleading statements can only be characterized as mere "puffery."

B.  Republic's presence in Missouri is immense, servicing more than 300 cities and towns throughout the state, including many in St. Louis County.[4]   Republic continuously and systematically avails itself of the protection of Missouri laws in St. Louis County courts, and regularly appears to defend itself in lawsuits tried here. Republic is responsible for promulgating and enforcing environmental and health and safety policies and procedures to its subsidiaries, which in this case they failed to adequately do.

C.  This lawsuit arises out of damages that resulted from Republic's acts and omissions within the State of Missouri. Since 2008, Republic and its subsidiaries have maintained daily operational and managerial control over the management and environmental decisions of the Bridgeton and West Lake Landfills, decisions which gave rise to the violations of law and damage to property alleged in this Petition. Republic did so directly and through its subsidiaries Allied Services, LLC, Bridgeton Landfill LLC, and Rock Road Industries, Inc.

28.    Allied Services, LLC ("Allied"), a Delaware limited liability company with its principal place of business in the state of Arizona, is a wholly-owned subsidiary of Republic Services, Inc., that continuously and systematically conducts business in the State of Missouri under its own name and under the fictitious name "Republic Services of Bridgeton."

---

[4]  https://www.republicservices.com/locations/missouri

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

A. Allied conducts daily operations of the Bridgeton Landfill and the West Lake Landfill.

B. Allied regularly and routinely avails itself of the protection of Missouri laws in St. Louis County courts, and regularly appears to defend itself in lawsuits tried here.

C. This lawsuit arises out of damages that resulted from Allied's acts and omissions within the State of Missouri.  Since 2008, Allied has maintained daily operational and managerial control over the management and environmental decisions of the Bridgeton and West Lake Landfills, decisions which gave rise to the violations of law and damage to property alleged in this Petition.

D. Allied has also promulgated environmental and health and safety policies and procedures to its subsidiaries, which in this case they failed to adequately do.

29. Bridgeton Landfill, LLC formerly "Laidlaw Waste Systems" ("Landfill Owner"), is a Missouri limited liability company with its principle place of business in the State of Missouri. It continuously and systematically conducts business activities in the State of Missouri.

A. Upon information and belief, Bridgeton Landfill, LLC owns the Bridgeton Landfill and the West Lake Landfill.

B. Bridgeton Landfill has continuously and systematically availed itself of the protection of Missouri laws in St. Louis County courts, and regularly appears to defend itself in lawsuits tried here.

C. This lawsuit arises out of damages that resulted from Bridgeton Landfill's acts and omissions within the State of Missouri.  Specifically, since 2008, Bridgeton Landfill has owned, operated and maintained daily operational and managerial

9

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

control over the management and environmental decisions of the Bridgeton Landfill and the West Lake Landfill, which gave rise to the violations of law and damage to property alleged in this Petition.

30.     Rock Road Industries, Inc. ("Rock Road") is a Missouri corporation with its principal place of business in St. Louis, Missouri. Rock Road is a wholly-owned subsidiary of Republic Services, Inc. that continuously and systematically conducts business in the State of Missouri.

       A.     This lawsuit arises out of damages that resulted from Rock Road Industries, Inc.'s acts and omissions within the State of Missouri.  Upon information and belief Rock Road Industries, Inc. owns the West Lake Landfill along with Bridgeton Landfill, LLC.  Rock Road Industries has maintained daily operational and managerial control over the management and environmental decisions of the West Lake Landfill, decisions which gave rise to the violations of law and damage to property alleged in this Petition.

## CLASS ACTION ALLEGATIONS

31.     Plaintiffs file this class action petition pursuant to Missouri Supreme Court Rule 52.08 on behalf of all Missouri citizens who are owners of residential property and who are residents in the vicinity of the West Lake Landfill as detailed below.

32.     Plaintiffs bring this action on behalf of themselves and the Class against Defendants to recover damages to their property and to obtain injunctive relief in the form of a total and complete cleanup of the contamination and to prevent and eliminate further contamination.

33.     This action is maintainable as a class action and should be certified under Missouri

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

Supreme Court Rule 52.08.

34.     The proposed class for property damage claims is defined as follows ("Property

Damage Subclass"):

> **All Missouri citizens who currently own real property within the 11.0 square mile geographic region in the vicinity of the West Lake Landfill, as shown in the map in Figure 1 below, bounded by the Missouri River to the west and a line south of Rt. 370 to the north, with the eastern boundary following a southerly line across Old St. Charles Rd. before crossing the residential area lying to the south of the landfill.**

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM



**Figure 1. Class Area**

"Own," in the context of the class and subclass definitions, includes those who hold any fee simple

estate or life estate.

   35.  The proposed class for medical monitoring is defined as follows ("Medical

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

Monitoring Subclass"):

> **All Missouri citizens who currently reside, or have resided since 1973, on a property within the 11.0 square mile geographic region in the vicinity of the West Lake Landfill, as shown in the map in Figure 1 above, bounded by the Missouri River to the west and a line south of Rt. 370 to the north, with the eastern boundary following a southerly line across Old St. Charles Rd. before crossing the residential area lying to the south of the landfill.**

36.     Excluded from the Property Damage Subclass and the Medical Monitoring Subclass (collectively, the "Class") are Defendants and their officers, directors, and employees, as well as employees of any of Defendants' subsidiaries, affiliates, successors, or assignees. Also excluded are the immediate family members of the above persons. Also excluded is any trial judge who may preside over this case. Also excluded from the class are persons who previously entered into valid and enforceable settlements of property damage claims related to the claims asserted herein with any of the Defendants.

37.     The requirements for maintaining this action as a class action are satisfied, as set forth immediately below.

38.     The proposed Classes are so numerous that the individual joinder of all absent class members is impracticable. While the exact number of absent Class Members is unknown to Plaintiffs currently, it is ascertainable by appropriate discovery and Plaintiffs, upon information and belief, allege that the proposed Class includes more than twenty-five members. The requirement of numerosity is therefore satisfied.

39.     Common questions of law or fact exist as to all proposed Class Members and predominate over any questions which affect only individual members of the proposed Classes, and the answers to which will drive classwide resolution of Plaintiffs' claims asserted herein.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

These common questions of law or fact include:

a. Whether Defendants engaged in the abnormally dangerous activity of storing radioactive waste;

b. Whether Defendants unreasonably and unlawfully stored radioactive materials at the West Lake Landfill;

c. Whether Defendants created and continue to create a high degree of risk of harm to Plaintiffs' and Class Members' property;

d. Whether Defendants have intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allowed the emission of radon gas and radioactive particles onto and around Plaintiffs' and Class Members' property;

e. Whether Defendants' conduct or omissions affecting land surrounding the West Lake Landfill resulted in Plaintiffs' and Class Members' loss of use and enjoyment of their property;

f. Whether the loss in property value suffered by Plaintiffs and Class is a result of Defendants' actions;

g. Whether Plaintiffs and Class are entitled to damages; and

h. Whether Defendants' conduct rises to the level of willfulness so as to justify punitive damages.

40.    The claims of the Plaintiffs are typical of the claims of the Classes. Plaintiffs and all Class Members own or reside on land located near the location where Defendants recklessly dumped radioactive waste.

41.    Plaintiffs will fairly and adequately represent the interests of the members of the

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

Class. Plaintiffs have no interest adverse to the interests of the members of the Class. Plaintiffs have retained competent attorneys who have experience in class action litigation.

42.     Defendants have acted or refused to act on grounds that apply generally to the Class as discussed herein, such that final injunctive relief is appropriate for the Class as a whole.

43.     Unless a class-wide injunction is issued, Defendants will continue to allow contamination of the properties of Plaintiffs and Class and will continue to violate Missouri law resulting in harm to thousands of Missouri citizens.

44.     A class action is a superior method for the fair and efficient adjudication of this controversy. The adjudication of a separate action by individual members of the classes would create a risk of (a) inconsistent or varying adjudications with respect to individual members of the class; or (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Upon information and believe each of the Class Members suffered the same sort of damages and injuries as those suffered by the Plaintiffs, due to the contamination of their property by radioactive waste from the West Lake Landfill. In addition, this class action will allow for the resolution of identical claims in an efficient manner that avoids fragmented litigation in which inconsistent results could occur.

45.     Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members. There is no special interest in the members of the classes individually controlling the prosecution of separate action. The expense and burden of individual litigation make it impossible for the Class Members individually to address the wrongs done to them.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

46.     There will be no difficulty in managing this lawsuit as a class action. Evidence relating to Defendants' alleged violations will be applicable to all members of the class; there are accepted means for notifying class members who have suffered injuries and damages described herein.

47.     All of the class members are citizens of Missouri.

48.     The principal injuries resulting from the conduct of the Defendants were incurred in Missouri.

49.     No class action asserting similar factual allegations has been filed against any of the defendants in the preceding three years.

50.     Rock Road Industries, Inc. and Bridgeton Landfill, LLC are Missouri citizens from whom significant relief is sought and whose conduct forms a significant basis of the below claims.

## FACTS

### Radioactive Wastes

51.     Ounce for ounce, radioactive isotopes are the most toxic materials known to man.

52.     Radiation is a type of energy transmitted over a distance. Some materials spontaneously emit radiation through a process known as radioactive decay.  As these materials decay they release radiation energy and transform into other radioactive materials which will then also decay by releasing radiation energy and transforming into other materials.

53.     Some radiation energies, including the radiation from the decay of radioactive materials used in nuclear and atomic processes, such as uranium, have the ability to penetrate other

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

material.  When radiation energy interacts with other material, it causes a process called ionization[5] which can damage chemical structures.  When the "other material" that ionizing radiation passes through is human cells, it can cause damage within those cells resulting in mutation in genetic material which can lead to cancer and other harms.

54.     People are exposed to radiation in two ways: external exposure from radioactive material in the environment and internal exposure by radioactive material that has entered the body.  Radioactive material can be taken into the body by consuming foodstuffs and liquids with radioactivity in them, by inhaling radioactive gases or aerosol particles, or by absorption through wounds in the skin.  The material taken in will internally expose the organs and tissues for as long as it remains inside the body.

55.     One characteristic of the impact of exposure to ionizing radiation on the human body through both internal and external exposure is that even if the energy absorbed is low, the biological effects can still be gravely serious.  The second characteristic is that there are latent biological effects of radiation.

56.     The injuries resulting from exposure to ionizing radiation can also be separated into two categories: somatic injuries and genetic injuries.  Somatic injuries are damages to the individual exposed.  This can be damages to the skin, reproductive system, blood forming system,

---

[5]  Ionizing radiation is described as follows in the literature: "Ionizing Radiation is a form of radiation that includes alpha particles, beta particles, gamma rays, x-rays, neutrons, high-speed electrons, high-speed protons, and other particles capable of producing ions.  Ionizing radiation has enough energy to cause changes in atoms through a process called ionization.  Ionization can affect the atoms in living things and depending on the dose and exposure, can pose a serious health risk to humans.  Ionizing radiation has sufficient energy to cause chemical changes in cells, causing damage to tissue and DNA in genes."  https://www.epa.gov/radiation/radiation-health-effects

17

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

digestive system, central nervous system, and immune system, as well as cancers.  Illnesses such as cancers may take a number of years to appear.

57.     Genetic injury is damage to the reproductive cells of the exposed individual in the form of mutation of their genetic cells.  As a result, the probability of detrimental effects to the descendants of the exposed persons may greatly increase.  These genetic mutations can be passed down to a person's offspring even generations later.  These injuries include birth abnormalities and cancer.

58.     One of the most dangerous aspects of radioactive materials is the length of time that radioactive isotopes will persist and accumulate in the environment.  As detailed above, radioactive materials decay over time and each radioactive material gives off radiation energy as it decays and transforms into a different material.  The rate at which a radioactive isotope decays is measured in half-life. The term "half-life" is defined as the time it takes for one-half of the atoms of a radioactive material to disintegrate.  For example, after one half life, there will be one half of the original material, after two half-lives, there will be one fourth the original material, after three half-lives one eight the original sample, and so forth.

59.     Radium-226 has a half-life of 1,600 years.  Radium-226 eventually decays to lead-210 and polonium-210.  This means that as the radium-226 decays, it increases the lead-210 and polonium-210 at the Landfill and in the surrounding environment.   Furthermore, half of the hazardous, carcinogenic radium-226 currently contaminating the West Lake Landfill will still remain as a grave problem even after 1,000 years from now if it is not physically removed.  This is described in the scientific literature as follows:

18

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

> Importantly, because the concentrations of short-lived radionuclides will progressively increase, the radioactivity at the site will likewise increase for the foreseeable future. For example, according to NRC, if the present day activity of $^{230}$Th is estimated to be 100 times that of $^{226}$Ra, then the alpha activity due to $^{226}$Ra decay will increase fivefold over present levels in 100 years, nine-fold in 200 years, and 35-fold in 1000 years.[6]

60.     According to the EPA's proposed corrective action plan of February 2, 2018, the risks related to radioactive materials at the Landfill will "increase in the future due to ingrowth of radium-226 from its parent thorium-230. These risks will increase according to the radioactive decay of thorium and will result in peak risks in approximately 9,000 years."

**<u>Radioactive Waste in the St. Louis Area</u>**

61.     From 1942 to 1957, uranium ore was processed in downtown St. Louis City in association with the Manhattan Project.[7]  The Manhattan Project was the U.S. research project designed to develop the first nuclear weapons.

62.     This downtown St. Louis facility was known as the St. Louis Downtown Site (the "SLDS") and was used to process uranium.

63.     In the late 1940s, the Manhattan Project acquired a 21.7-acre tract of land near Lambert airport to store the hazardous, toxic, carcinogenic radioactive wastes from the uranium processing operations at the SLDS.   The storage site near the airport is now referred to as the St. Louis Airport Site or SLAPS ("SLAPS").

---

[6] Criss (2013) at 2-3 (citations omitted).
[7] *See* n.10 (citing Alvarez (2013) and DeGarmo (2006)).

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

64.     Radioactive wastes accumulated at SLAPS. These hazardous, toxic, carcinogenic, radioactive waste materials included pitchblende raffinate residues, radium-bearing residues, barium sulfate cake, Colorado raffinate residues, and were stored at SLAPS along with contaminated scrap.  Some of these radioactive wastes were stored in bulk on the open ground in piles.

65.     In the 1960's, some of the hazardous, toxic, carcinogenic radioactive wastes  that had been stored at SLAPS were moved to a storage site on Latty Avenue in Hazelwood, Missouri (the "Latty Avenue Site") (part of this site later became the Hazelwood Interim Storage Site ("HISS").

66.     In or about 1973 the Defendants accepted over 46,000 tons of radioactive wastes combined with contaminated soil.  Upon information and belief, despite knowing that the owner of these wastes was trying to dispose of dangerous radioactive materials for which the Landfill was not permitted to accept, the radioactive waste mixture was used by Defendants as daily cover for the Landfill.  Defendants dumped the radioactive wastes into the Landfill and intentionally spread these wastes over a large area.

67.     The scientific literature summarizes this dumping as follows:

> In 1973, 8700 tons of radionuclide-bearing "leached barium sulfate" was allegedly dumped in an unlined Landfill in Bridgeton, MO that was not licensed to receive radwaste.  This report finds that 1) the chemical and physical character of the radioactive materials has not been adequately characterized, and barium sulfate is probably not a major constituent; 2) the alpha and beta emissions of this material will increase 10x to 100x over present levels, reaching maximum activity in about 9000 years; 3) the Landfill has no protective barriers and a proximal subsurface fire; 4) the site has several hydrologic and geologic risk factors that magnify its unsatisfactory location in a populated area; 5) nuclear material has been in contact

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

with percolating waters and with a fluctuating water table; 6) groundwaters contaminated with radionuclides have migrated far from the original location of disposal; 7) background levels of radiation have been overstated, while other risks have been underestimated ....[8]

### The Landfill

68.     The West Lake Landfill is situated on about 200 acres at 13570 St. Charles Rock Road, in the City of Bridgeton.  The Missouri River lies about one and one-half miles to the north and west of the Landfill.  A shallow aquifer lies beneath the West Lake Landfill and surrounding neighborhoods.

69.     Originally used for agriculture, the land became a limestone quarrying and crushing operation in 1939.

70.     Beginning in the early 1950s, portions of the quarried areas and adjacent areas were used to dispose of municipal refuse, chemical wastes, industrial solid wastes, and construction/demolition debris.

71.     The Landfill was never designed to be an adequate storage or disposal site for radioactive materials, nor was it ever licensed by the State of Missouri as such.  Despite the Landfill not being properly designed to receive radioactive materials, the Defendants accepted hazardous, toxic, carcinogenic, radioactive wastes and spread them around the Landfill.

72.     The inadequacies of the Landfill itself are described in the scientific literature as follows:

> Although the West Lake Landfill contains significant amounts of long-lived radiotoxic wastes such as those contained in federally

---

[8] Criss (2013) at 1.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

> licensed commercial radioactive waste Landfills, it meets virtually none of legal requirements governing shallow radioactive waste disposal to prevent off-site migration.[9]

73.    The data collected on and around the Landfill documents radioactive contamination of soil, water, and air.

> Onsite 226Ra concentrations in soils as high as 21,000 pCi/g were measured, compared to estimated background levels of 2 pCi/g. Elevated radium contents above the EPA's MCL of 5 pCi/l are also widespread in both the alluvial and bedrock aquifer within about 1500 feet of Areas 1 and Area 2.  Airborne surveys established that external radiation levels exceeding 100μR/hr, while distal samples were <10 μR/hr.  Levels recorded one meter above Area 2 were as high as 3-4 mR/hr, or as much as 400x higher than background. NRC reports that the subsequent addition of soil cover and construction debris to Areas 1 and 2 diminished these levels several fold.[10]

74.    Other toxic and hazardous materials are expected to have been released via the air pathway, in addition to the radioactive materials. This phenomenon contributes to the damages complained of herein.

75.    The Landfill stopped accepting waste on December 31, 2004 and is now used as a transfer station for municipal wastes.

76.    The Landfill waste mass encompasses approximately 52 acres with approximately 240 feet below the ground's surface and a total waste thickness of 320 feet.

---

[9] Kaltofen (2016) at 104.
[10] Criss (2013) at 2 (citations omitted)

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

**Radioactive Waste at the West Lake Landfill**

77.     Defendants caused or contributed to improper handling, storage, and disposal of an estimated 500,000 cubic yards of radioactive wastes in the Landfill.  As a result, about 15 acres of the West Lake Landfill are filled with radioactive waste at depths up to 20 feet.

78.     Upon information and belief, Defendants who operated the Landfill used the radioactive waste mixed with radioactive soil as daily cover in its Landfill operations thereby spreading the waste throughout the Landfill.

79.     Defendants did not take necessary safety precautions when disposing of and handling the radioactive wastes and radioactive soil to prevent off-site contamination.

80.     The staff of the Landfills were neither qualified, nor trained to handle or dispose of radioactive wastes in a safe manner.

81.     The Landfill was not intended, nor designed to contain radioactive wastes.   In reality, the Landfill is a chaotic pile of debris covered by unmanaged "natural vegetation, surrounded by a fence with radioactive [warning] signs." Given the significant design and operational deficiencies, experts contend that the West Lake Landfill is even unsuitable for ordinary domestic waste.[11]

**The Fire**

82.     The Landfill has experienced problems with subsurface fires throughout its operational history.   Despite having past experiences with subsurface fires, sufficient

---

[11]  Criss (2013) at 4.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

precautionary measures were not implemented to prevent future fires or to protect the radiologically contaminated areas from being affected.

83.    Upon information and belief, Defendants discovered high temperatures in several monitoring wells.  Upon information and belief, Defendants continued with aggressive gas extraction methods exacerbating the underground fire and enabling it to spread uncontrolled. Defendants finally reported to authorities that the Landfill was experiencing high temperatures on extraction wells evidencing a subsurface smoldering event.

84.    Since then, the smoldering has intensified into a spreading subsurface fire evidenced by surface soil settlement, increased odors, elevated hydrogen levels, and high temperatures. High temperatures and smoke caused by the fire could mobilize radionuclides into the air and ultimately into soil, surface water, ground water.

85.    Due to the fact that the radioactive material was used as daily cover around the landfill, it is more likely than not that some fire has already consumed radioactive material. However, if the subsurface fire reaches the radioactively impacted portions of the Landfill, the hot gases from the fire will likely cause fissures in the overburden material.  These fissures may allow additional quantities of radioactive radon gas to escape the Landfill and become deposited as lead-210 onto properties in the class boundary as it decays.

86.    A subsurface fire in the radioactively contaminated areas would be expected to create increased pressure conditions within the Landfill and force out entrained radioactive gases, including radon which is extremely toxic to breathe.  A subsurface fire may be present in the radioactively contaminated areas for a long period of time before it is detected, because the only

24

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

apparent means to detect a subsurface smoldering event after closure is through annual visual inspections.

87.      Another effect of a subsurface fire or smoldering event would be increased leachate production which has been observed in the Bridgeton Landfill from condensation of large amounts of steam.

88.      The literature describes the risk of the West Lake underground fire as follows:

> An underground fire is currently ongoing in the municipal Landfill (OU-2) that is immediately south of Area 1 of OU-1.  Such fires can burn for years, creating high underground temperatures, and releasing carbon monoxide, dioxins, VOCs and other noxious chemicals, and particulates into air.  Numerous people who reside near the Landfill complained about odor and health problems at the January 17, 2013 public meeting in Bridgeton.  Risks for adjacent, radionuclide-bearing OU-1 include but are not restricted to the following 1) fire can spread from OU-2 into OU-1, particularly because demolition and construction Landfills are known to have much higher risk than municipal Landfills; 2: subterranean fires can result in Landfills collapse, landslides and slumping, endangering personnel and exposing dangerous materials to the surface; 3) Landfill fires have high explosion risk because of methane, gas cylinders, and drums; 4) high temperatures and smoke could mobilize radionuclides into surface water, ground water and air.[12]

89.      There are at least two human exposure risk pathways that would exist from a subsurface smoldering event or subsurface fire reaching the radioactive materials. The first is the risk of people being subjected to increased air exposures to contaminants such as breathing in radon gas, radon-226. As airborne concentrations of radon gas increase, so would the risk to the neighboring population of breathing in radon gas and developing injuries such as lung cancers. Additionally, as radon gas decays it will become deposited onto people's property and in their

---

[12]  Criss (2013) at 4-5 (citations omitted).

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

homes as radioactive lead-210 and polonium-210 which would subject people to increased risk of internal exposure to radioactive materials.  The second pathway is increased leachate production that could further move contaminants and radioactive materials into the groundwater.

90.     Despite these risks, the Defendants have allowed the subsurface fire to spread uncontrolled.

91.     From the start of the subsurface smoldering event and throughout the subsequent fire, Plaintiffs have regularly encountered noxious, putrid, and offensive odors on his property coming from the Landfill, which diminishes quality of life and results in lost property value.

**The Spread of Defendants' Radioactive Waste to Off-Site Businesses and Homes**

92.     As stated herein, Defendants have violated numerous standards for protection against radiation promulgated by the state of Missouri.  Defendants' negligent handling, storage, and disposal of radioactive wastes and radioactive soil as daily cover caused dangerous contaminants to be deposited in several areas throughout the Landfill site and to be highly susceptible to off-site migration of radioactive materials including radon gas, radioactive particles, and radioactively-contaminated groundwater.

93.     An example of water impacts of the Landfill will put this in perspective.  Every day, the Landfill generates about 150,000 gallons of contaminated hazardous liquid waste.  In a doomed attempt to capture that waste, the Landfill Defendants installed a leachate collection system.  But the leachate collection system itself was inadequate and has resulted in spills, releases, and leaks that have contributed to the groundwater and surface water contamination in the area.

94.     Radiological and organic contamination was also detected in trees adjacent to and off-site from the Landfill in the vicinity of the North West Auto Body Property.  The presence of

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

radioactive contamination in the trees resulted from the uptake of off-site contamination from the Landfill.

95.      Recent studies of the Landfill area document radioactive radon gas emissions from the Landfill are falling out and contaminating soil.  Kaltofen reported the following:

> Levels of $^{210}$Pb in key samples were well above background activies, and were significantly out of secular equilibrium with other members of the uranium decay chain.  This is strong evidence that the $^{210}$Pb originated by decay of short-lived, fugitive radon gas that escaped the Landfill.[13]

96.      Importantly, wherever lead-210 occurs, it will decay to polonium-210, creating an additional dose, as a matter of the laws of physics.

97.      In addition, recent studies of surface water runoff from the Landfill, particularly after heavy rains, document radioactive contaminated surface water runoff to off-site properties.[14]

98.      Critical to the legacy of radioactive particles contaminating the homes and communities surrounding the Landfill is that:

A.  The radioactive contamination has gone *off-site*, and

B.  The off-site radioactive contamination has the *fingerprint* (or profile) of the hazardous, toxic, carcinogenic radioactive wastes generated from the processing of uranium ore in downtown St. Louis which was subsequently stored at SLAPS and Latty Avenue before being disposed of in the Landfill.

---

[13] Kaltofen (2016) at 110.
[14] EPA Finds Radiation in West Lake Landfill Runoff, *CBS St. Louis*, May 26, 2016, http://stlouis.cbslocal.com2016/05/26/epa-finds-radiation-inwestlake-landfill-runoff.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

99.     Defendants have a long and consistent history of consciously disregarding the regulations for the control of radiation in Missouri by:

A.  failing to make such surveys as are reasonably necessary to comply with the regulations;

B.  failing to post adequate warning signs as required by the regulations;

C.  failing to obtain a specific license for the handling of radioactive materials and wastes;

D.  failing to adequately monitor or control its offsite effluent by air and water;

E.  failing to provide dosimetry to workers and more than occasional visits by members of the general public to the site;

F.  failing to have an adequate or proper radiation protection program for its workers, despite knowledge of the significant potential for those workers to be exposed to material emitting gamma, beta, alpha radiation;

G.  allowing off-site migration of the radioactive materials, resulting in a release to an unrestricted area;

H.  allowing excessive radon emanation from the landfill;

I.  allowing unmonitored offsite migration of contaminated surface waters without a specific license,

J.  failing to maintain adequate waste exposure records and reports;

K.  failing retain and employ qualified radiation protection experts;

L.  failing to supply former workers with a summary of their radiation dose;

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

M.  failing to see that all work with radioactive materials is carried under conditions which will minimize the possibility of spread of radioactive materials;

N.  failing to monitor the workplace and prevent worker or visitors' clothing from becoming contaminated with radioactive materials;

O.  failing to require third parties who were disposing of radioactive material at the site to obtain a specific license;

P.  allowing the disposal of radioactive waste materials by dumping or burial at a site not approved by the Department of Health;

Q.  failing to have an accurate accounting for all radioactive materials at the site; and

R.  failing to have records which show the amount of radioactive material received, transferred, decayed in storage, disposed of, and other information as may be necessary to account for the difference between the amount of radioactive material received or produced and the amount on hand.

100.    Defendants essentially violated every Missouri regulation related to radiation exposure.

101.    Due to risk of gamma radiation exposure, EPA has directed Republic to cover portions of the landfill with six inches of fill to protect workers and innocent members of the general public who will be exposed to gamma radiation if they are in that area.  To date, this recommendation has not been implemented.

102.    This zone of excessive gamma radiation was identified in 1978 during a surveillance flight by the NRC.  Despite being informed of this zone of excessive gamma radiation, Defendants did nothing.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

103.    To this day, Defendants, despite orders from the EPA, continued to disregard the presence of radioactive materials at the landfill, including by failing to protect workers and visitors from radiation, including at the transfer station.

104.    The only time Defendants takes any action to remediate or protect workers or the public from radioactive wastes is when ordered to do so by governmental body.

**Concealment of Facts Related to Risk**

105.    Republic and other Defendants through their silence have reassured government officials, the public and Plaintiffs that the Landfill has not contaminated nearby properties.  In particular, Republic and its representatives, as well as its professional public relations firm(s), have made misrepresentations that were meant to assure Plaintiffs that:

A.  Any suspicion of off-site contamination from the Landfill are merely rumors "being spread by alarmists."[15]

B.  Its activities "should reassure the community that they are safe from and not being exposed to any risk from groundwater beneath West Lake Landfill."[16]

C.  The Landfill's neighbors, including the Plaintiffs "can rest assured that they are safe."[17]

---

[15] Jacob Barker, Radium above federal guidelines in groundwater near West Lake at 2, *St. Louis Today*, Dec. 17, 2014.
[16] *Id.*
[17] Jacob Barker, Frustration with EPA handling of West Lake growing at 5, *St. Louis Today*, Jan. 3, 2015.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

D.  The fire and Landfill are both at a "managed state."[18]

E.  The waste at the Landfill presents no danger to public health.[19]

**Defendants' Radioactive Particles Contaminated the Plaintiffs' Property**

106.    The North West Auto Body Property and Menke Property (collectively, Plaintiffs' Property) are contaminated by radioactive material.

107.    Samples taken on and around Plaintiffs' Property confirm an elevated presence of radioactive particles.

108.    Plaintiffs' Property neighbors the Landfill.  This proximity puts the Plaintiffs' Property in the direct path of radioactive air emissions, radioactive particles distributed by the wind blowing such contamination off the site in dirt and dust, radon gas, and frequent offensive odors; all of which emanate from the Landfill.

109.    The Kaltofen (2016) published scientific paper identified "strong evidence of short lived fugitive radon gas that escaped from the landfill."[20]  These air emissions fall out to soil and dust as $^{210}$Pb, a highly radioactive isotope.

110.    It is also clear that radioactive material will be distributed from the Landfill "by surface water and winds."[21]  The surface water runoff threat is heightened during periods of high rainfall and flooding, and has been documented.[22]

---

[18] *Frustration with EPA handling of West Lake growing*, Jacob Barker, St. Louis Today, January 3, 2015 at p. 5.
[19] *Id.*
[20] Kaltofen (2016) at 111.
[21] Kaltofen (2016) at 104.
[22] EPA Finds Radiation in West Lake Landfill Runoff, *CBS St. Louis*, May 26, 2016, http://stlouis.cbslocal.com2016/05/26/epa-finds-radiation-inwestlake-landfill-runoff.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

111.    Frequent offensive odors from the Landfill are experienced by Plaintiffs.

112.    The radioactive wastes, which are hazardous, toxic, carcinogenic, that have polluted the Plaintiffs' Property and continue to threaten to further pollute Plaintiffs' Property match waste fingerprint (or profile) of the hazardous, toxic, carcinogenic radioactive wastes dumped in the Landfill.

113.    This radioactive contamination on Plaintiffs' property migrated from the Landfill. The contamination was caused by the Defendants' improper handling, storage, and disposal of radioactive materials.

114.    Radioactive contamination of Plaintiffs' Property and frequent offensive odors render Plaintiffs' Property unfit for normal use and enjoyment, and destroys its fair market value.

115.    As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class are currently being subjected to radioactive waste contamination and will suffer irreparable harm if an injunction is not granted requiring Defendants conduct a total and complete cleanup of the contamination and to prevent and eliminate further contamination.

## COUNT I – TRESPASS
### (brought individually and on behalf of the Property Damage Subclass)

116.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

117.    Plaintiff John C. Kitchin, Jr. owns and controls the North West Auto Body Property located at 12990 St. Charles Rock Road, more particularly described above.

118.    Plaintiff Mary Menke owns and controls the Menke Property located at 3388 Tortosa Drive, more particularly described above.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

119.     Defendants own and control property located at the Bridgeton and West Lake Landfills, which adjoins Plaintiffs' property.

120.     Defendants store and/or transport radioactive materials and other toxic and hazardous wastes on their property.

121.     Defendants have used these radioactive materials in a manner that is unreasonable, unlawful, malicious, and wanton, resulting in an invasion of Plaintiffs' property.

122.     Defendants have caused these radioactive materials to migrate from Defendants' property and contaminate Plaintiffs' property.

123.     Defendants willfully, wantonly, and maliciously caused the emission of radon gas, and radioactive particles onto and around Plaintiffs' property through their Landfill operations.

124.     It was reasonably foreseeable that Defendants' actions would and will continue to contaminate Plaintiffs' property with radioactive particles and other hazardous wastes.

125.     The migration of radon gas and radioactive particles from Defendants' property onto Plaintiffs' property has resulted and continues to result in direct physical interference with Plaintiffs' property.  Such contamination is incompatible with the normal use and enjoyment of Plaintiffs' Property.

126.     Plaintiffs did not give Defendants permission or consent to interfere with his property in this manner.  Through Defendants' actions and inactions, they are illegally and improperly using Plaintiffs' property to store hazardous, toxic, carcinogenic, radioactive wastes.

127.     The contamination of Plaintiffs' property with radon gas and radioactive particles, and other hazardous wastes, has resulted in significant damage to the property.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

128.    As a direct and proximate cause of this continuing and recurring physical interference, Plaintiffs have suffered and continue to suffer injury, including decreased property value.

## COUNT II – PERMANENT NUISANCE
### (brought individually and on behalf of the Property Damage Subclass)

129.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

130.    Plaintiffs John C. Kitchin, Jr. owns and controls the North West Auto Body Property, more particularly described above.

131.    Plaintiff Mary Menke owns and controls the Menke Property located at 3388 Tortosa Drive, more particularly described above.

132.    Landfill Defendants own and control property located at the Bridgeton and West Lake Landfills, which adjoins Plaintiffs' property.

133.    Defendants unreasonably and unlawfully stored and used radioactive materials at the Landfill, which adjoins Plaintiffs' property.

134.    The Defendants caused and contributed to the radioactive contamination of Plaintiffs' property.

135.    The Landfill and the radioactive waste that the Landfill contains are a permanent construction that is necessarily injurious to Plaintiffs as installed.  It is not practical or possible to abate the presence of the Landfill or the radioactive waste stored there.

136.    Operating an unlicensed radioactive hazardous waste dump in a populated area is a nuisance *per se*.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

137.     Defendants have intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allowed the emission of radon gas and radioactive particles onto and around Plaintiffs' property, resulting in unreasonable interference with Plaintiffs' use and enjoyment of their property.  Such contamination is incompatible with the normal use and enjoyment of the North West Auto Body Property.

138.     Defendants' interference with Plaintiffs' use and enjoyment of the property is substantial.

139.     Defendants have intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allowed the emission of noxious, offensive odors and various hazardous substances into the surrounding air resulting in unreasonable interference with Plaintiffs' use and enjoyment of the property.

140.     Defendants' continuous and unrelenting noxious odors invading Plaintiffs' property causes inconvenience to Plaintiffs and prevents them from using the property.

141.     As a direct and proximate result of Defendants' interference with Plaintiffs' use and enjoyment of the property, Plaintiffs have suffered permanent injury, including decreased property value.

## COUNT III – TEMPORARY NUISANCE
### (brought individually and on behalf of the Property Damage Subclass)

142.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

143.     Plaintiff John C. Kitchin, Jr. owns and controls the North West Auto Body Property, more particularly described above.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

144.    Plaintiff Mary Menke owns and controls the Menke Property located at 3388 Tortosa Drive, more particularly described above.

145.    Defendants own and control property located at the Bridgeton and West Lake Landfills, which adjoins Plaintiffs' property.

146.    Defendants unreasonably and unlawfully store and use radioactive materials at the Landfill, which adjoins Plaintiffs' property.

147.    The Defendants caused and contributed to the radioactive contamination of Plaintiffs' property.

148.    The Defendants intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allow the emission of radon gas and radioactive particles onto and around Plaintiffs' property, resulting in unreasonable interference with Plaintiffs' use and enjoyment of their property.  Such contamination is incompatible with the normal use and enjoyment of the North West Auto Body Property.

149.    Defendants' interference with Plaintiffs' use and enjoyment of the property is substantial.

150.    Defendants intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allow the emission of noxious, offensive odors and various hazardous substances into the surrounding air resulting in unreasonable interference with Plaintiffs' use and enjoyment of their property.

151.    Defendants' use of the Landfill causes frequent and unrelenting noxious odors to invade Plaintiffs' property and prevents Plaintiffs from using their property.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

152.     As a direct and proximate result of Defendants' interference with Plaintiffs' use and enjoyment of the property, Plaintiffs have suffered and continue to suffer injury, including decreased property value.

## COUNT IV – NEGLIGENCE
### (brought individually and on behalf of the Class)

153.     Plaintiffs re-allege and incorporate by reference every allegation of this Complaint as if each were set forth fully herein.

154.     Radioactive isotopes are known human carcinogens and are among the most toxic materials known to man.  When property becomes contaminated with these wastes, the dangers can persist in the environment for thousands of years.  Radioactive wastes should be handled, stored, and disposed of with the utmost safety in mind.  Exposures to radioactive wastes should be as low as is reasonably achievable.

155.     Knowing of the grave dangers posed by these wastes, the Defendants owed a duty of care to the Plaintiffs and the public to ensure the safe and legal handling, storage, and disposal of the radioactive wastes in order to prevent significant injury to property and persons.

156.     Defendants were negligent in accepting hazardous, toxic, carcinogenic radioactive wastes at a landfill located in a residential area that was not capable of safely and properly disposing of radioactive materials.  The Landfill was not properly licensed, nor configured, nor staffed to handle the disposal of radioactive wastes.  Upon information and belief Defendants used the radioactive materials which were mixed with contaminated soil as daily cover.

157.     The Defendants owed a duty to the Plaintiffs to operate the Landfill in a safe, legal, and reasonable manner so as not to contaminate and interfere with surrounding properties.  The

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

Defendants owed a duty not to accept radioactive wastes for which they were not licensed or qualified to handle. After accepting radioactive wastes, the Defendants had a duty to safely handle, store and/or dispose of the radioactive wastes in order to prevent significant injury to property and persons.

158.    Defendants were negligent in the construction, design, operating and maintenance of the Landfill.

159.    Defendants negligently accepted hazardous, toxic, carcinogenic radioactive wastes when the Landfill was not designed, nor staffed to handle the disposal of radioactive wastes.   The negligent design and maintenance of the Landfill by Defendants failed to prevent the release of radon gas and radioactive particles and hazardous and toxic wastes onto surrounding properties in excess of guidelines.

160.    Upon information and belief, Defendants' negligent training of personnel handling radioactive, toxic, and hazardous materials on site was a direct and proximate cause of damage to Plaintiffs' property.

161.    Defendants' negligent use of radioactive wastes mixed with radioactive soil as daily cover spread contamination into a broader area and prevented Defendants and regulators from knowing the location of these dangerous wastes.   The negligent use of radioactive materials as daily cover in an unlined Landfill resulted in contamination of the groundwater underlying the Landfill and surrounding properties.

162.    Defendants were negligent in failing to prevent the subsurface fire. Defendants should have implemented adequate practices with respect to gas extraction to avoid subsurface fires after they initially dealt with problems with smoldering events and increased subsurface

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

temperatures in the 1990's.  The subsurface fire along with the resulting noxious odors and increased risk of significant radon gas emissions are a direct and proximate result of the Defendants' negligence in the operation of the Landfill.  Such contamination is incompatible with the normal use and enjoyment of the Plaintiffs' Property.

163.    Defendants' negligence throughout the history of the mishandling and improper dumping of radioactive wastes in the Landfill has resulted in repeated releases of radon gas and radioactive particles and other hazardous materials as well as offensive odors onto Plaintiffs' property, in disregard of applicable regulations and property rights.

164.    Defendants' negligence has damaged Plaintiffs' property by contaminating it with radioactive particles, toxic and other hazardous substances and noxious odors.  Defendant's negligence diminished Plaintiffs' property value.

165.    The injuries sustained by Plaintiffs are of the kind that do not occur without negligence.

166.    Plaintiffs' injuries were the result of wastes generated, disposed of, and controlled by Defendants.

167.    Plaintiffs did not consent to the injuries, nor did they contribute to the injuries in any way.

**COUNT V – NEGLIGENCE PER SE**
**(brought individually and on behalf of the Class)**

168.    Plaintiffs re-allege and incorporate by reference every allegation of this Complaint as if each were set forth fully herein.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

169.    Defendants violated Missouri regulations for Protection against Ionizing Radiation, 19 C.S.R. 20-10.070, 20-10.090, Missouri Solid Waste Management Law and Regulations, 10 C.S.R. 80-2.020(1)(F), 80-3.010(3)(A)(2), 80-3.010(3)(B)(1), 80-3.010(8)(A), 80-3.010(9)(C)(2), 80-3.010(13)(C), 80-3.010(14)(C), 80-3.010(19)(A), 10 CSR 80-3.010(19)(C)(7); Mo. Rev. Stat. §§ 260.210.1(4), 260.380(1); Missouri Clean Water Act, Mo. Rev. State. § 644.051.1, and Missouri Air Conservation regulations, 10 C.S.R. 10-6.165, all of which require the safe storage and disposal of radioactive material so as to protect the health and safety of the public.

170.    Plaintiffs are members of the class of persons that the Missouri regulations for Protection against Ionizing Radiation, Missouri Solid Waste Management Law and Regulations, and Missouri Air Conservation regulations were intended to protect

171.    The contamination of Plaintiffs' land is the kind of injury that the Missouri regulations for Protection against Ionizing Radiation, Missouri Solid Waste Management Law and Regulations, Missouri Hazardous Waste Management Law, and Missouri Air Conservation regulations were designed to prevent.

172.    Defendants' violations of Missouri regulations for Protection against Ionizing Radiation, Missouri Solid Waste Management Law and Regulations, and Missouri Air Conservation regulations were the proximate cause of Plaintiffs' injuries.

173.    Defendants' negligence throughout the history of the mishandling and improper dumping hazardous, toxic, carcinogenic, radioactive wastes in the Landfill area has resulted in repeated releases of radon gas and radioactive particles and other hazardous materials as well as

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

offensive odors onto Plaintiffs' property in violation of applicable regulations and disregard for property rights.

174.    Defendants' negligence has damaged Plaintiffs' property by contaminating it with radioactive particles, toxic and other hazardous substances and noxious odors. Defendant's negligence diminished Plaintiffs' property value.

175.    Plaintiffs did not consent to the injuries, nor did they contribute to the injuries in any way.

### COUNT VI – STRICT LIABILITY/ABSOLUTE LIABILITY
### (brought individually and on behalf of the Class)

176.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

177.    Defendants engaged in the abnormally dangerous activity of handling, storing, and/or disposing of radioactive waste.

178.    By handling, storing, and/or disposing of radioactive waste, Defendants have created and continue to create a high degree of risk of harm to Plaintiffs' property.

179.    Defendants have intentionally failed to eliminate the risk of harm caused by their handling, storing, and/or disposing of radioactive waste.

180.    As a direct result of Defendants' abnormally dangerous activities, Plaintiffs' property was contaminated with radioactive materials and they suffered and continue to suffer injury, including diminished property value.  Such contamination is incompatible with the normal use and enjoyment of Plaintiffs' Property.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

181.     Plaintiffs' injuries are of the kinds that result from the dangerous nature of handling, storing, and/or disposing of radioactive waste.

182.     The injuries that Defendants' handling, storing, and/or disposing of radioactive waste have caused Plaintiffs to suffer, drastically outweigh the value of the Landfill.

183.     Accordingly, Defendants are jointly and severally liable for any and all damages Plaintiffs have sustained as a result of their strict liability for handling, storing and/or disposing of radioactive materials, including, without limitation, any incidental or consequential damages.

## COUNT VII – INJUNCTIVE RELIEF
### (brought individually and on behalf of the Class)

184.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

185.     Defendants have tortiously contaminated Plaintiffs' property with hazardous, toxic, carcinogenic, radioactive wastes.

186.     The Defendants' tortious acts threaten the safety and normal use and enjoyment of the Plaintiffs' property.

187.     The radioactive contamination of Plaintiffs' property has caused a significant increased risk to Plaintiffs, and therefore Plaintiffs are in need of a thorough scientific evaluation of the radioactive contaminant levels throughout the Property.

188.     The need for such an evaluation is a direct consequence of the Defendants' tortious conduct, and does not arise from the innocent conduct of the homeowners.

189.     Therefore, Plaintiffs seek injunctive and equitable relief to require the Defendants to conduct the necessary scientific evaluation their property, consistent with contemporary

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

scientific principles.  Plaintiffs seek injunctive and equitable relief to require the Defendants to respond to the consequences of this tortious contamination by providing the necessary medical monitoring in the form of environmental testing, clean-up, and medical tests as indicated by the results of the scientific evaluation.

190.    Plaintiffs seek this injunctive and equitable relief either in the form of an injunction requiring the Defendants to conduct the necessary monitoring themselves, or in the form of a court-ordered and court-supervised fund (with a court-appointed trustee if the court deems that appropriate) to provide for the necessary monitoring.

191.    Such injunctive and equitable relief will decrease the radioactive contamination risks of Plaintiffs' Property, decrease the interference with the use and enjoyment of said property, and further mitigate Plaintiffs' damages.

## COUNT VIII – CIVIL CONSPIRACY
### (brought individually and on behalf of the Class)

192.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

193.    Defendants wrongfully and fraudulently agreed and conspired together to injure Plaintiffs and members of the Class, by wrongfully releasing radioactive wastes, as more fully alleged herein.

194.    Defendants wrongfully and fraudulently agreed and conspired together to take the actions alleged herein giving rise to causes of action for nuisance, trespass, negligence, negligence per se, strict/absolute liability, injunctive relief, and punitive damages as alleged herein.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

195.    As result of the conspiracy of the Defendants, Plaintiffs and members of the Class have suffered damages, as more fully alleged herein.

## COUNT IX – PUNITIVE DAMAGES
### (brought individually and on behalf of the Class)

196.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

197.    Defendants committed one or more of the willful, wanton, malicious, reckless, and outrageous acts more fully set forth above which individually or cumulatively justify the award of punitive damages in this matter.

198.    Defendants knew or had information from which, in the exercise of ordinary care, should have known that such conduct, as detailed above, created a high degree of probability of injury to Plaintiffs and others similarly situated.

199.    The willful, wanton, malicious, reckless, and outrageous acts of Defendants, as detailed above, evidence Defendants' complete indifference to and/or conscious disregard for the safety of Plaintiffs, and others similarly situated.

## PRAYER FOR RELIEF

**WHEREFORE**, as to each Count, and all Counts, Plaintiffs pray for judgment in favor of Plaintiffs and Class and against Defendants Bridgeton Landfill, LLC, Republic Services, Inc., Allied Services, L.L.C., and Rock Road Industries, Inc., as well as awarding the following to Plaintiffs and against Defendants:

> a.   an award of actual, general, special, incidental, statutory, compensatory and consequential damages in an amount to be proven at trial, including compensatory

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

damages for the loss and use of enjoyment of Plaintiffs' property; annoyance and discomfort; damage to Plaintiffs' personal property; the diminution in the market value of Plaintiffs' property; as well as the costs and expenses incurred as a result of Plaintiffs' exposure to radioactive emissions, including costs of remediation and relocation;

b.  an award of double damages for malicious trespass as provided for under Mo. Rev. Stat. § 537.330;

c.  an award of punitive and exemplary damages as fair and reasonable in an amount sufficient to punish Defendants and to deter similar conduct in the future;

d.  costs and attorney fees;

e.  interest on the above amounts as allowed by law, including but not limited to pre- and post-judgement interest;

f.  for appropriate injunctive and equitable relief, permitted by law or equity including a preliminary and/or permanent injunction enjoining Defendants from continuing the unlawful conduct as set forth herein and directing Defendants to identify, with Court supervision, members of the Class in order to compensate them and to clean up all contamination, and including medical monitoring; and

g.  for any further relief this Court deems just and proper.

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

Respectfully submitted,

KEANE LAW LLC

  /s/ Ryan A. Keane

Ryan A. Keane, # 62112
Alex Braitberg, # 67045
7777 Bonhomme Ave., Ste. 1600
St. Louis, MO 63105
Phone: (314) 391-4700
Fax: (314) 244-3778
ryan@keanelawllc.com
alex@keanelawllc.com

JOHNSON GRAY, LLC
Anthony D. Gray, # 51534
319 North 4th Street, Suite 212
St. Louis, MO 63102
Phone: (314) 385-9500
agray@johnsongraylaw.com

COOPER LAW FIRM, L.L.C.
Barry J. Cooper, Jr., TX Bar # 24057527 *pro hac vice*
forthcoming
Celeste Brustowicz, LA Bar # 16835 *pro hac vice*
forthcoming
508 St. Philip Street
New Orleans, LA 70116
Phone: (504) 566-1558
bcooper@sch-llc.com
cbrustowicz@sch-llc.com

and

Electronically Filed - St Louis County - April 02, 2018 - 06:18 PM

RON AUSTIN & ASSOCIATES, L.L.C.
Ron A. Austin. LA Bar # 23630, *pro hac vice*
forthcoming
920 4th Street
Gretna, Louisiana 70053
Phone: (504) 227-8100
Fax: (504) 227-8122
raustin@austin-associates.net

*Attorneys for Plaintiffs and proposed Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 2, 2018, a true and accurate copy of the foregoing was served by filing it in the court's electronic filing system, which will provide electronic notice to all parties and attorneys of record.

/s/ Ryan A. Keane