IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN C. KITCHIN, JR., et al., *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> vs. <br><br> BRIDGETON LANDFILL, LLC, et al., <br><br> Defendants. <br>------------------------------------------------------- <br> BRIDGETON LANDFILL, LLC, <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> COTTER CORPORATION, N.S.L <br> **Hold for Service** <br><br> Third-Party Defendant. | Case No. 4:18-cv-00672-CDP |

**THIRD-PARTY COMPLAINT**

COMES NOW Defendant/Third-Party Plaintiff Bridgeton Landfill, LLC, pursuant to Federal Rule of Civil Procedure Rule 14, by and through its undersigned counsel, and for its Third-Party Complaint against Third-Party Defendant Cotter Corporation (N.S.L.), states as follows:

## PARTIES

1. Bridgeton Landfill, LLC ("Bridgeton") is a Delaware Limited Liability Company authorized to conduct business in Missouri.

2. Cotter Corporation (N.S.L.) ("Cotter") is a New Mexico corporation with its principal place of business in Englewood, Colorado.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1322(d), and Federal Rule of Civil Procedure 14. The matter in controversy exceeds $5,000,000, exclusive of interest and costs. Minimal diversity is present because Plaintiffs are Missouri citizens and Defendant Republic Services, Inc. is a Delaware corporation with its principal place of business in Arizona. Accordingly, Republic is a citizen of Delaware and Arizona for purposes of diversity jurisdiction. Further, Defendant Bridgeton brings this suit under Federal Rule of Civil Procedure 14 as a third-party plaintiff.

4. This Court has personal jurisdiction over Cotter pursuant to Federal Rule of Civil Procedure 4(k)(1) and R.S.Mo. § 506.500.1 because Cotter transacted business within Missouri and committed tortious acts in Missouri, which facts form the basis of this action, such that it has purposely availed itself of Missouri law and could reasonably anticipate defending a lawsuit in Missouri.

5. Venue is proper under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to this action occurred in this District, as Plaintiffs were allegedly injured in this District, and because a substantial part of property that is the subject of the action is situated in this District.

## FACTS COMMON TO ALL COUNTS

### Plaintiffs' Allegations Against Defendants/Third-Party Plaintiff

6. Plaintiffs John C. Kitchin, Jr., North West Auto Body Company, and Mary Menke, on behalf of themselves and all Missouri citizens who are owners of real property within the 11.0 square mile geographic region in the vicinity of the West Lake Landfill, and who currently reside, or have resided since 1973, on a property within the 11.0 square mile geographic region in the vicinity of the West Lake Landfill in Bridgeton, Missouri ("the Landfill"), as depicted in their First Amended Petition, have filed a nine-count petition against Defendants related to low-level radioactive waste at the Landfill. *See* First Amended Class Action Petition.

7. Plaintiffs allege Defendants received Manhattan Project radioactive waste at the Landfill. *Id*. at ¶¶ 1, 61-67.

8. Plaintiffs allege the owners of the waste were trying to dispose of dangerous radioactive materials, which the Landfill, Plaintiffs allege, was not permitted to accept. *Id*. at ¶ 66.

9. According to Plaintiffs, their property was allegedly contaminated with radioactive waste from the Landfill, which allegedly resulted in property damage and the need for medical monitoring. *See id.*

10. The Petition alleges causes of action for trespass, permanent nuisance, temporary nuisance, negligence, negligence per se, strict or absolute liability, and civil conspiracy, and seeks compensatory damages, punitive damages, and injunctive relief. *Id.*

**Third-Party Defendant Caused Plaintiffs' Alleged Injuries, If Any**

11. The materials that Plaintiffs allege harmed them were deposited at the Landfill by Cotter.

12. As part of its handling of these radioactive materials, which Cotter eventually disposed at the West Lake Landfill, as well as other radioactive materials not disposed of at the West Lake Landfill, Cotter was issued a material source license ("the License") by the Atomic Energy Commission in 1969. A copy of the License is attached as **Exhibit A**.

13. The License included approximately 8,700 tons of leached barium sulfate residue, among other materials. The leached barium sulfate residue was formerly stored at 9200 Latty Avenue Hazelwood, Missouri ("Latty Avenue"), a portion of which is now, due in part to Cotter's former activities there, designated as the Hazelwood Interim Storage Superfund Site.

14. Cotter attempted without success, multiple times, to get the Atomic Energy Commission to accept the leached barium sulfate residue for disposal at a government-operated radioactive material site now designated as the Weldon Spring Former Army Ordinance Works Superfund Site.

15. The Atomic Energy Commission denied Cotter's multiple requests to transport the leached barium sulfate residue to Weldon Springs.

16. Cotter also made inquiry to the Atomic Energy Commission about the possibility of on-site burial of the leached barium sulfate residue at Latty Avenue.

17. After the Atomic Energy Commission detailed the processes and showings Cotter would have to undertake and make prior to any possible permission for on-site burial at Latty Avenue, Cotter abandoned the option of on-site burial.

18. Cotter obtained a rough market price of costs exceeding $2 million for disposal of the leached barium sulfate residue at a private facility, but Cotter did not spend the $2 million to properly dispose of the material.

19. Cotter investigated other means of disposal of the leached barium sulfate residue including, but not limited to, providing it to a property owner to fill a low area in a floodplain.

20. Instead, Cotter mixed the leached barium sulfate residue with dirt from the ground at Latty Avenue and arranged for the mixture to be transported to and disposed of at the Landfill.

21. When the leached barium sulfate residue and dirt mixture was brought to the Landfill, Cotter represented it was "clean fill" and the Landfill operator therefore believed it was appropriate for typical landfill use of soil as daily, intermediate and final cover.

22. Cotter did not inform the Landfill operator that the mixture contained radioactive materials.

23. Cotter applied for termination of the License in 1974. A copy of the application for termination of the License is attached as **Exhibit B.** In the application, Cotter represented "all source materials now owned or held by Cotter Corporation are situated in Colorado."

24. Indeed, the License was issued incorporating the procedures described in Cotter's application dated December 16, 1969, attached as **Exhibit C**, which specified that the material was to be dried and loaded into rail cars and shipped by Cotter to its uranium mill in Canon City, Colorado.

25. Cotter did not inform the Atomic Energy Commission that it did not follow the procedures described in Cotter's application for the License in disposing of the leached barium sulfate residue.

26. Cotter did not inform the Atomic Energy Commission that the leached barium sulfate residue was mixed with dirt from the ground at Latty Avenue and disposed of at the Landfill.

27. The Atomic Energy Commission terminated the License on November 13, 1974. A copy of the termination is attached as **Exhibit D.**

28. The Nuclear Regulatory Commission ("NRC") sampled the surface soil at the West Lake Landfill in 1988 and concluded that there were about 3 Ci each of Uranium-238 and Uraium-234, 14 Ci of Radium-226, and 1400 Ci of Thorium-230 contained in the radioactive materials in the Landfill.

29. Thus, the NRC determined that the material present in the Landfill was a form of natural uranium with daughters, although the daughter radionuclides were not in secular equilibrium.

30. Cotter did not inform the Landfill operator of the material fact that the mixture contained radioactive materials, much less the material fact that it contained radioactive materials that were out of secular equilibrium, meaning the materials were more concentrated in Thorium-230 and therefore would over time become more concentrated in Radium-226.

31. The NRC also projected in 1988 that because of the large ratio of Thorium-230 radioactivity to that of Radium-226, the radioactive decay of the Thorium-230 would increase the concentration of its decay product, Radium-226, until these two radionuclides reach equilibrium again.

32. Cotter did not inform the Landfill operator that the mixture contained radioactive materials or that the decay of the Thorium-230 could increase the concentration of Radium-226 until these two radionuclides reach equilibrium.

6

33. Cotter was required to properly dispose of the radioactive materials to partially fulfill its obligations under the License; in order to terminate the License, Cotter certified to the federal government that it had properly disposed of all the licensed waste.

34. Cotter did not properly dispose of the radioactive materials under or pursuant to the License.

35. Cotter's disposal of the material at the Landfill and failure to disclose that the material was radioactive is the actual cause of Plaintiffs' alleged injuries, if any; but for Cotter's disposal of the radioactive material at the Landfill, Plaintiffs could not have been injured as alleged in the Petition.

36. Cotter's disposal of the material at the Landfill and failure to disclose that the material was radioactive and out of secular equilibrium was the proximate cause of Plaintiffs' alleged injuries, if any; it was reasonably foreseeable to Cotter that depositing these radioactive materials at the Landfill, without telling the Landfill operators of the nature of the materials, could cause injury to the Landfill and potentially to people or other property.

## COUNT I – CLAIM FOR CONTRIBUTION

37. Bridgeton restates and incorporates all allegations set forth in Paragraphs 1-37 as if fully set forth herein.

38. Bridgeton denies fault for Plaintiffs' alleged injuries and damages, and further preserves all affirmative and other defenses set out in response to Plaintiffs' First Amended Class Action Petition.

39. If Bridgeton is liable to any of the Plaintiffs, which it denies, then Cotter is a joint tortfeasor who is liable in whole, or in part, for Plaintiffs' alleged damages and/or injuries, if any.

Plaintiffs' alleged damages, if any, were caused in part or entirely by Cotter, as evidenced in part by the following:

  (a) Cotter mixed the radioactive materials with dirt from Latty Avenue, but provided and presented it to the Landfill as clean fill;

  (b) Cotter had the mixture transported to the Landfill claiming it was clean fill;

  (c) Cotter did not inform the operator of the Landfill that the fill deposited at the Landfill contained radioactive materials;

  (d) Cotter knew radioactive materials were being taken to the Landfill without the Landfill operator's knowledge or consent;

  (e) Cotter knew and did not disclose that the radioactive materials were out of secular equilibrium; and

  (f) Cotter knew and did not disclose that the radioactive materials would increase in radiological activity over time.

40. In the event that any damages are assessed against Bridgeton, though Bridgeton denies that Plaintiffs are entitled to damages, any such damages were caused in whole or in part by the conduct, fault, acts, carelessness, omissions, and/or negligence of Cotter, thereby barring or limiting any recovery against Bridgeton.

41. Any fault of Bridgeton, which Bridgeton denies, must be compared to the fault of Cotter, and Bridgeton's liability must be limited to the percentage of fault apportioned to Bridgeton, and Bridgeton should recover against Cotter any amount assessed against Bridgeton than is more than Bridgeton's fault.

42. To the extent that Bridgeton is found liable to Plaintiffs, which Bridgeton denies, Bridgeton is entitled to contribution (or to the extent available, indemnification) from Cotter for any and all damages that may be assessed against Bridgeton as a result of Plaintiffs' allegations.

43. Accordingly, the jury should award Bridgeton such proportion of the total sum paid by it to Plaintiffs as corresponds to the degree of fault of Cotter.

WHEREFORE, Defendant/Third-Party Plaintiff Bridgeton Landfill, LLC prays for judgment in its favor on its Third-Party Complaint and against Third-Party Defendant Cotter Corporation (N.S.L.), for its Court costs incurred herein, and for such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Defendant/Third-Party Plaintiff Bridgeton Landfill, LLC hereby demands a jury trial on all claims for which it is entitled to a jury trial

Dated:  October 1, 2021                    Respectfully submitted,

By: */s/ William G. Beck*
William G. Beck            #26849(MO)
Allyson E. Cunningham     #64802(MO)
Attorneys for Defendants and Third-Party Plaintiff
LATHROP GPM LLP
2345 Grand Blvd., Ste. 2200
Kansas City, MO  64108-2618
Telephone: (816) 292-2000
Fax: (816) 292-2001
Email: william.beck@lathropgpm.com
Email: allyson.cunningham@lathropgpm.com

Patricia Lehtinen Silva      #67213(MO)
Attorney for Defendants and Third-Party Plaintiff
LATHROP GPM LLP
7701 Forsyth Blvd., Ste. 500
Clayton, MO  63105
Telephone: (314) 613-2800
Fax: (314) 613-2801
Email: patricia.silva@lathropgpm.com

## **CERTIFICATE OF SERVICE**

  I hereby certify that on October 1, 2021, I electronically filed the foregoing document via the Court's CM/ECF system, which will serve notice on all counsel of record.

              */s/ William G. Beck*
              An Attorney for Defendants and Third-Party Plaintiff