UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHN C. KITCHIN, JR., et al.,              )
*on behalf of themselves and all others*    )
*similarly situated*,                        )
                                           )
      Plaintiffs,                     )
                                           )
      v.                              )
                                           )
BRIDGETON LANDFILL, LLC,                   )
et al.,                                    )
                                           )
      Defendants;                     )
_____ )              No. 4:18 CV 672 CDP
                                           )
BRIDGETON LANDFILL, LLC,                   )
                                           )
    Third-Party Plaintiff,            )
                                           )
      v.                              )
                                           )
COTTER CORPORATION, N.S.L.,                )
                                           )
    Third-Party Defendant.            )

## MEMORANDUM AND ORDER

      This matter is before the Court on defendants Bridgeton Landfill, LLC and

Republic Services, Inc.'s motion to disqualify attorney James F. Clayborne, Jr. and

his law firm of Clayborne & Wagner, LLP, in their representation of plaintiffs in

this action.  The motion to disqualify arises from plaintiffs' recent retention of

Clayborne, who previously represented defendants in 2013.  For the reasons that

follow, I will grant the motion to disqualify.

**Background**

Plaintiffs John C. Kitchin, Jr., North West Auto Body Company, and Mary Menke bring this putative class action seeking damages and injunctive relief for radioactive contamination of their respective properties allegedly caused by neighboring West Lake Landfill, located in North St. Louis County, Missouri. Plaintiffs assert that their property has been damaged by soil, dust, and air contamination from improper generation, handling, storage, and disposal of radioactive materials by four corporate defendants who are owners and operators of the Landfill.  Bridgeton Landfill, as an owner, and Republic Services, as an operator, are among the defendants.

More than 46,000 tons of radioactive wastes at the center of this litigation were mixed with soil and deposited at West Lake Landfill in 1973 for use as daily cover for the Landfill.  Plaintiffs allege that about 15 acres of the Landfill are filled with radioactive wastes at a depth of up to 20 feet, and that the radioactive material has contaminated soil, water, and air, resulting in the contamination of surrounding communities where their properties are located.  Plaintiffs also allege that they are at increased risk of radioactive exposure by, *inter alia*, defendants' installation of an inadequate leachate collection system that resulted in spills, releases, and leaks that contributed to the groundwater and surface water contamination; and failure to control a subsurface fire at the Landfill, which could result in increased leachate production from large amounts of steam that could further move contaminants and

radioactive materials into the groundwater.

Plaintiffs filed this action in State court in April 2018, after which defendants removed the case to this Court invoking several bases of Federal subject-matter jurisdiction. The case is presently stayed pending the United States Supreme Court's decision on a petition for writ of certiorari filed in a separate but related case.

In 2013, attorney Clayborne represented defendants Bridgeton Landfill and Republic Services for the purpose of facilitating negotiations between them and a water treatment facility in Illinois, the Illinois Environmental Protection Agency, and the City of Sauget, Illinois, relating to defendants' desired resumption of its business relationship with the water treatment facility. The facility had earlier ceased accepting leachate discharge from the Bridgeton Landfill because of alleged excessive hazardous waste contained therein. During the course of this representation, defendants shared confidential information and documents with Clayborne to assist in his efforts to arrange negotiations between the parties.

On June 1, 2022, Clayborne entered his appearance in this action on behalf of plaintiffs. Plaintiffs aver that they retained Clayborne to "participat[e] on their behalf in any negotiations that can be scheduled" while this action is stayed. (ECF 115-1.) Defendants Bridgeton Landfill and Republic Services move to disqualify Clayborne, arguing that his current representation is substantially related to the matter on which he represented defendants in 2013 wherefrom he gained

"knowledge of Defendants' history with the regulatory agencies and negotiation strategies surrounding leachate disposal issues at the landfill" and obtained relevant, confidential information regarding *inter alia* "the strategy to resolve issues related to the leachate issues that the landfill was facing during the very period that Plaintiffs allege that leachate volume and leachate management contributed to their harm." (ECF 125-1 at pp. 2-3 n.3, p. 6.) Defendants also seek to impute Clayborne's disqualifying conflict to his law firm.

Because Clayborne disputed defendants' factual averments regarding the extent of his prior representation, could neither confirm nor deny what documents he received during that representation, and could not recall the extent to which he reviewed such documents, I ordered defendants to submit to the Court for *in camera* review the relevant privileged documents and communications shared with Clayborne during his prior representation. Upon review of the documents and communications, I will grant defendants' motion to disqualify.

## Discussion

"The decision to grant or deny a motion to disqualify an attorney rests in the discretion of the district court[.]" *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154 (8th Cir. 1999) (internal quotation marks and citation omitted). While district courts are generally "encourage[d] . . . to strictly enforce the Code of Professional Responsibility," *Central Milk Producers Co-op. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 993 (8th Cir. 1978), motions to disqualify are "subjected to particular

scrutiny" because of the potential for abuse by opposing counsel. *Macheca Transp. Co. v. Philadelphia Indem. Ins. Co.,* 463 F.3d 827, 833 (8th Cir. 2006) (internal quotation marks and citations omitted). The party moving for disqualification bears the burden of showing that continuing representation would be impermissible. *See A.J. by L.B. v. Kierst,* 56 F.3d 849, 859 (8th Cir. 1995). "However, because courts also have the duty to maintain public confidence in the legal profession and to ensure the integrity of judicial proceedings, any legitimate doubts must be resolved in favor of disqualification." *Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, No. 4:10CV645 CDP, 2011 WL 1791714, at *4 (E.D. Mo. May 10, 2011) (citing *Coffelt v. Shell,* 577 F.2d 30, 32 (8th Cir. 1978); *Olson v. Snap Prods., Inc.*, 183 F.R.D. 539, 542 (D. Minn. 1998)).

This Court has adopted the Missouri Supreme Court's Rules of Professional Conduct. *See* E.D. Mo. L.R. 12.02. Two rules are relevant here. Rule 4-1.9(a) governs the duties an attorney owes to former clients:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Rule 4-1.10(a) governs the imputation of an attorney's conflict to his law firm:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 4-1.7 or 4-1.9[.]

Plaintiffs raise no argument against disqualifying Clayborne's law firm under Rule

- 5 -

4-1.10(a) in the event I determine that Rule 4-1.9(a) bars Clayborne from representing them in this action.  Accordingly, I focus on Rule 4-1.9(a).

Rule 4-1.9(a) is "prophylactic, aimed at 'prevent[ing] even the potential that a former client's confidences and secrets may be used against him.'" *Zerger & Mauer LLP v. City of Greenwood*, 751 F.3d 928, 932 (8th Cir. 2014) (quoting *In re Carey*, 89 S.W.3d 477, 493 (Mo. banc 2002)) (alteration in *Zerger & Mauer*).  The Rule "does not require the former client to show that actual confidences were disclosed." *In re Carey*, 89 S.W.3d at 494 (internal quotation marks and citation omitted).  Rather, the "primary concern is the possibility, or appearance of the possibility, that the attorney may have received confidential information during the prior representation." *Zerger & Mauer*, 751 F.3d at 932 (internal quotation marks and citation omitted).  I must determine whether confidential information acquired in the course of representing the former client is relevant to the issues raised in the current litigation.  *In re Carey*, 89 S.W.3d at 494.

To establish a conflict of interest under Rule 4-1.9(a), a movant must prove: "(1) the attorney had a former attorney-client relationship with the movant; (2) the interests of the attorney's current client are materially adverse to the movant's interests; and (3) the current representation involves the same or a substantially related matter as the attorney's former representation of the movant." *Zerger & Mauer*, 751 F.3d at 932 (internal quotation marks and citation omitted).

There is no dispute with respect to the first and second elements.  Clayborne

had an attorney-client relationship with defendants Bridgeton Landfill and

Republic Services in 2013, and the plaintiffs' interests in this action are materially

adverse to both Bridgeton Landfill's and Republic Services' interests.  Regarding

the third element, Missouri courts have adopted a non-exhaustive list of six factors

to consider in determining whether a lawyer's current representation is

substantially related to the former representation:

> (1) the case involved the same client and the matters or transactions in
> question are relatively interconnected or reveal the client's pattern of
> conduct; (2) the lawyer had interviewed a witness who was key in
> both cases; (3) the lawyer's knowledge of a former client's negotiation
> strategies was relevant; (4) the commonality of witnesses, legal
> theories, business practices of the client, and location of the client
> were significant; (5) a common subject matter, issues and causes of
> action existed; and (6) information existed on the former client's
> ability to satisfy debts and its possible defense and negotiation
> strategies.

*In re Carey*, 89 S.W.3d at 494 (citation omitted).  "In some cases, one factor, if

significant enough, can establish that the subsequent case is substantially related."

*Id.*

As set out above, defendants Bridgeton Landfill and Republic Services

retained Clayborne in 2013 for the primary purpose of facilitating negotiations

with private and public entities to reestablish a business relationship that went

awry because of the presence of hazardous material in leachate discharge from

defendants' site.  During the course of this representation, defendants shared

confidential information with Clayborne, including the motivations behind their

specific negotiation tactics and strategies – especially the "why" of their desired result, the "how" to get there, and the particular circumstances of their leachate discharge processes that drove their strategies. They asked and encouraged Clayborne to engage in certain communications and to convey certain information to the respective entities with whom they were negotiating, and Clayborne offered strategies to assist in the effort to achieve defendants' desired result.

As to Clayborne's current representation, plaintiffs admit in response to defendants' motion to disqualify that they retained Clayborne to participate on their behalf in any negotiations that can be scheduled. While the 2013 representation did not involve the same transactions, witnesses, or causes of action as in this litigation, it nevertheless exposed Clayborne to and brought him into defendants' intimate negotiation strategies based in part upon the Landfill's leachate disposal systems in place at the time. Given that that was the central purpose of his representing defendants then and is the central purpose of his representing their adversaries now, the relationship between the two representations is significant enough for me to find that the nature and purpose of Clayborne's current representation of plaintiffs is substantially related to his 2013 representation of defendants. Whether Clayborne specifically remembers the documents or confidences disclosed is of no instance. Avoiding the risk of even inadvertent disclosure of confidential information helps to ensure the integrity of these judicial proceedings and maintain public confidence in the legal profession.

*Cf. State of Ark. v. Dean Foods Prods. Co., Inc.*, 605 F.2d 380, 387 (8th Cir. 1979) (recognizing risk of attorney and staff inadvertently proceeding along lines dictated or influenced by confidential information), *overruled on other grounds by In re Multi-Piece Rim Prods. Liab. Litig.*, 612 F.2d 377 (8th Cir. 1980); *In re Carey*, 89 S.W.3d at 496 ("Every lawyer owes a solemn duty . . . to strive to avoid not only professional impropriety but also the appearance of impropriety."). I will therefore disqualify Clayborne from representing plaintiffs here.

Given that Clayborne is prohibited from representing plaintiffs in this action under Rule 4-1.9(a), a literal reading of Rule 4-1.10(a) precludes any lawyer associated in his law firm from representing plaintiffs as well. The "premise" of Rule 4-1.10(a) is "that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client or . . . that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." Rule 4-1.10 cmt. [2]. As noted above, plaintiffs raise no argument disputing application of Rule 4-1.10(a), and there is nothing before the Court persuading me that the strictures of the Rule should not apply. I will therefore disqualify the law firm of Clayborne & Wagner, LLP, from representing plaintiffs in this action.

I do not lightly enter this decision to partially deprive plaintiffs of their choice of counsel. But to maintain public confidence in the legal profession and to ensure the integrity of judicial proceedings, I must grant defendants' motion to

disqualify.  In making this determination, I have considered that no less than nine other attorneys from at least five other law firms represent plaintiffs in this action; many have done so from the case's inception.  Moreover, this case is presently stayed.  If plaintiffs wish to obtain new counsel for the special purpose of engaging in negotiations as they have represented, the present stay in the proceedings should allow them sufficient time to do so.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion to Disqualify James Clayborne and the Law Firm of Clayborne & Wagner LLP in their Representation of Plaintiffs [107] is **GRANTED.**  The Clerk of Court shall make the appropriate entry on the docket of this case removing attorney James F. Clayborne, Jr., as counsel of record for plaintiffs.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 28th day of September, 2022.