**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN C. KITCHIN, JR., et al., | ) | |
| *on behalf of themselves and all others* | ) | |
| *similarly situated*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.  4:18-cv-00672-CDP |
| vs. | ) | |
| | ) | |
| BRIDGETON LANDFILL, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ANSWER

Defendant Bridgeton Landfill, LLC ("Bridgeton") for its Answer to Plaintiff's Second Amended and Supplemental Complaint ("Complaint"), and for its Crossclaim against Defendant Cotter Corporation (N.S.L.) ("Cotter") states as follows:

## I.    INTRODUCTION

1.     Bridgeton admits that in 1969 Cotter Corporation purchased and assumed responsibility in the form of a source material license for radioactive source materials which were created by a government contractor as part of the Manhattan Project.  Paragraph 1 does not contain any specific allegation against Bridgeton to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.  Bridgeton specifically denies the radioactive materials were "mill tailings."

2.     Upon information and believe, Bridgeton admits that Cotter dried and shipped some of the source material at a site on Latty Avenue in Hazelwood, Missouri and the source material was shipped to Cotter's plant in Canon City, Colorado.  Paragraph 2 does not contain

any allegation against Bridgeton to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

3.      Bridgeton admits that the material Cotter purchased included approximately 8,700 tons of leached barium sulfate residues ("LBSR") which were source material.  Paragraph 3 does not contain any allegation against Bridgeton to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

4.      Bridgeton admits Cotter mixed the 8,700 tons of leached barium sulfate residue ("LBSR") with dirt from the ground at the Latty Avenue Site. Bridgeton further admits Cotter arranged for the mixture to be transported to and disposed of at the West Lake Landfill, despite Cotter knowing that the mixture was radioactive and contained source material. Bridgeton denies the remaining allegations in Paragraph 4.

5.      Bridgeton denies the allegations in Paragraph 5.

6.      Bridgeton denies the allegations in Paragraph 6.

7.      Bridgeton denies the allegations in Paragraph 7.

8.      Bridgeton denies the allegations in Paragraph 8.

9.      Bridgeton denies the allegations in Paragraph 9.

10.     Bridgeton denies the allegations in Paragraph 10.

## II.      JURISDICTION AND VENUE

11.     Paragraph 11 states legal conclusions to which no response is required.  To the extent a response is required, Bridgeton admits this Court has subject matter jurisdiction over this action pursuant to, but not limited to, the Class Action Fairness Act of 2005 and 28 U.S.C. § 1332(d), as mandated by the Eighth Circuit Court of Appeals. *See* 3 F.4th 1089 (8th Cir. 2021),

*cert. denied*, 142 S. Ct. 1111 (Feb. 22, 2022). Further answering, Bridgeton states that this Court has subject matter jurisdiction over this action pursuant to the Price Anderson Act.

12.     Paragraph 12 states legal conclusions to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 12.

### III.     THE PARTIES

13.     Bridgeton is without information or knowledge sufficient to form a belief as to Paragraph 13, and therefore denies the same.

14.     Bridgeton is without information or knowledge sufficient to form a belief as to Paragraph 14, and therefore denies the same.

15.     Bridgeton is without information or knowledge sufficient to form a belief as to Paragraph 15, and therefore denies the same.

16.     Bridgeton is without information or knowledge sufficient to form a belief as to Paragraph 16, and therefore denies the same.

17.     Bridgeton denies the allegations in Paragraph 17.

18.     Bridgeton denies the allegations in Paragraph 18.

19.     Bridgeton denies the allegations in Paragraph 19.

20.     Bridgeton admits Republic Services, Inc. is a Delaware corporation with its principal place of business in Arizona.  Bridgeton denies the remaining allegations contained in Paragraph 20.

21.     Bridgeton admits Allied Services, LLC is a Delaware limited liability company. Its two members are Allied Waste Landfill Holdings, Inc. and Allied Waste North America, LLC.  Allied Waste Landfill Holdings, Inc. is a Delaware corporation with its principal place of business in Arizona.  Allied Waste North America, LLC is a Delaware limited liability company.

Its sole member is Allied Waste Industries, LLC, a Delaware limited liability company.  Allied

Waste Industries, LLC's sole member is Republic Services, Inc. a Delaware corporation with its

principal place of business in Arizona.  Bridgeton denies the remaining allegations contained in

Paragraph 21.

22.     Bridgeton admits Bridgeton Landfill, LLC is a Delaware limited liability

company whose sole member is Allied Waste North America, LLC, a Delaware limited liability

company.  Allied Waste Industries, LLC's sole member is Republic Services, Inc. a Delaware

corporation with its principal place of business in Arizona.  Bridgeton denies the remaining

allegations contained in Paragraph 22.

23.     Bridgeton is without information or knowledge sufficient to form a belief as to

Paragraph 23, and therefore denies the same.

### IV.     FACTS

24.     Paragraph 24 does not contain any allegation to which a response is required.  To

the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the

same.

25.     Paragraph 25 does not contain any allegation to which a response is required.  To

the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the

same.

26.     Paragraph 26 does not contain any allegation to which a response is required.  To

the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the

same.

27.     Paragraph 27 does not contain any allegation to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

28.     Paragraph 28 does not contain any allegation to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

29.     Paragraph 29 does not contain any allegation to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

30.     Paragraph 30 does not contain any allegation to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

31.     Paragraph 31 does not contain any allegation to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

32.     Paragraph 32 does not contain any allegation to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

33.     Paragraph 33 does not contain any allegation to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

34.     Paragraph 34 does not contain any allegation to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

35.     Paragraph 35 does not contain any allegation to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

36.     Paragraph 36 does not contain any allegation to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

37.     Paragraph 37 does not contain any allegation to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

38.     Paragraph 38 does not contain any allegation to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

39.     Paragraph 39 does not contain any allegation to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

40.     Bridgeton admits that in 1969 Cotter Corporation purchased and assumed responsibility in the form of a source material license for radioactive source materials which were created by a government contractor as part of the Manhattan Project.  Paragraph 40 does not contain any allegation against Bridgeton to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

41.     Upon information and belief, Bridgeton admits that from 1969 to 1973 Cotter dried and shipped some source material to their plant in Canon City, Colorado.  Paragraph 41 does not contain any allegation against Bridgeton to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

42.     Bridgeton admits that the material Cotter purchased included approximately 8,700 tons of leached barium sulfate residues ("LBSR") which were source material.  Paragraph 42 does not contain any allegation against Bridgeton to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

43.     Paragraph 43 does not contain any allegation against Bridgeton to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

44.     Paragraph 44 does not contain any allegation against Bridgeton to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

45.     Paragraph 45 does not contain any allegation against Bridgeton to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

46.     Paragraph 46 does not contain any allegation against Bridgeton to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

47.     Bridgeton admits Cotter mixed the 8,700 tons of LBSR with dirt from the ground at the Latty Avenue Site. Bridgeton further admits Cotter arranged for the source material to be

transported to and disposed of at the West Lake Landfill, despite Cotter knowing that the source material was radioactive.  Bridgeton denies the remaining allegations in Paragraph 47.

48.     Paragraph 48 does not contain any allegation against Bridgeton to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

49.     Bridgeton denies the allegations in Paragraph 49.

50.     Bridgeton denies the allegations in Paragraph 50.

51.     Bridgeton denies the allegations in Paragraph 51.

52.     Paragraph 52 states legal conclusions to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 52 and states that the Plaintiffs' claims are causes of action under the Price Anderson Act.

53.     Bridgeton denies the allegations in Paragraph 53.

54.     Bridgeton denies the allegations in Paragraph 54.

55.     Bridgeton denies the allegations in Paragraph 55.

56.     Bridgeton denies the allegations in Paragraph 56.  Bridgeton specifically denies Plaintiffs' claims do not and could not arise out of or result from source material.

57.     Paragraph 57 purports to paraphrase or interpret a legal document, which speaks for itself and contains legal conclusions to which no response is required. To the extent a response is required, Bridgeton denies the allegations in Paragraph 57.  Bridgeton specifically denies that the wastes dumped at the Landfill were not source material.

58.     Paragraph 58 states legal conclusions to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 58.

59.     Paragraph 59 states legal conclusions to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 59.

60.     Paragraph 60 purports to paraphrase or interpret a legal document, which speaks for itself and contains legal conclusions to which no response is required. To the extent a response is required, Bridgeton denies the allegations in Paragraph 60.  Bridgeton specifically denies that the material dumped at the Landfill was not source material in 1973.

61.     Bridgeton denies the allegations in Paragraph 61.  Bridgeton specifically denies that the Price Anderson Act does not apply to the claims of the Second Amended and Supplemental Complaint.

62.     Bridgeton denies the allegations in Paragraph 62.

63.     Bridgeton is without information or knowledge sufficient to form a belief as to Paragraph 63, and therefore denies the same.

64.     Bridgeton denies the allegations in Paragraph 64.

65.     Bridgeton denies the allegations in Paragraph 65.

66.     Bridgeton denies the allegations in Paragraph 66.

67.     Bridgeton denies the allegations in Paragraph 67.

68.     Bridgeton denies the allegations in Paragraph 68.

69.     Bridgeton denies the allegations in Paragraph 69.

70.     Bridgeton denies the allegations in Paragraph 70.

71.     Bridgeton denies the allegations in Paragraph 71.

72.     Bridgeton denies the allegations in Paragraph 72.

73.     Bridgeton denies the allegations in Paragraph 73.

74.     Bridgeton denies the allegations in Paragraph 74.

75.     Bridgeton denies the allegations in Paragraph 75.

76.     Bridgeton denies the allegations in Paragraph 76.

77.     Bridgeton denies the allegations in Paragraph 77.

78.     Bridgeton denies the allegations in Paragraph 78.

79.     Bridgeton denies the allegations in Paragraph 79.

80.     Bridgeton denies the allegations in Paragraph 80.

81.     Bridgeton denies the allegations in Paragraph 81.

82.     Bridgeton denies the allegations in Paragraph 82.

83.     Bridgeton denies the allegations in Paragraph 83.

84.     Bridgeton denies the allegations in Paragraph 84.

85.     Bridgeton denies the allegations in Paragraph 85.

86.     Bridgeton denies the allegations in Paragraph 86.

87.     Bridgeton denies the allegations in Paragraph 87.

88.     Bridgeton denies the allegations in Paragraph 88.

89.     Bridgeton denies the allegations in Paragraph 89.

90.     Bridgeton denies the allegations in Paragraph 90.

91.     Paragraph 91 does not contain any allegation to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

92.     Bridgeton denies the allegations in Paragraph 92.

93.     Bridgeton denies the allegations in Paragraph 93.

94.     Bridgeton denies the allegations in Paragraph 94.

95.     Bridgeton denies the allegations in Paragraph 95.

96.     Bridgeton denies the allegations in Paragraph 96.

97.     Bridgeton denies the allegations in Paragraph 97.

98.     Bridgeton denies the allegations in Paragraph 98.

99.     Bridgeton denies the allegations in Paragraph 99.

100.    Bridgeton denies the allegations in Paragraph 100.

101.    Bridgeton denies the allegations in Paragraph 101.

102.    Bridgeton denies the allegations in Paragraph 102.

103.    Bridgeton denies the allegations in Paragraph 103.

104.    Bridgeton denies the allegations in Paragraph 104.

105.    Bridgeton denies the allegations in Paragraph 105.

106.    Bridgeton denies the allegations in Paragraph 106.

107.    Bridgeton denies the allegations in Paragraph 107.

108.    Bridgeton denies the allegations in Paragraph 108.

109.    Bridgeton denies the allegations in Paragraph 109.

110.    Bridgeton denies the allegations in Paragraph 110.

## V.    CLASS ACTION ALLEGATIONS

111.    Paragraph 111 states legal conclusions to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 111.

112.    Paragraph 112 is a statement of Plaintiffs' motives in filing suit to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 112.

113.    Bridgeton denies the allegation in Paragraph 113.

114.    Paragraph 114 is a statement of Plaintiffs' proposed class definition to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 114.

115.    Paragraph 115 is a statement of Plaintiffs' proposed class definition to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 115.

116.    Paragraph 116 is a statement of Plaintiffs' proposed class definition to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 116.

117.    Paragraph 117 states legal conclusions to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 117.

118.    Paragraph 118 states legal conclusions to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 118.

119.    Paragraph 119 states legal conclusions to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 119.

120.    Bridgeton denies the allegation in Paragraph 120.

121.    Paragraph 121 states legal conclusions to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 121.

122.    Bridgeton denies the allegation in Paragraph 122.

123.    Bridgeton denies the allegation in Paragraph 123.

124.    Bridgeton denies the allegation in Paragraph 124.

125.    Paragraph 125 states legal conclusions to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 125.

126.    Paragraph 126 states legal conclusions to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 126.

127.    Paragraph 127 states legal conclusions to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 127.

128.    Bridgeton denies the allegation in Paragraph 128.

129.    Paragraph 129 states legal conclusions to which no response is required.  To the extent a response is required, Bridgeton denies the allegations in Paragraph 129.

130.    Bridgeton denies the allegation in Paragraph 130.

**COUNT I – TRESPASS**

131.    Bridgeton incorporates by reference its response to all allegations of the preceding paragraphs.

132.    Bridgeton is without information or knowledge sufficient to form a belief as to Paragraph 132, and therefore denies the same.

133.    Bridgeton is without information or knowledge sufficient to form a belief as to Paragraph 133, and therefore denies the same.

134.    Bridgeton is without information or knowledge sufficient to form a belief as to Paragraph 134, and therefore denies the same.

135.    Bridgeton is without information or knowledge sufficient to form a belief as to Paragraph 135, and therefore denies the same.

136.    Bridgeton denies the allegation in Paragraph 136.

137.    Bridgeton denies the allegation in Paragraph 137.

138.     Paragraph 138 does not contain any allegation against Bridgeton to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

139.     Bridgeton denies the allegation in Paragraph 139.

140.     Bridgeton denies the allegation in Paragraph 140.

141.     Bridgeton denies the allegation in Paragraph 141.

142.     Bridgeton denies the allegation in Paragraph 142.

143.     Bridgeton denies the allegation in Paragraph 143.

144.     Bridgeton denies the allegation in Paragraph 144.

145.     Bridgeton denies the allegation in Paragraph 145.

146.     Bridgeton denies the allegation in Paragraph 146.

## COUNT II – PERMANENT NUISANCE

147.     Bridgeton incorporates by reference its response to all allegations of the preceding paragraphs.

148.     Bridgeton is without information or knowledge sufficient to form a belief as to Paragraph 148, and therefore denies the same.

149.     Bridgeton is without information or knowledge sufficient to form a belief as to Paragraph 149, and therefore denies the same.

150.     Bridgeton is without information or knowledge sufficient to form a belief as to Paragraph 150, and therefore denies the same.

151.     Bridgeton is without information or knowledge sufficient to form a belief as to Paragraph 151, and therefore denies the same.

152.     Bridgeton denies the allegation in Paragraph 152.

153.    Bridgeton denies the allegation in Paragraph 153.

154.    Bridgeton denies the allegation in Paragraph 154.

155.    Bridgeton denies the allegation in Paragraph 155.

156.    Bridgeton denies the allegation in Paragraph 156.

157.    Bridgeton denies the allegation in Paragraph 157.

158.    Bridgeton denies the allegation in Paragraph 158.

159.    Bridgeton denies the allegation in Paragraph 159.

160.    Bridgeton denies the allegation in Paragraph 160.

161.    Bridgeton denies the allegation in Paragraph 161.

**COUNT III – TEMPORARY NUISANCE**

162.    Bridgeton incorporates by reference its response to all allegations of the preceding paragraphs.

163.    Bridgeton is without information or knowledge sufficient to form a belief as to Paragraph 163, and therefore denies the same.

164.    Bridgeton is without information or knowledge sufficient to form a belief as to Paragraph 164, and therefore denies the same.

165.    Bridgeton is without information or knowledge sufficient to form a belief as to Paragraph 165, and therefore denies the same.

166.    Bridgeton denies the allegation in Paragraph 166.

167.    Bridgeton denies the allegation in Paragraph 167.

168.    Bridgeton denies the allegation in Paragraph 168.

169.    Bridgeton denies the allegation in Paragraph 169.

170.    Bridgeton denies the allegation in Paragraph 170.

171.     Bridgeton denies the allegation in Paragraph 171.

172.     Bridgeton denies the allegation in Paragraph 172.

173.     Bridgeton denies the allegation in Paragraph 173.

### COUNT IV – NEGLIGENCE

174.     Bridgeton incorporates by reference its response to all allegations of the preceding paragraphs.

175.     Paragraph 175 does not contain any allegation to which a response is required. To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

176.     Bridgeton denies the allegation in Paragraph 176.

177.     Paragraph 177 does not contain any allegation against Bridgeton to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same. Bridgeton specifically denies the radioactive materials were "mill tailings."

178.     Paragraph 178 does not contain any allegation against Bridgeton to which a response is required.  To the extent the Paragraph attempts to plead allegations against Bridgeton, Bridgeton denies the same.

179.     Bridgeton denies the allegation in Paragraph 179.

180.     Bridgeton denies the allegation in Paragraph 180.

181.     Bridgeton denies the allegation in Paragraph 181.

182.     Bridgeton denies the allegation in Paragraph 182.

183.     Bridgeton denies the allegation in Paragraph 183.

184.     Bridgeton denies the allegation in Paragraph 184.

185.    Bridgeton denies the allegation in Paragraph 185.

186.    Bridgeton denies the allegation in Paragraph 186.

187.    Bridgeton denies the allegation in Paragraph 187.

188.    Bridgeton denies the allegation in Paragraph 188.

189.    Bridgeton denies the allegation in Paragraph 189.

190.    Bridgeton denies the allegation in Paragraph 190.

191.    Bridgeton denies the allegation in Paragraph 191.

## COUNT V – NEGLIGENCE PER SE

192.    Bridgeton incorporates by reference its response to all allegations of the preceding paragraphs.

193.    Bridgeton denies the allegation in Paragraph 193.

194.    Bridgeton denies the allegation in Paragraph 194.

195.    Bridgeton denies the allegation in Paragraph 195.

196.    Bridgeton denies the allegation in Paragraph 196.

197.    Bridgeton denies the allegation in Paragraph 197.

198.    Bridgeton denies the allegation in Paragraph 198.

199.    Bridgeton denies the allegation in Paragraph 199.

## COUNT VI – STRICT LIABILITY/ABSOLUTE LIABILITY

200.    Bridgeton incorporates by reference its response to all allegations of the preceding paragraphs.

201.    Bridgeton denies the allegation in Paragraph 201.

202.    Bridgeton denies the allegation in Paragraph 202.

203.    Bridgeton denies the allegation in Paragraph 203.

204.     Bridgeton denies the allegation in Paragraph 204.

205.     Bridgeton denies the allegation in Paragraph 205.

206.     Bridgeton denies the allegation in Paragraph 206.

207.     Bridgeton denies the allegation in Paragraph 207.

208.     Bridgeton denies the allegation in Paragraph 208.

## COUNT VII – INJUNCTIVE RELIEF

209.     Bridgeton incorporates by reference its response to all allegations of the preceding paragraphs.

210.     Bridgeton denies the allegation in Paragraph 210.

211.     Bridgeton denies the allegation in Paragraph 211.

212.     Bridgeton denies the allegation in Paragraph 212.

213.     Bridgeton denies the allegation in Paragraph 213.

214.     Bridgeton denies Plaintiffs are entitled to any relief requested in Paragraph 214.

215.     Bridgeton denies Plaintiffs are entitled to any relief requested in Paragraph 215.

216.     Bridgeton denies the allegation in Paragraph 216.

## COUNT VIII – CIVIL CONSPIRACY

217.     Bridgeton incorporates by reference its response to all allegations of the preceding paragraphs.

218.     Bridgeton denies the allegation in Paragraph 218.

219.     Bridgeton denies the allegation in Paragraph 219.

220.     Bridgeton denies the allegation in Paragraph 220.

## COUNT IX – PUNITIVE DAMAGES

221.    Bridgeton incorporates by reference its response to all allegations of the preceding paragraphs.

222.    Bridgeton denies the allegation in Paragraph 222.

223.    Bridgeton denies the allegation in Paragraph 223.

224.    Bridgeton denies the allegation in Paragraph 224.


Bridgeton denies Plaintiffs are entitled to any relief whatsoever.

## **CROSSCLAIM**

COMES NOW Defendant Bridgeton Landfill, LLC, pursuant to Federal Rule of Civil Procedure 13(g), by and through its undersigned counsel, and for its Crossclaim against Defendant Cotter Corporation (N.S.L.) ("Cotter"), states as follows:

## **Cotter Caused Plaintiffs' Alleged Injuries, If Any**

1.    The waste Plaintiffs allege harmed them was illegally deposited at the West Lake Landfill in Bridgeton, Missouri ("the Landfill") by Cotter. *See* Second Amended and Supplemental Complaint at ¶ 4 and ¶ 47.

2.    As part of its handling of these radioactive materials, which Cotter eventually illegally disposed at the West Lake Landfill, as well as other radioactive materials not disposed of at the West Lake Landfill, Cotter was issued a source material license ("the License") by the Atomic Energy Commission in 1969. A copy of the License is attached as **Exhibit A**.

3.    The License included approximately 8,700 tons of leached barium sulfate residue, among other materials.  The leached barium sulfate residue was formerly stored at 9200 Latty Avenue Hazelwood, Missouri ("Latty Avenue"), a portion of which is now, due in part to

Cotter's former activities there, designated as the Hazelwood Interim Storage Site. *See* Second Amended and Supplemental Complaint at ¶ 40 and ¶ 42.

4.      Cotter attempted without success, multiple times, to get the Atomic Energy Commission to accept the leached barium sulfate residue for disposal at a government-operated radioactive material site now designated as the Weldon Spring Former Army Ordinance Works Superfund Site. *See* Second Amended and Supplemental Complaint at ¶ 43.

5.      The Atomic Energy Commission denied Cotter's multiple requests to transport the leached barium sulfate residue to Weldon Springs. *See* Second Amended and Supplemental Complaint at ¶ 43.

6.      Cotter also made inquiry to the Atomic Energy Commission about the possibility of on-site burial of the leached barium sulfate residue at Latty Avenue. *See* Second Amended and Supplemental Complaint at ¶ 44.

7.      After the Atomic Energy Commission detailed the processes and showings Cotter would have to undertake and make prior to any possible permission for on-site burial at Latty Avenue, Cotter abandoned the option of on-site burial. *See* Second Amended and Supplemental Complaint at ¶ 44.

8.      Cotter obtained a rough market price exceeding $2 million for costs to dispose of the leached barium sulfate residue at a private facility, but Cotter did not spend the $2 million to properly dispose of the material. *See* Second Amended and Supplemental Complaint at ¶ 45.

9.      Cotter investigated other means of disposal of the leached barium sulfate residue including, but not limited to, providing it to a property owner to fill a low area in a floodplain. *See* Second Amended and Supplemental Complaint at ¶ 46.

10.     Instead, Cotter mixed the leached barium sulfate residue with dirt from the ground at Latty Avenue and arranged for the mixture to be transported to and illegally disposed of at the Landfill. *See* Second Amended and Supplemental Complaint at ¶ 4 and ¶ 47.

11.     When the leached barium sulfate residue and dirt mixture was brought to the Landfill, Cotter represented it was "clean fill" and the Landfill operator therefore believed it was appropriate for typical landfill use of soil as daily, intermediate and final cover.

12.     Nuclear Regulatory Commission ("NRC") investigators later determined Bridgeton had been told the material was "clean fill."

13.     It was industry practice at the time for landfills to receive soil-like material to be used for site purposes for little or no fee.

14.     Cotter did not inform the Landfill operator that the mixture contained radioactive materials and was in fact, source material.

15.     There were no visible signs that would reasonably cause the Landfill operator to further investigate the contents of the purported "clean fill."

16.     Cotter applied for termination of the License in 1974. A copy of the application for termination of the License is attached as **Exhibit B.** In the application, Cotter represented "all source materials now owned or held by Cotter Corporation are situated in Colorado."

17.     Indeed, the License was issued incorporating the procedures described in Cotter's application dated December 16, 1969, attached as **Exhibit C**, which specified that the material was to be dried and loaded into rail cars and shipped by Cotter to its uranium mill in Canon City, Colorado.

18.     Cotter did not inform the Atomic Energy Commission that it did not follow the procedures described in Cotter's application for the License in disposing of the leached barium sulfate residue.

19.     Cotter did not inform the Atomic Energy Commission that the leached barium sulfate residue was mixed with dirt from the ground at Latty Avenue and disposed of at the Landfill, and not, in fact, in Colorado.

20.     The Atomic Energy Commission terminated the License on November 13, 1974. A copy of the termination is attached as **Exhibit D.**

21.     Cotter knew the radiologically impacted materials were disposed at West Lake Landfill.

22.     In fact, Cotter's October 1972 contract with B&K specified disposal at what is now designated as Weldon Spring Former Army Ordinance Works Site, even though the AEC denied disposal there.

23.     Cotter lied to the AEC about where the radiologically impacted materials were sent and how accessible they were until the media revealed it.

24.     The Nuclear Regulatory Commission ("NRC") sampled the surface soil at the West Lake Landfill in 1988 and concluded that there were about 3 Ci each of Uranium-238 and Uraium-234, 14 Ci of Radium-226, and 1400 Ci of Thorium-230 contained in the radioactive materials in the Landfill.

25.     Thus, the NRC determined that the material present in the Landfill was a form of natural uranium with daughters, although the daughter radionuclides were not in secular equilibrium.

26.     Cotter did not inform the Landfill operator of the material fact that the mixture contained radioactive materials, much less the material fact that it contained radioactive materials that were out of secular equilibrium, meaning the materials were more concentrated in Thorium-230 and therefore would over time become more concentrated in Radium-226.

27.     The NRC also projected in 1988 that because of the large ratio of Thorium-230 radioactivity to that of Radium-226, the radioactive decay of the Thorium-230 would increase the concentration of its decay product, Radium-226, until these two radionuclides reach equilibrium again.

28.     Cotter did not inform the Landfill operator that the mixture contained radioactive materials or that the decay of the Thorium-230 could increase the concentration of Radium-226 until these two radionuclides reach equilibrium.

29.     Cotter was required to properly dispose of the radioactive materials to fulfill its obligations under the License; in order to terminate the License, Cotter certified to the federal government that it had properly disposed of all the licensed waste.

30.     Cotter did not properly dispose of the radioactive materials under or pursuant to the License nor as it represented to the federal government in its Application for Termination.

31.     The NRC asked Cotter to remediate, specifically citing the future risk from secular disequilibrium.

32.     Cotter failed to timely and properly act to remediate the radioactive materials, despite knowledge of its misconduct and liability.

33.     The NRC continued to be frustrated with Cotter's delay and urged Cotter to remediate the Landfill.

34.     Cotter delayed so long that the West Lake site was added to the National Priority List, becoming the West Lake Superfund Site, enabling Cotter to seek money from the United States and Bridgeton Landfill, LLC  .

35.     Cotter's disposal of the material at the Landfill and failure to disclose that the material was radioactive, much less out of secular equilibrium, and Cotter's failure to remediate the Landfill is the actual cause of Plaintiffs' alleged injuries, if any; but for Cotter's disposal of the radioactive material at the Landfill, Plaintiffs could not have been injured as alleged in the Second Amended and Supplemental Complaint.

36.     Cotter's disposal of the material at the Landfill and failure to disclose that the material was radioactive and out of secular equilibrium was the proximate cause of Plaintiffs' alleged injuries, if any; it was reasonably foreseeable to Cotter that depositing these radioactive materials at the Landfill, without telling the Landfill operators of the nature of the materials, could cause injury to the Landfill and potentially to people or other property.

## COUNT I – CLAIM FOR CONTRIBUTION

37.     Bridgeton restates and incorporates all allegations set forth in Paragraphs 1-37 as if fully set forth herein.

38.     Bridgeton denies fault for Plaintiffs' alleged injuries and damages, and further preserves all affirmative and other defenses set out in response to Plaintiffs' Second Amended and Supplemental Complaint.

39.     If Bridgeton is liable to any of the Plaintiffs, which it denies, then Cotter is a joint tortfeasor who is liable in whole, or in part, for Plaintiffs' alleged damages and/or injuries, if any. Plaintiffs' alleged damages, if any, were caused in part or entirely by Cotter, as evidenced in part by the following:

        (a)      Cotter mixed the radioactive materials with dirt from Latty Avenue, but provided and presented it to the Landfill as clean fill;

        (b)      Cotter had the mixture transported to the Landfill claiming it was clean fill;

        (c)      Cotter did not inform the operator of the Landfill that the fill deposited at the Landfill contained radioactive materials;

        (d)      Cotter did not disclose or warn that the fill deposited at the Landfill contained uranium, radium, or thorium;

        (e)      Cotter knew radioactive materials were being taken to the Landfill without the Landfill operator's knowledge or consent;

        (f)      Cotter knew and did not disclose that the radioactive materials were out of secular equilibrium; and

        (g)      Cotter knew and did not disclose that the radioactive materials would increase in radiological activity over time.

40.     In the event that any damages are assessed against Bridgeton, though Bridgeton denies that Plaintiffs are entitled to damages, any such damages were caused in whole or in part by the conduct, fault, acts, carelessness, omissions, negligence, recklessness, intentional acts and/or fraud of Cotter, thereby barring or limiting any recovery against Bridgeton.

41.     Any fault of Bridgeton, which Bridgeton denies, must be compared to the fault of Cotter, and Bridgeton's liability must be limited to the percentage of fault apportioned to Bridgeton, and Bridgeton should recover against Cotter any amount assessed against Bridgeton than is more than Bridgeton's fault.

42.     To the extent that Bridgeton is found liable to Plaintiffs, which Bridgeton denies, Bridgeton is entitled to contribution (or to the extent available, indemnification) from Cotter for any and all damages that may be assessed against Bridgeton as a result of Plaintiffs' allegations.

43.     Accordingly, the jury should award Bridgeton such proportion of the total sum paid by it to Plaintiffs as corresponds to the degree of fault of Cotter.

WHEREFORE, Defendant Bridgeton Landfill, LLC prays for judgment in its favor on its Crossclaim Against Defendant Cotter Corporation, for its Court costs incurred herein, and for such other and further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

Bridgeton, for its affirmative and/or further defenses, states as follows:

1.      Bridgeton denies each and every allegation not specifically admitted.

2.      Plaintiffs' Second Amended and Supplemental Complaint fails to state a claim upon which relief can be granted.

3.      Plaintiffs' claims are barred by the applicable statutes of limitations, RSMo § 516.120 and any limitations period which applies to actions under the Price Anderson Act.

4.      Plaintiffs have not suffered any legally compensable injury within the applicable periods of limitations preceding the filing of this action.

5.      Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of repose.

6.      Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

7.      Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

8.      Plaintiffs' purported causes of action and alleged damages, if any, were not proximately caused by any act or omission of Bridgeton.

9.      Plaintiffs' purported causes of action and alleged damages, if any, were caused by the acts or omissions of persons or entities for whose conduct Bridgeton is not legally responsible.

10.      Plaintiffs' purported causes of action and alleged damages, if any, are the responsibility of third parties including, but not limited to, Plaintiffs and other unnamed parties,

and such liability, if any, should be apportioned according to fault in accordance with the laws of the State of Missouri.

11.     Plaintiffs failed to mitigate their damages by failing to exercise reasonable and ordinary care, caution, or prudence in order to minimize or prevent the damages Plaintiffs claim to have suffered.  As a result, any resulting damages sustained by Plaintiffs were proximately caused and contributed by the negligence of Plaintiffs themselves.  Therefore, any award made in favor of Plaintiffs must be apportioned to fault in accordance with the laws of the State of Missouri.

12.     Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' ratification and/or consent.

13.     Plaintiffs' claims are barred, in whole or in part, by other, third parties who consented to all acts and conduct of Bridgeton.

14.     The alleged damages claimed by Plaintiffs are speculative, depend on the happening of events that are not reasonably certain to occur, may be mitigated by future events, and cannot be determined with the degree of certainty required by law.

15.     The Second Amended and Supplemental Complaint and each purported cause of action therein are barred because the utility of the conduct of which Plaintiffs complains outweighs any alleged harm to Plaintiffs.

16.     There can be no double recovery for any alleged injury.  To the extent that Plaintiffs have alleged damages that already have been compensated or remediated, or any expenses otherwise covered, Plaintiffs are barred from seeking further recovery and must elect their remedy.

17.     Bridgeton reserves the right to amend its Answer and affirmative defenses and to plead additional defenses as discovery progresses.

18.     Bridgeton conducted all actions in accordance with industry standards, government requirements, and the prevailing state of the art and technology in the industry at the time of the alleged act.

19.     Plaintiffs' claims should be dismissed for their failure to join indispensable parties.  Plaintiffs failed to join St. Louis Lambert Airport as a necessary or indispensable party to the extent the relief sought by Plaintiffs affects the airport's negative easement at the West Lake Landfill and/or Bridgeton Landfill.  Plaintiffs failed to join the U.S. Environmental Protection Agency, the Department of Energy or other successor entities to the Atomic Energy Commission, and other federal agencies, which are indispensable parties for the claims made in this Second Amended and Supplemental Complaint.

20.     The federal government, through federal statutes, has preempted the field of law applicable to the claims at issue. The activities referred to in the Second Amended and Supplemental Complaint were and are controlled by federal law, which governs the nuclear industry at all times. Plaintiffs claims are thus preempted in whole or in part such that they fail to state a cause of action upon which relief can be granted.

21.     Plaintiffs' request for relief is preempted as it attempts to shape and therefore challenge the remedy already underway under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9604, and violates the timing of review provisions thereunder, 42 U.S.C. § 9613(h).

22.     Plaintiffs' request for relief is preempted by the Price Anderson Act, 42 U.S.C. § 2210, as amended because this lawsuit is truly a public liability action sounding exclusively under the Price Anderson Act.

23.     Bridgeton asserts any and all defenses, claims, credits, offsets, or remedies provided by the Price Anderson Act, 42 U.S.C. § 2210, as amended, and reserves the right to amend its Answer to file such further pleadings as are necessary at the appropriate time to preserve and assert such defenses, claims, credits, offsets, or remedies.

24.     Plaintiffs' claims are barred because, regardless of how characterized in this Second Amended and Supplemental Complaint, they are in fact and in law claims against the United States, which has not waived its sovereign immunity to suit.  Plaintiffs' claims necessarily challenge decisions that were made by the United States and are protected from judicial review by the "discretionary function" exception to the Federal Tort Claims Act, 28 U.S.C. § 2680 and/or other statutes.

25.     To the extent Plaintiffs suffered any injury or damage, the activities of others over which Bridgeton had no control and whom Bridgeton did not have a contractual relationship with – including, without limitation, the parties to this action (e.g., Cotter) and/or non-parties to this action (e.g., the U.S. government) – were the sole, legal and/or proximate cause of the injury or damage, such that Bridgeton cannot be liable.

26.     Specific to the United States government, to the extent Plaintiffs suffered any injury or damage, the activities or conduct of the United States and its agencies (including, e.g., the Atomic Energy Commission) were the sole, legal and/or proximate cause of the injury or damage, such that Bridgeton cannot be liable. Such activities or conduct include:

      a.  The United States created and initially owned and controlled the radioactive material;

29

b. The United States acted negligently and/or recklessly in failing to take appropriate steps to properly handle, store and/or dispose of the radioactive materials, including, e.g., transporting the waste to an appropriate facility utilizing the United States' own means and resources, or entrusting an entity adequately equipped and experienced to handle, store and/or dispose of the waste, etc.;

c. The United States negligently and/or recklessly dumped the radioactive materials into the private sector to save money on disposal costs;

d. The United States sought to sell the radioactive materials despite its conclusion that recovery of metals from the materials was "not economically attractive";

e. Before selling the radioactive materials, the United States knew the material was out of secular equilibrium, posing a significant increase in radiological hazards over time;

f. The United States acted negligently and/or recklessly in selling and releasing radioactive waste to an inexperienced private entity (Continental Milling and Mining Company, parent company of Contemporary Metals Corporation (collectively, "CMC")) that the United States knew or should have known was incapable of properly handling, storing, processing or disposing of the material;

g. The United States acted negligently and/or recklessly in selling and releasing radioactive waste to CMC, where the United States knew or should have known CMC was financially unstable, had a high risk of default and was incapable of properly managing the waste or complete the removal of the residues;

h. After CMC inevitably defaulted and was foreclosed upon, the United States issued a Source Material License to a financial institution – Commercial Discount Corporation – which had no discernable experience in storing, handling or disposing of radioactive materials;

i. The United States failed to track the radioactive material to disposal even though it knew it was being mishandled, e.g., the United States knew CMC had allowed the material to fall along roadways during transportation in uncovered vehicles, without adequate clean-up measures in place;

j. The United States failed to track and ensure that Cotter properly disposed of the materials;

k. Cotter failed to warn Bridgeton that the dirt Cotter represented was clean fill dirt was radioactive or contained radioactive materials;

30

l.   Bridgeton had no contract with the United States or Cotter;

m.   Bridgeton did not cause the release of the radionuclides onto West Lake Landfill; and

n.   Bridgeton exercised due care upon and after the discovery of radioactive materials at the Landfill.

27.   Any activities undertaken by Bridgeton that are referenced in the Second Amended and Supplemental Complaint, if any, were performed under contractual obligation, pursuant to government instruction, and at the direction and under the supervision, approval, and control of the United States and/or its agents.

28.   Bridgeton has at all times acted in conformance with applicable guidelines or regulations that establish the standard of care and has otherwise acted with due care and the caution of a reasonably prudent entity.

a.   Bridgeton exercised due care with respect to the soil/fill deposited by Cotter, which Cotter represented as being clean fill, in light of all relevant facts and circumstances.

b.   Landfill operations at West Lake landfill were consistent with standards at the time.

c.   It was industry practice at the time for landfills to receive soil-like material to be used for site purposes for little or no fee.

d.   Cotter affirmatively represented to Bridgeton that it was clean fill.

e.   There were no visible signs that would reasonably warrant Bridgeton to further investigate.

f.   It was reasonable and consistent with standards at the time for Bridgeton to accept material it reasonably believed to be clean.

g.   After discovery of the radioactive materials, Bridgeton exercised due care, taking into consideration the characteristics of radioactive materials, in light of all relevant facts and circumstances.

29.     If the properties in question were exposed to any chemical or compound connected to Bridgeton, which is specifically denied, then such exposure was inconsequential or de minimis, thus barring any recovery by the Plaintiffs.

30.     The imposition of punitive damages in this case would violate the Due Process Clause of the Constitution to the State of Missouri, Article I Section 10, and the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments, the Sixth Amendment, and the Eighth Amendment of the United States Constitution because punitive damages constitute penal damages and amount to an unconstitutional criminal and excessive fine or punishment in a civil proceeding.

31.     The imposition of punitive damages in this case would violate the Due Process Clause of the Constitution to the State of Missouri, Article I Section 10, and the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution because Missouri's post-verdict review procedures for scrutinizing punitive damage verdicts do not provide a meaningful constraint on the discretion of juries to impose punishment, there are no adequate and objective procedures, standards, or instructions that guide trial and appellate courts concerning the purposes of punitive damages and the reasons for awarding such damages, and no adequate procedures, standards, or instructions exist to guide the trial and appellate courts in reviewing an excessive award of punitive damages.

32.     The imposition of punitive damages in this case would violate the Excessive Fines Clause of the Missouri Constitution, Article I Section 21, because Bridgeton did not act with complete indifference to or conscious disregard for the safety of others and acted in compliance with the applicable state and federal regulations at all times relevant to the Second Amended and Supplemental Complaint.

33.     Plaintiffs' demands for punitive damages as alleged in the Second Amended and Supplemental Complaint are barred because Bridgeton did not act with complete indifference to or conscious disregard for the safety of others and acted in compliance with the applicable state and federal regulations at all times relevant to the Second Amended and Supplemental Complaint.

34.     Putative Class Members Bishop and Mitchell's claims are barred by the terms of the settlement they reached with some or all Defendants.

35.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver and/or the doctrine of estoppel.

36.     Plaintiffs' claims are barred, in whole or in part, because they at all times had actual and/or constructive knowledge of the circumstances upon which the Second and Supplemental Complaint is based, and Plaintiffs accepted those circumstances.

37.     Cotter's claims are barred to the extent they rely on the retroactive application of statutes, rules, regulations or common-law standards of conduct, or otherwise seek to impose liability retroactively for conduct that was not actionable at the time it occurred, which violates the Constitutions of the United States and the State of Missouri.

38.     Cotter's claims are barred by the doctrines of collateral estoppel and res judicata.

WHEREFORE, having fully answered Plaintiffs' Second Amended and Supplemental Complaint, Bridgeton requests that the Court deny the relief sought by Plaintiffs and grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Defendant Bridgeton Landfill, LLC demand a jury trial on all claims for which they are entitled to a jury trial.

Dated: March 16, 2023                     Respectfully submitted,


                                          By:  */s/ Allyson E. Cunningham*
                                               William G. Beck          #26849(MO)
                                               Allyson E. Cunningham    #64802(MO)
                                               Jessica K. Rosell        #61247(MO)
                                               LATHROP GPM LLP
                                               2345 Grand Blvd., Ste. 2200
                                               Kansas City, MO  64108-2618
                                               Telephone: (816) 292-2000
                                               Fax: (816) 292-2001
                                               Email: william.beck@lathropgpm.com
                                               Email: allyson.cunningham@lathropgpm.com
                                               Email: jessica.rosell@lathropgpm.com

                                               Kayla A. Brewe           #69231(MO)
                                               LATHROP GPM LLP
                                               7701 Forsyth Blvd., Ste. 500
                                               Clayton, MO  63105
                                               Telephone: (314) 613-2800
                                               Fax: (314) 613-2801
                                               Email: kayla.brewe@lathropgpm.com

                                               ATTORNEYS FOR DEFENDANT
                                               BRIDGETON LANDFILL, LLC