**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN C. KITCHIN, JR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 4:18-cv-00672-CDP |
| | ) | |
| vs. | ) | |
| | ) | |
| BRIDGETON LANDFILL, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT COTTER CORPORATION (N.S.L.)'S MOTION TO STRIKE PLAINTIFFS' MEDICAL MONITORING CLASS ALLEGATIONS

Cotter illegally dumped nearly fifty thousand tons of radioactive waste into a Landfill that now also has an uncontrolled underground fire. This radioactive waste has a unique footprint and has escaped the Landfill through the soil, water, and air. Cotter's damaging actions have subjected the surrounding community to radioactive exposure. The effects of Cotter's illegal actions will continue to be suffered for many, many years to come. In response and as a result, Plaintiffs propose a medical monitoring subclass in this class action, with an initial definition of:

> All Missouri citizens who currently reside, or have resided since 1973, on a property within the 11.0 square mile geographic region in the vicinity of the West Lake Landfill, as shown in the map in Figure 1 above, bounded by the Missouri River to the west and a line south of Rt. 370 to the north, with the eastern boundary following a southerly line across Old St. Charles Rd. before crossing the residential area lying to the south of the landfill.

Plaintiffs also propose a property damage subclass, with a similar initial definition of:

> All Missouri citizens who currently own real property within the 11.0 square mile geographic region in the vicinity of the West Lake Landfill, as shown in the map in Figure 1 below, bounded by the Missouri River to the west and a line south of Rt. 370 to the north, with the eastern boundary following a southerly line across Old St. Charles Rd. before crossing the residential area lying to the south of the landfill.

To escape the natural consequence of its actions, Cotter asks the Court to prematurely strike

Plaintiffs' proposed medical monitoring class allegations. ECF 166-67. But for the reasons stated herein, Cotter's motion must be denied, as: (1) there is no application of the PAA; (2) Cotter has not met its burden of showing the class allegations should be struck; and/or (3) Cotter's motion is premature.

## LEGAL STANDARD

While Plaintiffs ultimately bear the burden of establishing that each of the Rule 23 elements are satisfied when moving for class certification, it is Defendant Cotter's burden to establish that the class allegations should be stricken *prior* to class certification. Cotter fails to satisfy its burden.

Pursuant to Rule 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Striking a party's pleading, however, is an extreme and disfavored measure." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citation omitted). "Particularly in the context of a class action suit, striking class allegations prior to discovery and the class certification stage is a rare remedy 'because it is seldom, if ever, possible to resolve class representation question from the pleadings alone.'" *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 488 F. Supp. 3d 867, 880 (W.D. Mo. 2020) (quoting *Courtright v. O'Reilly Auto., Stores, Inc.*, No. 14-00334-CV-W-GAF, 2014 WL 12623695, at *2 (W.D. Mo. July 7, 2014)). When it is the "early stage of litigation in [a] case" and "the chance exists that Rule 23 elements may be satisfied with discovery," courts will decline to strike class allegations. *Blue Springs Dental Care, LLC*, 488 F. Supp. 3d at 880.

Bringing a motion to strike "shifts the burden of persuasion to the defendant, and the more strenuous standard applied to motions to strike portions of a plaintiff's pleadings is then applied when considering the class allegations." *Tucker v. Ford Motor Co.*, No. 4:22-CV-00430-AGF, 2023 WL 2662887, at *2 (E.D. Mo. Mar. 28, 2023). "Courts are to evaluate a motion to strike class

allegations in the light most favorable to the plaintiff, accepting the plaintiff's allegations as true." *Id.* "The Court **must deny the motion** when a more rigorous application of the facts is required to fully evaluate the plaintiff's claims." *Id.* (emphasis added). At early stages in the litigation and discovery[1], "all doubts must be resolved in favor of the plaintiff with the understanding that the plaintiff may modify the class allegations after discovery on the issue." *Id.* (citing *Anglin v. Edgewell Personal Care Co.*, Case No. 4:18-CV-00639-NCC, 2018 WL 6434424, at *14 (E.D. Mo. Dec. 7, 2008); *St. Louis Heart Center, Inc. v. Nomax, Inc.*, Case No. 4:15CV517 RLW, 2015 WL 9451046, at *2 (E.D. Mo. Dec. 23, 2015)). Purported issues with class definitions are "not a *per se* ground for dismissal of class allegations" because the plaintiff may later revise the allegations and "eliminate the concern." *St. Louis Heart Center, Inc.*, 2015 WL 9451046 at *2. Therefore, "[i]f there is a 'chance' that the allegations will satisfy Rule 23 after discovery, the parties **must** be afforded the opportunity to conduct such discovery and present documentary evidence on the issue." *Tucker*, 2023 WL 2662887 at *3 (citing *Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 10-04175-CV-C-NKL, 2012 WL 4090347, at *2 (W.D. Mo. Sept. 17, 2012)) (emphasis added). Courts will only grant a motion to strike class allegations "when, after accepting all of the plaintiff's claims as true, no additional evidence the plaintiff could provide via discovery, or a class certification hearing would permit the Court to certify the proposed class." *Id.*; *Blue Springs Dental Care, LLC*, 488 F. Supp. 3d at 880.

## ARGUMENT & ANALYSIS

### I. As an Initial Matter, the Price-Anderson Act Does Not Apply to this Litigation, as Confirmed in *Dailey v. Bridgeton Landfill* and This Court's Prior Analyses

The issue of the Price-Anderson Act (or the "PAA") and its application to West Lake

---

[1] The procedural history of this case is such that it remains still in the early discovery stage.

3

Landfill-based litigation is no stranger to this Court. On this point, Defendant Cotter has become a broken record with a losing record.[2]

In short, and as this Court has so succinctly stated, "[t]he PAA does not apply to plaintiffs' claims." *Kitchin v. Bridgeton Landfill, LLC*, 389 F. Supp. 3d 600, 613 (E.D. Mo. 2019), *rev'd and remanded on other grounds,* 3 F.4th 1089 (8th Cir. 2021). Nor did Defendants challenge this decision when this matter was appealed to the Eighth Circuit. *See Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089, 1092 (8th Cir. 2021), *cert. denied,* 212 L. Ed. 2d 8, 142 S. Ct. 1111 (2022) ("***The sole issue on appeal*** is whether CAFA's local-controversy exception requires remand in this case") (emphasis added). The same conclusion was reached by this Court in the *Dailey v. Bridgeton Landfill, LLC* matter, involving the very same landfill and the very same defendants as here—including Defendant Cotter:

> Given that there is no retroactive effect to Title II of UMTRCA, the mill tailings wastes plaintiffs claim Cotter Corporation transported and disposed of in 1973 were not "source, special nuclear, or byproduct material" at the time of the alleged occurrence in this action. The occurrence therefore did not and could not arise out of or result from hazardous properties of such material. Accordingly, ***there was no "nuclear incident" as defined to bring this action under the PAA***.

*Dailey v. Bridgeton Landfill, LLC*, Case No 4:22-cv-116-CDP (E.D.Mo.), ECF No. 76, p. 9 (emphasis added). With no substantive differences, the analysis this Court provided in *Dailey* extends to this matter. The PAA does not apply.

### II. Cotter Fails to Meet Its Heavy Burden of Establishing There is No Chance a Class Could be Certified Under Rule 23

The Court must accept the allegations in Plaintiffs' Second Amended and Supplemental Complaint as true when considering Cotter's motion. *See Tucker*, 2023 WL 2662887 at *2 ("Courts are to evaluate a motion to strike class allegations in the light most favorable to the

---

[2] For a more detailed analysis of why the PAA does not apply to this matter, *see* Plaintiffs' Response to Defendant Cotter's Motion to Dismiss, filed concurrently.

4

plaintiff, accepting the plaintiff's allegations as true."). It is improper for the Court to strike Plaintiffs' medical monitoring class allegations in light of the entirety of Plaintiffs' Complaint. Although Cotter argues Plaintiffs cannot satisfy Rule 23's commonality, cohesiveness, and predominance requirements, and that the class definitions are overbroad, Plaintiffs' Complaint says otherwise.

### A. Medical monitoring classes are not prohibited by law, and have been certified in several instances

#### i. *Plaintiffs have standing to bring a medical monitoring class in this litigation*

Cotter's loose arguments that Plaintiffs and the medical monitoring class members do not have standing are easily dismissed. Unless it is *known* that a class contains specific members who lack standing, which Cotter does not and cannot contend, "the Eighth Circuit does not require evidence that every member of a class has standing." *Thornburg v. Ford Motor Co.*, No. 4:19-CV-01025-NKL, 2022 WL 4348475, at *3 (W.D. Mo. Sept. 19, 2022) (citing *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010)). Cotter's misleading argument (that Plaintiff must show, now, that "all class members have standing under the PAA") is therefore incorrect on multiple levels.[3] ECF 167, p. 8.

In the Eighth Circuit and beyond, courts (including this Court) "that have addressed claims seeking medical monitoring damages have found that a purported increased risk of harm is sufficient to satisfy the injury requirement for Article III standing." *Belton v. Combe Inc.*, No. 4:16 CV 220 CDP, 2016 WL 6679843, at *2 (E.D. Mo. Nov. 14, 2016) (citing *Sutton v. St. Jude Medical S.C., Inc.*, 419 F.3d 568 (6th Cir. 2005); *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1052 (N.D. Cal. 2015); *Bouldry v. C.R. Bard, Inc.*, 909 F. Supp. 2d 1371, 1375 (S.D. Fla. 2012)). Regarding

---

[3] Namely: (1) that the PAA applies; and (2) that Plaintiffs must prove standing for every putative class member at the pleadings stage.

5

Cotter's allegations of lack of causation, "[t]he causation element is satisfied 'when the injury alleged is fairly traceable to the challenged action of the defendant.'" *In re Prempro*, 230 F.R.D. 555, 561 (E.D. Ark. 2005). By way of example, in *Belton*, the plaintiffs claimed, "that defendants' product has caused them to have an increased risk of hypersensitivity to PPD, and they have alleged specific facts to support their allegation that that hypersensitivity to PPD can be a dangerous medical condition." *Belton*, 2016 WL 6679843 at *2 . As a result, the court held that "[f]or purposes of evaluating Article III injury-in-fact sufficiency at the pleading stage, I conclude that this is enough." *Id*. This example is just one of many where courts have easily found standing for medical monitoring classes. *See also In re Prempro*, 230 F.R.D. at 561 ("Plaintiffs satisfy the injury-in-fact element since courts have repeatedly agreed that an increased risk of harm is an injury-in-fact."); *Meyer ex rel. Coplin v. Fluor Corp.*, 220 S.W.3d 712, 717–18 (Mo. 2007) ("Even though a plaintiff may not have yet developed a diagnosable physical injury, it is not accurate to conclude that no compensable injury has been sustained.").

Here, Plaintiffs have specifically alleged "that radioactive waste material, negligently dumped in an area surrounded by peaceful neighborhoods and playgrounds, has tormented the lives of everyday people" around the Landfill. *See* Plaintiffs' Second Am. & Supp. Compl. ("SASC"), ¶ 50. Plaintiffs have alleged that "[d]espite the Landfill not being properly designed to receive radioactive materials, the Defendants disposed of and accepted hazardous, toxic, carcinogenic, radioactive wastes and spread them around the Landfill." *Id*., ¶ 60. Plaintiffs have further alleged that the "data collected on and around the Landfill documents radioactive contamination of soil, water, and air" and cite said data. *Id*., ¶ 67. Further, "[o]ther toxic and hazardous materials are expected to have been released via the air pathway, in addition to the radioactive materials. This phenomenon contributes to the damages complained of herein." *Id*., ¶

6

68. "Critical to the legacy of radioactive particles contaminating the homes and communities surrounding the Landfill is that: (A) The radioactive contamination has gone off-site; and (B) The off-site radioactive contamination has the fingerprint (or profile) of the hazardous, toxic, carcinogenic radioactive wastes Cotter purchased in 1969." *Id*., ¶ 93.

Specific to Plaintiffs, it is alleged that "John C. Kitchin, Jr.'s, Sharon Bishop's, Melissa Mitchell's and the Bluegrass Lawncare of St. Louis properties (collectively, Plaintiffs' Property) are contaminated by radioactive material in excess of normal background." *Id*., ¶ 101. In fact, Plaintiffs allege that the "radioactive wastes, which are hazardous, toxic, carcinogenic, that have polluted the Plaintiffs' Property and continue to threaten to further pollute Plaintiffs' Property ***match waste fingerprint*** (or profile) of the hazardous, toxic, carcinogenic radioactive wastes dumped in the Landfill." *Id*., ¶ 107 (emphasis added). And dispositively, Plaintiffs alleged that "[a]s a direct and proximate result of Defendants' conduct, ***Plaintiffs and the Class are currently being subjected to radioactive waste contamination*** and will suffer irreparable harm if an injunction is not granted requiring Defendants conduct a total and complete cleanup of the contamination and to prevent and eliminate further contamination." *Id*., ¶ 110 (emphasis added).

Taken together, and taken as true,[4] Plaintiffs have alleged increased risk of harm and injury directly traceable to Cotter and its actions. These allegations satisfy any doubts as to standing.

        ii.    *Plaintiffs' medical monitoring class is adequately and appropriately defined for this stage of the litigation*

Cotter's primary concern with Plaintiffs' class definitions is that they are "not defined so that all class members have standing under the PAA." But, as established above, Plaintiffs have sufficiently pled standing—and any class definition that is presented now or at the certification

---

[4] *Tucker*, 2023 WL 2662887 at *2 ("Courts are to evaluate a motion to strike class allegations in the light most favorable to the plaintiff, accepting the plaintiff's allegations as true.").

7

stage is not bound to the confines of the PAA. *See Kitchin*, 389 F. Supp. 3d at 613; *Dailey*, E.D.Mo. Case No 4:22-cv-00116-CD, ECF No. 76. Every subsequent point that Cotter makes is therefore inapplicable.[5]

Cotter's secondary concern with the class definitions is one of overbreadth. But Defendant Cotter has no clue whether Plaintiffs' class boundaries are "random" or "overbroad" at this stage. ECF 167, pp. 8-10. Defendant is guessing, and guessing based off the underlying wishful thinking that the PAA applies. In fact, medical monitoring classes have been known to encompass the majority of entire cities. *See, e.g.*, *Meyer ex rel. Coplin*, 220 S.W.3d at 714 ("The Class Geographic Area includes most of the City of Herculaneum, including those areas of the City that are adjacent to the Doe Run smelter."). Within the cases Cotter cites, there is also proof of certification of classes spanning a ***larger*** geographical area than what Plaintiffs propose here. For example, in *LaBauve v. Olin Corp.*, the court approved a class definition identified as "a 'zone of contamination' extending approximately 20–25 kilometers [12.4 to 15.5 miles] around the Olin plant, representing the geographic area in which significant airborne mercury contamination could reasonably be expected to have been deposited by Olin's operations from 1957 to 1971." *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 663 (S.D. Ala. 2005). Plaintiffs' allegations[6] clearly support a

---

[5] Cotter contends the class definition must include key, PAA-specific terms, such as exposure to "excess radiation" "released… in excess of background" and in breach of "any federal standard owed to every member". ECF 167, p. 8-9. With the PAA rightfully removed, Cotter's arguments disappear and carry no weight.

[6] As set forth herein, these allegations include that "[d]espite the Landfill not being properly designed to receive radioactive materials, the Defendants disposed of and accepted hazardous, toxic, carcinogenic, radioactive wastes and spread them around the Landfill." SASC, ¶ 60. Plaintiffs have further alleged that the "data collected on and around the Landfill documents radioactive contamination of soil, water, and air" and cite to said data within their allegations. *Id.*, ¶ 67. Further, "[o]ther toxic and hazardous materials are expected to have been released via the air pathway, in addition to the radioactive materials. This phenomenon contributes to the damages complained of herein." *Id.*, ¶ 68. "Critical to the legacy of radioactive particles contaminating the homes and communities surrounding the Landfill is that: (A) The radioactive contamination has gone off-site; and (B) The off-site radioactive contamination has the fingerprint (or profile) of the hazardous, toxic, carcinogenic radioactive wastes Cotter purchased in 1969. *Id.*, ¶ 93. Moreover, Plaintiffs allege that the "radioactive wastes, which are hazardous, toxic, carcinogenic, that have polluted the Plaintiffs' Property and continue to threaten to further pollute Plaintiffs' Property match waste fingerprint (or profile) of the hazardous, toxic, carcinogenic radioactive wastes dumped in the Landfill." *Id.*, ¶ 107. These allegations

similar model, and the Complaint's class definitions reflect as much.

Nor are Plaintiffs forever bound to the current medical monitoring class boundaries, especially at this early juncture in the litigation. *See Rogowski v. State Farm Life Ins. Co.*, No. 4:22-CV-00203-RK, 2022 WL 19263361, at *3 (W.D. Mo. Sept. 14, 2022); *see also Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 383 (D. Colo. 1993) (The early evaluation of the appropriateness of exposure contours for a medical monitoring class, who lived in a defined area for a thirty-seven year period, "would necessitate a preliminary hearing on the merits as part of the class certification determination. Such preliminary hearing is not authorized by Rule 23 and was expressly repudiated by the Supreme Court in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974).").

Notably, the cases that Cotter directly cites for the proposition that the medical monitoring classes must be adequately defined ***now*** (*Thornburg* and *Brockman*) are decisions from the class certification stage—not the pleadings stage, like the stage this case is in. *Thornburg*, 2022 WL 4348475 at *5; *Brockman v. Barton Brands, Ltd.*, No. 3:06CV-332-H, 2007 WL 4162920, at *2 (W.D.Ky. Nov. 21, 2007). As this Court is aware, class definitions may generally be shaped, narrowed, and redefined at multiple stages of a class action. The definitions set forth in Plaintiffs' Complaint are therefore more than appropriate.

### iii. *Medical monitoring classes are clearly allowed and certifiable under Missouri law*

In its Response, Cotter also makes the incorrect statement that Plaintiffs would not have standing under Missouri law to seek medical monitoring, as that "requires exposure, which Plaintiffs here do not allege all class members suffered." ECF 167, p. 8. *Really*? Plaintiffs

---

clearly show that Plaintiffs' class definition is not overbroad in geography (or any other way for that matter). Even if Cotter disagrees with the allegations, these allegations must be taken as true for purposes of this motion.

9

specifically allege that "[a]s a direct and proximate result of Defendants' conduct, ***Plaintiffs and the Class are currently being subjected to radioactive waste contamination*** and will suffer irreparable harm if an injunction is not granted requiring Defendants conduct a total and complete cleanup of the contamination and to prevent and eliminate further contamination." SASC, ¶ 110 (emphasis added). Maybe Cotter was just skimming Plaintiffs' allegations when it prepared its motion.[7] This is toxic and radioactive exposure suffered by Plaintiffs and those they represent at the hands of Defendants, including Cotter.

Missouri and other courts that have approved medical monitoring claims recognize that "significant economic harm may be inflicted on those exposed to toxic substances, notwithstanding the fact that the physical harm resulting from such exposure is often latent." *Meyer ex rel. Coplin*, 220 S.W.3d at 716–17 (citing *Bower v. Westinghouse Electric Corp.*, 522 S.E.2d 424, 429 (W.Va. 1999); *In re Paoli Railroad Yard PCB Litigation,* 916 F.2d 829, 850 (3rd Cir. 1990)). Medical monitoring recognizes that "a defendant's conduct has created the need for future medical monitoring" and provides "a compensable item of damage when liability is established under traditional tort theories of recovery." *Id*. at 717. "Recovery for medical monitoring damages is thus consistent with a touchstone of Missouri law, the principle that a plaintiff is entitled to full compensation for past or present injuries caused by the defendant." *Id*. Moreover, specific to medical monitoring and class actions, if there are any doubts or challenges to the class and its definition, Missouri courts have held that at a "preliminary stage of the litigation, courts favor certification as the class may be refined as the case progresses." *State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597, 601 (Mo. 2012) (citing *Meyer ex rel. Coplin,* 220 S.W.3d at 715). Thus, not only are the present medical monitoring class allegations appropriate under Missouri

---

[7] For additional factual allegations set forth by Plaintiffs proving exposure for purposes of this motion, *see* Section II.A.i.

10

law, but Missouri law also shows Cotter's challenge is premature and should not be entertained.

      **iv.**    *Federal courts must undertake case-specific factual analyses in analyzing medical monitoring classes and their certification*

Cotter's motion must be denied on additional grounds as well: there is no one-size-fits-all for certification of medical monitoring classes under Rule 23 which would allow the Court to strike Plaintiffs' allegations as a matter of law, especially at this time. To the extent Cotter suggests otherwise, this is incorrect. Eighth Circuit and other caselaw is consistently and abundantly clear that the decision to certify a medical monitoring class is a case-by-case, fact-dependent analysis that must take all specific evidence, including expert opinions and proposals, into account.

For example, in the Eighth Circuit decision of *In re St. Jude Med., Inc.*,[8] the court's conclusion was expressly limited to "class certification of ***the*** medical monitoring class" as presented in that case. 425 F.3d 1116, 1123 (8th Cir. 2005) (emphasis added). Fact and case-specific inquiries followed. The *In re St. Jude Med., Inc.* medical monitoring class was based on mechanical heart valves, not toxic torts and radioactive exposure such as here. The *In re St. Jude Med., Inc.* decision was also reached ***after*** the certification decision of the trial court, not before. The same factual differences (and narrow holdings) hold true across the board. By way of further example, the court in *Hood v. Gilster-Mary Lee Corp.* (a medical monitoring case) intentionally stated that "this Order ***should be construed narrowly***" and limited to "certification of ***only*** the class as requested in Plaintiff's motion." No. 3:14-CV-05012-MDH, 2016 WL 5852866, at *8 (W.D. Mo. Sept. 30, 2016) (emphasis added). The Court specifically pointed out that different

---

[8] Cotter relies solely on the decision of *In re St. Jude Med., Inc.* in its arguments. *See* ECF 166-67. For the reasons stated herein, ***In re St. Jude Med., Inc.* is not dispositive**. It is, at best, instructive of some of the potential hurdles Plaintiff faces later at the class certification stage. For example, the *In re St. Jude Med., Inc.* decision was reached because, *inter alia*, whether monitoring was needed for each class member depended on "medical history, the condition of the patient's heart valves at the time of implantation, the patient's risk factors for heart valve complications, the patient's general health, the patient's personal choice, and other factors." 425 F.3d at 1122. This is clearly different than the present toxic exposure scenario and analysis.

11

facts, factors, and evidence would change the relevant class certification analysis: "For example, ***should Plaintiff choose to move to certify a class that included only Missouri residents…***". *Id*. Thus, while these decisions may be reintroduced later on, they are not dispositive here—especially not at the pleadings stage. They simply show the type of factual analyses that may become relevant at the class certification stage based on case-specific facts and evidence presented by Plaintiffs.

Courts have also taken medical monitoring classes and found (and certified) the very elements Cotter cites as lacking here: commonality, cohesiveness, and predominance. *See, e.g.*, *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 332 F.R.D. 202, 229 (N.D. Ill. 2019), *aff'd sub nom. Walker v. Nat'l Collegiate Athletic Ass'n*, No. 19-2638, 2019 WL 8058082 (7th Cir. Oct. 25, 2019) ("For the reasons provided, the Court certifies the Settlement Class and Subclasses" including specific medical monitoring relief with a $70,000,000.00 Medical Monitoring Fund and Program lasting 50 years); *O'Connor v. Boeing N. Am., Inc*., 184 F.R.D. 311 (C.D. Cal. 1998) (Granting certification of medical monitoring program by residents and workers near nuclear testing facilities); *In re Three Mile Island Litig.*, 87 F.R.D. 433 (M.D. Pa. 1980) (Granting certification to issue of plaintiffs' right to medical detection services to monitor for future manifestations of injury caused by nuclear incident); *Prantil v. Arkema France S.A.*, No. 4:17-CV-02960, 2022 WL 1570022, at *47 (S.D. Tex. May 18, 2022)[9] (Granting certification of a toxic contamination/exposure medical monitoring class, with medical surveillance and funding, wherein the court specifically discussed and found cohesiveness). Moreover, since "Missouri Rule 52.08 and Rule 23 of the Federal Rules of Civil Procedure, both governing class action lawsuits, are essentially identical," relevant Missouri cases (discussed above) provide further proof

---

[9] The decision in *Prantil* is especially known to Plaintiffs' counsel, as Mr. Thompson and Mr. Barney were counsel of record in that case as well. After appellate review and instruction by the Fifth Circuit, the court in *Prantil* issued a one-hundred- and eleven-page decision which included certification under Rule 23(b)(2).

that certification of a medical monitoring class is certainly more than possible. *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 75 (Mo. App. 2011); *see Meyer ex rel. Coplin*, 220 S.W.3d at 712.

Medical monitoring classes such as Plaintiffs' are clearly possible, proper, and are not prohibited by law as Cotter would have this Court believe. Even so, if the Court "has doubts regarding whether Plaintiffs can ultimately meet the standards set forth in Rule 23, at this stage in the proceedings these doubts must be resolved in favor of Plaintiffs." *Anglin*, 2018 WL 6434424 at *14; *and see Giesmann v. Am. Homepatient, Inc.*, No. 4:14CV1538 RLW, 2015 WL 3548803, at *2 (E.D. Mo. June 8, 2015) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007)). As a result, Cotter's motion must be denied.

### III. Determination of the Certifiability of Plaintiffs' Medical Monitoring Class is Premature at the Pleadings Stage

Again, even if the Court has doubts regarding whether Plaintiffs can ultimately meet the standards set forth in Rule 23, at this pre-discovery stage in the proceedings "these doubts must be resolved in favor of Plaintiffs." *Anglin*, 2018 WL 6434424 at *14. Cotter cannot escape this reality. In fact, similar to *Anglin*, in the cases cited by Defendant Cotter to support its arguments "the courts reached their decisions at the class certification stage after motion by the plaintiffs, ***not at the pleadings stage***." *Id*. (emphasis added). A similar result should follow in this action, and the Court should deny Cotter's motion. *Id*. "Further a court should not dismiss the complaint simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations." *Giesmann*, 2015 WL 3548803 at *2 (citing *Twombly*, 550 U.S. at 556).

The prematurity of striking class allegations at the pleadings stage was stated well by the court in *Rogowski*:

> Which of Plaintiffs' allegations may survive the class certification stage is a different question, but ***that issue is not properly before the Court at this time***.

13

2022 WL 19263361 at *3 (emphasis added). This is exactly why "judges in the Eighth Circuit… typically deny as premature motions to strike class allegations filed significantly in advance of any possible motion for class certification." *In re Folgers Coffee*, No. 21-2984-MD-W-BP, 2021 WL 7004991, at *4 (W.D. Mo. Dec. 28, 2021).

Again, motions under Rule 12(f) are "viewed with disfavor" because "striking a party's pleadings is an extreme measure." *Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000). Granting "[m]otions to dismiss class allegations at the motion to dismiss stage, let alone striking a matter from a pleading under Rule 12(f) generally," is even more of a "rare remedy." *Rogowski*, 2022 WL 19263361 at *3 (quoting *Legacy Gymnastics, LLC v. Arch Ins. Co.*, No. 2:20-cv-04214-NKL, 2021 WL 2371503, at *1 (W.D. Mo. June 9, 2021)). Plaintiffs genuinely believe that "at this juncture, the Court lacks the information necessary to determine with certainty that the certification of [the] class is impossible." *Id*. For example, Plaintiffs are not bound to the present medical monitoring class definitions, and "may present something different in a formal motion." *Id*. Or Plaintiffs "may choose to move for class certification on only certain Counts or legal theories, which may shift the balance between common and individual issues." *Id*.

Moreover, there has been zero expert testimony and discovery in this matter. These are just a few examples showing Cotter's prematurity in moving the Court to decide certification-specific issues right now. Cotter has not shown it will suffer any prejudice if allegations of a medical monitoring class (and class definitions) remain in the case. *See In re Folgers Coffee*, 2021 WL 7004991 at *4 (Noting that "Defendants have not shown any prejudice they will suffer if the nationwide class allegations remain in the case.").

Plaintiffs here are "entitled to 'add meat to [their] class allegations' in preparation for class certification." *Lilligren v. Midwest Commc'ns, Inc.*, No. CIV. 4-88-881, 1989 WL 165241, at *3

14

(D. Minn. Oct. 25, 1989) (quoting *Oxman v. WLS–TV*, 595 F.Supp. 557, 562 (N.D. Ill.1984)). If nothing else, then, Plaintiffs must be "allowed a reasonable time for discovery" to support their medical monitoring allegations, consistent with Eighth Circuit caselaw and other relevant class action decisions cited herein. *Id*.

## CONCLUSION

Cotter fails to satisfy its heavy burden of establishing Plaintiffs' class allegations should be stricken, let alone before Plaintiffs move for class certification. Cotter's motion must be denied.

Dated: May 1, 2023  Respectfully submitted,

KEANE LAW LLC

By:  */s/ Tanner A. Kirksey*
Ryan A. Keane, #62112
Tanner A. Kirksey #72882
7711 Bonhomme Ave., Suite 600
St. Louis, MO 63105
314-391-4700
314-244-3778 (fax)
ryan@keanelawllc.com
tanner@keanelawllc.com

JOHNSON GRAY, LLC
Anthony D. Gray, #51534
2705 Dougherty Ferry Rd., Suite 100
St. Louis, MO 63122
(314) 385-9500
agray@johnsongraylaw.com

COOPER LAW FIRM, L.L.C.
Celeste Brustowicz, LA Bar #16835, *PHV forthcoming*
Victor Cobb LA Bar #36830 *PHV, forthcoming*
1525 Religious Street
New Orleans, LA 70130
Phone: (504) 566-1558
cbrustowicz@sch-llc.com
vcobb@sch-llc.com

and

THOMPSON BARNEY
Kevin Thompson (WV Bar #5062) *PHV forthcoming*
David R. Barney, Jr. (WV Bar #7958) *PHV forthcoming*
2030 Kanawha Boulevard, East
Charleston, WV 25311
Telephone: 304-343-4401
Facsimile: 304-343-4405
Email:  kwthompson@gmail.com

*Attorneys for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing was served on all counsel of record via this court's ECF/PACER electronic filing notification system on May 1, 2023.

                                                         */s/ Tanner A. Kirksey*