IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN C. KITCHIN, JR., et al., *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> vs. <br><br> BRIDGETON LANDFILL, LLC, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No.  4:18-cv-00672-CDP |

**DEFENDANTS BRIDGETON LANDFILL, LLC, REPUBLIC SERVICES, INC., AND ALLIED SERVICES, LLC'S RESPONSE TO DEFENDANT COTTER CORPORATION (N.S.L.)'S MOTION TO DISMISS PLAINTIFFS' <u>SECOND AMENDED AND SUPPLEMENTAL CLASS ACTION COMPLAINT</u>**

This case is a putative class action brought by owners and present and former residents of property in an 11 square mile area around the West Lake Landfill (the "Landfill" or "West Lake").  Plaintiffs allege radioactive materials from the Manhattan Project were disposed at the Landfill, causing offsite damages allegedly arising out of nuclear material, which is preempted by the Price Anderson Act (the "Act" or "PAA").  The parties dispute whether the materials are source, special nuclear, or byproduct material to meet the definition of a nuclear incident and invoke the Act.  In their Second Amended and Supplemental Class Action Complaint ("Complaint"), Plaintiffs disclaim the Act's application; yet their factual allegations and the materials they cite allege property damage and increased risk of future bodily injury arising out of the hazardous and radioactive properties of uranium and thorium, which, by definition, in any amount, constitute source material.

Because Defendants Bridgeton Landfill, LLC ("Bridgeton"), Republic Services, Inc. ("Republic"), and Allied Services, LLC ("Allied") agree with Cotter Corporation (N.S.L.)

1

("Cotter") that the allegations in Plaintiffs' Complaint, and statements in the materials cited therein, make plain that the materials disposed at West Lake were source material, Bridgeton, Republic, and Allied join Cotter's Motion to Dismiss Plaintiffs' Complaint ("Cotter's Motion") on those limited grounds.[1]

## I. BACKGROUND

### A. Procedural Background and Parallel Litigation.

This case was filed against Bridgeton, Republic, and Allied in 2018 and was removed under the Class Action Fairness Act ("CAFA"). Class Action Petition, ECF No. 1-1; Notice of Removal, ECF No. 1. This Court remanded the case in May 2019, denying federal jurisdiction under both CAFA and the PAA. The Court held that, under the prior law of this district in *Strong v. Republic Services, Inc.*, 283 F.Supp. 3d 759 (E.D. Mo. 2017), and *Banks v. Cotter Corporation*, No. 4:18-CV-00624 JAR, 2019 WL 1426259 (E.D. Mo. Mar. 29, 2019), there cannot be a nuclear incident without an applicable license or indemnity agreement. Mem. Order (May 8, 2019), ECF No. 51 at 17-18. Bridgeton then appealed, and, in July 2021, the Eighth Circuit reversed and remanded for further proceedings under CAFA. *Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089, 1098 (2021), *cert denied*, 142 S. Ct. 1111 (2022).

Parallel to this case, counsel for Plaintiffs here filed the *Banks* case in 2018 alleging that property of those plaintiffs was contaminated with radioactive source material that Cotter purchased in 1969, including the material at issue in this case. *See, e.g., Banks, et al. v. Cotter Corporation*, No. 20-cv-01227, Class Action Petition, ECF No. 9, Second Amended Class

---

[1] Except as noted below, these Defendants join the following sections of Cotter's Memorandum in Support of its Motion to Dismiss Plaintiffs' Second Amended and Supplemental Class Action Complaint, ECF No. 165: Background Sections I. Plaintiffs' Allegations, II. Procedural History, III. Plaintiffs' Disavowal of the PAA.; and Argument Section I. Plaintiffs' Second Amended Complaint Should be Dismissed Because the PAA Preempts Their Entire Lawsuit and They Expressly Disclaim the PAA.

Action Petition, ECF No. 12, at ¶¶ 2, 44.  After removal, the *Banks* plaintiffs moved to sever claims and remand claims against third-party defendants who did not have an applicable license and indemnity agreement, which the district court granted, and Cotter appealed.  On appeal, the question presented before the Eighth Circuit was "[w]hether the district court erred in remanding . . . claims alleging widespread damage from radioactive materials for the Manhattan Project when the Price Anderson Act confers original jurisdiction over those claims." *Banks, et al. v. Cotter Corporation (N.S.L.)*, No. 21-1165, 2021 WL 1148782, Opening Brief of Appellant Cotter Corporation (N.S.L.) at 2.

    At the district court level, and in response to the *Banks* plaintiffs' appeal, Plaintiffs' counsel, on behalf of the *Banks* plaintiffs, raised the argument that the material was "mill tailings" and therefore fell outside the Act—the same argument that Plaintiffs attempt to advance here in their Complaint.  Reversing the district court's ruling, the panel for Eighth Circuit held that, "[c]ontrary to the district court's ruling, the PAA provides federal question jurisdiction over all 'nuclear incidents,' regardless of whether the defendant had an applicable license or indemnity agreement." *In re Cotter Corp. (N.S.L.)*, 22 F.4th 788, 793 (8th Cir. 2022) ("Opinion"). Because the panel for the Eighth Circuit overruled the district court decisions in both *Banks* and *Strong* on the grounds that a license or indemnity agreement is not required for the PAA to apply, the Opinion did not directly reach the question of the nature of the materials at the Latty Avenue Site.  *See, In re Cotter*, 22 F. 4th at 796.  However, the issue of the nature of materials was raised in briefing and oral argument, and the Eighth Circuit held broadly that a "'nuclear incident' means something that happens within the United States, causing bodily injury or property damage and arising out of nuclear material," and more specifically that "the PAA provides federal question jurisdiction over the claims against Cotter." *Id*.  In so holding, the

3

panel for the Eighth Circuit directed that the Price Anderson Act applies to the materials purchased by Cotter and stored at Latty Avenue, the same source of materials that were taken to West Lake and that are the basis for Plaintiffs' claims here. After the Eighth Circuit reversed the district court's decision in *Banks*, the same Plaintiffs' counsel here proposed to amend the *Banks* complaint to allege that the PAA *does* apply to the material in that case, including the material located at Latty Avenue, and affirmatively allege a public liability action pursuant to the PAA "because their claims arise from a nuclear incident or incidents at the SLAPs and/or Latty sites." *Banks, et al. v. Cotter, et al.*, Case No. 4:20-CV-01227- JAR, Third Amended and Supplemental Class Action Complaint, ECF No. 126-1 (Jan. 9, 2023) at ¶ 139.

    B.   **Plaintiffs' Allegations.**

In this case, Plaintiffs allege that, from 1942 to 1957, uranium ore was processed in downtown St. Louis City in association with the Manhattan Project. Compl. at ¶ 34. Plaintiffs characterize the Manhattan Project as "the U.S. research project designed to develop the first nuclear weapons." Compl. at ¶ 34. Specifically, Plaintiffs allege that, in the late 1940s, the Manhattan Project acquired a 21.7-acre tract of land near the Lambert airport to store radioactive materials from the uranium processing operations at a site in downtown St. Louis. Compl. at ¶ 36. Plaintiffs further allege that, in the 1960s, some of the radioactive materials stored at the airport site were moved to a storage site on Latty Avenue in Hazelwood, Missouri. Compl. at ¶¶ 37, 39. Plaintiffs allege that, in 1969, Cotter purchased and assumed responsibility for the radioactive materials that were stored at the Latty Avenue Site, but Plaintiffs deny that their claims "arise from the use of radioactive material at the Latty Avenue Site." Compl. at ¶ 40. Plaintiffs allege that included in the wastes that Cotter purchased were approximately 8,700 tons of leached barium sulfate residues ("LBSR"). Compl. at ¶ 42.

4

Plaintiffs further allege that, in 1973, Cotter mixed the 8,700 tons of LBSR with contaminated soil at the Latty Avenue Site and caused over 46,000 tons of the radioactive soil mixture to be dumped at the West Lake Landfill. Compl. at ¶ 47.  Plaintiffs allege that this same radioactive material is the cause of their alleged damages. Compl. at ¶¶ 47, 50.  Plaintiffs leave no doubt that their alleged damages arise out of "radioactive contamination of Plaintiffs' Property" based on the radioactive, toxic, or other hazardous properties of uranium and other covered materials.  Compl. at ¶¶ 108, 109, 154, 168, 178, 212.  Plaintiffs also allege that the specific radioactive materials at issue are the result of uranium processing operations at the downtown site, Compl. at ¶ 35, and the presence of thorium in the Landfill, alleging an "ingrowth of radium-226 from its parent thorium-230." Compl. at ¶ 33.

Yet, throughout their Complaint here, and pleading precisely the opposite of the allegations in the currently proposed *Banks* complaint, Plaintiffs disclaim application of the Act to their claims in this case: "Plaintiffs' claims do not fall within the scope of the Price Anderson Act." Compl. at ¶ 53.  Rather, Paragraphs 52 through 61 of Plaintiffs' Complaint consist of legal conclusions regarding the nature of the materials and Plaintiffs' legal theory that "The Atomic Energy Act and Price Anderson Act are Inapplicable."  Compl. at 13.

As depicted in the map below, an Exhibit to the deposition of Hamrick that Plaintiffs cite in their proposed Third Amended Complaint and Cotter cites in its Motion,[2] the materials that are the subject of this litigation and those that are the subject of the *Banks* litigation were located on the Latty Site from Cotter's purchase of the materials in 1969 until 1973.  How could it be that the *exact same materials* at issue in the *Banks* litigation and also in the *Kitchin* litigation, which

---

[2] Hamrick Deposition testimony is cited in Paragraphs 57 and 60 of Plaintiffs' Complaint.

5

both came from the Latty Site, could have different outcomes regarding applicability of the PAA?



ECF No. 168-24 at 5, Ex. 34 to Hamrick Deposition, July 26, 2019 at 3. Contrary to the allegations that the same Plaintiffs' counsel make on behalf of the *Banks* plaintiffs in that case, Plaintiffs here allege that the materials stored on the northern half of the Latty Avenue site are "source, special nuclear, or byproduct material" giving rise to a nuclear incident under the PAA, and the materials stored on the southern part of the property are not "source, special nuclear, or byproduct material," and the PAA does not apply.

    **C.   Cotter's Motion to Dismiss.**

        On March 16, 2023, Cotter filed a Motion to Dismiss Plaintiffs' Second Amended and Supplemental Class Action Complaint and Memorandum in Support, ECF. Nos. 164, 165

6

("Cotter's Motion"). Bridgeton agrees with most of the factual allegations in Cotter's Motion. However, Bridgeton, Republic, and Allied disagree with and deny several superfluous factual allegations referenced in Cotter's Memorandum in Support, and Bridgeton specifically disputes those facts in its Answer and Cross-Claim. These include:

- According to the Plaintiffs, the Landfill accepted the material knowing both that it was radioactive and that the Landfill was not permitted to receive it, Cotter's Motion, ECF No. 165 at 3;

- Plaintiffs' allegations and cited materials show that B&K, not Cotter, disposed of the material at the Landfill and that the Landfill accepted the material from B&K, Cotter's Motion, ECF No. 165 at 3; and,

- After Cotter allegedly mixed the LBSR with approximately 39,000 tons of soil at the Latty site and "caused it to be dumped" at the Landfill, the allegedly diluted mixture contained uranium and thorium at a concentration that fell out of licensing, Cotter's Motion, ECF No. 165 at 9.

These facts are irrelevant to Cotter's Motion, and should be disregarded, but are genuinely and specifically in issue, and are denied by Bridgeton, Republic, and Allied.

## II.   ARGUMENT

Plaintiffs' suit here is based on allegations of property damage and risk of bodily harm resulting from the radioactive properties of Manhattan Project nuclear materials and is a "nuclear incident" lawsuit under the Price Anderson Act. The Act governs any action in which "a party asserts that another party bears legal liability arising out of an incident in which the hazardous properties of radioactive material caused bodily injury, sickness, or property damage." *Controneo v. Shaw Envt'l & Infrastructure, Inc.*, 639 F.3d 186, 194 (5th Cir. 2011).

As the Eighth Circuit's decision in *In re Cotter* made clear, the Price Anderson Act provides federal question jurisdiction and preempts any state law claims "for any public liability action arising out of or resulting from a nuclear incident." 42 U.S.C. § 2210(n)(2). *See also, Halbrook v. Mallinckrodt, LLC*, 888 F.3d 971, 974 (8th Cir. 2018). The PAA defines "public

7

liability action" as "any suit asserting public liability," 42 U.S.C. § 2014(hh), which is then defined as "any legal liability arising out of or resulting from a nuclear incident . . . ." 42 U.S.C. § 2014(w).  A "nuclear incident" means "any occurrence, including an extraordinary nuclear occurrence, within the United States, causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material . . . ." 42 U.S.C. § 2014(q).  In short, the panel for the Eighth Circuit held that a nuclear incident is "something that happens within the United States, causing bodily injury or property damage and arising out of nuclear material." *In re Cotter*, 22 F.4th at 796.

    Based on the allegations in Plaintiffs' Complaint, the materials Plaintiffs cite therein, and binding precedent from the U.S. Court of Appeals for the Eighth Circuit in related litigation, this is a Price Anderson Act case.  Plaintiffs' only available cause of action is a public liability action under the PAA because: (A) Plaintiffs' allegations make plain that they claim property damage and risk of bodily harm based on the alleged hazardous, toxic, and radioactive properties of source material, as uranium or thorium in any amount is source material; and (B) the Eighth Circuit's decision in the related *In re Cotter* directs that the Price Anderson Act applies to the materials purchased by Cotter and stored at Latty Avenue, which counsel for Plaintiffs here now plead affirmatively as a "nuclear incident" on behalf of the *Banks* plaintiffs in their proposed Third Amended Complaint.

### A. Plaintiffs' Allegations Make Plain that They Claim Property Damage and Risk of Bodily Harm Based on the Alleged Hazardous, Toxic, and Radioactive Properties of Uranium or Thorium, and Uranium or Thorium in Any Amount is Source Material.

The Eighth Circuit has already determined that a license or indemnity agreement is not required for there to be an "occurrence" under the act, giving rise to public liability and the Act's broad federal preemption, converting an ordinary state common-law complaint into one stating a federal claim. *In re Cotter*, 22 F.4th at 796; *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 484, n. 6 (1999).  The only remaining issue is whether the injuries Plaintiffs allege arise out of or result from "the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material."  "Source material" means "(1) uranium, thorium, or any other material which is determined by the Commission . . . to be source materials; or (2) ores containing one or more of the foregoing materials," in concentrations set by the Nuclear Regulatory Commission (NRC). 42 U.S.C. § 2014(z).  Unlike subpart (2) of the definition of "source material," subpart (1) does not have a volume or concentration threshold. Rather, uranium or thorium, in any amount, constitutes source material under applicable regulations. *See,* 42 U.S.C. § 2014(z).  Based on the allegations in Plaintiffs' Complaint and the materials cited therein, Plaintiffs plead that their injuries arise out of the radioactive, toxic or hazardous properties of source material. *See also,* 10 C.F.R. § 40.4.

First, Plaintiffs allege property damage or loss of use of property and the risk of bodily harm.  In their Complaint, Plaintiffs allege that Plaintiffs John C. Kitchin's, Sharon Bishop's, Melissa Mitchell's, and the Bluegrass Lawncare of St. Louis properties ("Plaintiffs' Property") are contaminated by radioactive material.  Compl. at ¶ 101.  They further allege that such contamination will cause "irreparable harm" to their properties.  Compl. at ¶ 110.  Alleging causes of action in trespass, permanent nuisance, temporary nuisance, negligence, negligence per

9

se, and strict liability, Plaintiffs allege that their properties were contaminated with radioactive material, and they suffered injury or loss of use of their properties based on this alleged radioactive contamination.  *See*, Compl. at ¶¶ 145, 161, 173, 191, 198, 205.

Second, Plaintiffs allege that such damages arose out of the "hazardous, toxic, carcinogenic, radioactive" properties of the materials stored at Latty Avenue, some of which were finally disposed of at the West Lake Landfill.  Compl. at ¶¶ 39, 65.  Plaintiffs specifically cite the alleged "hazardous, toxic, carcinogenic, radioactive" properties of the materials stored at Latty, the materials disposed of at West Lake, and the alleged off-site contamination reaching their properties. Compl. at ¶¶ 39, 65, 93, 107.  Despite making the legal argument in their Complaint that Plaintiffs do not allege damage arising out of the radioactive, toxic, explosive or other hazardous properties of source, special nuclear, or byproduct material, Compl. at ¶ 55, Plaintiffs specifically allege the "hazardous, toxic, carcinogenic, radioactive" properties of the materials ten (10) times in their Complaint. Compl. at ¶¶ 61, 65, 93, 107, 144, 182-84, 197, 210.

Third, Plaintiffs' allegations of loss or damage to property arising out of or resulting from the radioactive, toxic, or other hazardous properties of the materials are specific to the source material deposited at the West Lake Landfill.  Source material includes at least "uranium or thorium, or any combination thereof, in any physical or chemical form."  10 C.F.R. § 40.4.  While Plaintiffs attempted to strip the words "uranium" or "thorium" from their Complaint to artfully plead around the true nature of the materials disposed at West Lake, their pleadings still make plain that they allege damages arising out of the hazardous or radioactive properties of source material.

Throughout Plaintiffs' Complaint, they allege that uranium ores were the original materials processed at the downtown St. Louis site and transported to the St. Louis Airport site,

10

to Latty Avenue, and ultimately to the West Lake Landfill. Compl. at ¶ 34-47. Plaintiffs specifically allege that a government contractor processed uranium ores as part of the Manhattan project in downtown St. Louis. Compl. at ¶ 1. Plaintiffs specifically allege that "the areas around the Landfill, including Plaintiffs' properties, are contaminated with the same radioactive wastes that Cotter purchased in 1969." Compl. at ¶ 6. Further, Plaintiffs allege uranium as the material that could cause their future bodily injuries, specifically alleging that the radioactive decay processes of uranium can cause injury: "[s]ome radiation energies, including the radiation from the decay of materials used in nuclear and atomic processes, such as uranium, have the ability to penetrate other material. When the "other material" that ionizing radiation passes through is human cells, it can cause damage within those cells, resulting in mutation in genetic material which can lead to cancer and other harms." Compl. at ¶ 26. Finally, Plaintiffs allege additional future risks based on EPA's description of the presence of thorium-230 at the Landfill, which Plaintiffs allege will increase. Compl. at ¶ 33. While they have tried, Plaintiffs here cannot plead around the allegations in the Complaint or statements in their cited materials, that the materials purchased by Cotter and disposed of at West Lake contained uranium and thorium, making them source material by definition.

      **B.**      **The Eighth Circuit's Decision in *In re Cotter* Directs that the Price Anderson Act applies to the Materials Purchased by Cotter and Stored at Latty Avenue, which the same Counsel for Plaintiffs Here Plead Affirmatively as a Nuclear Incident on behalf of the *Banks* Plaintiffs.**

Further, even if Plaintiffs had not admitted in their Complaint that the materials allegedly causing their damage include uranium and thorium—by definition source material—the Eighth Circuit considered arguments from counsel for these Plaintiffs on the nature of the radioactive materials generated from the St. Louis downtown site in the *In re Cotter* case and held that ". . . the PAA provides federal question jurisdiction over the claims . . . ." *In re Cotter*, 22 F.4th at

11

796. In reversing the district court decisions in both *Banks* and *Strong*, the Eighth Circuit clearly held that neither an indemnity agreement nor a source material license is required for an occurrence to constitute a nuclear incident. In addition, the panel for the Eighth Circuit held a broad interpretation of the term "nuclear incident" to include something that happens within the United States, causing bodily injury or property damage and arising out of nuclear material. *In re Cotter*, 22 F.4th at 796. While the Opinion did not specifically address whether the materials at issue in *Banks*, including those at Latty Avenue, constituted source, special nuclear, or byproduct material, the Eighth Circuit's Opinion directed that "the PAA provides federal question jurisdiction over the claims against Cotter and 'a district court has no discretion to remand a claim that states a federal question . . . .'" *In re Cotter*, 22 F.4th at 796. In so holding, the panel for the Eighth Circuit directed that the Price Anderson Act applies to the materials purchased by Cotter and stored at Latty Avenue, the same source of the materials that were taken to West Lake and are the basis for Plaintiffs' claims here.

Based on this unmistakable appellate directive that the PAA applies to the claims in *Banks*, including based on materials stored at Latty Avenue, counsel for Plaintiffs here filed a proposed Third Amended Complaint on behalf of the *Banks* plaintiffs, which affirmatively alleges a "public liability action" "because their claims arise from a nuclear incident or incidents at the SLAPs and/or Latty sites." *Banks, et al. v. Cotter, et al.*, Case No. 4:18-CV-01227 JAR, ECF No. 126-1 (Jan. 9, 2023). Here, through the allegations in their Complaint, Plaintiffs ask this Court to find that same materials that Cotter purchased and stored at the Latty Site have a distinct regulatory status: the materials left on Latty were allegedly source, special nuclear, or byproduct material and those transported to West Lake were not.

12

**C.     Plaintiffs Disavow Claims under the Act and Fail to Allege Key Elements of a Price Anderson Act Claim.**

Plaintiffs clearly disavow claims under the Price Anderson Act, which is their sole avenue for recovery.  *See,* Compl. at ¶¶ 52-61.  Thus, if the Court determines that the Price Anderson Act applies to this case, Plaintiffs fail to state a claim under that Act.  *See, e.g., Matthews v. Centrus Energy Corp.*, 15 F.4th 714, 721 (6th Cir. 2021) ("for claims arising from a nuclear incident, a plaintiff 'can sue under the [PAA] or not at all'"); *Controneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011) ("[A] plaintiff who asserts any claim arising out of a 'nuclear incident' as defined in the [Price Anderson Act] . . . 'can sue under the [Act] or not at all.'") (quoting *Nieman v. NILO, Inc.*, 108 F.3d. 1546, 1553 (6th Cir. 1997)); *In re Berg Litig.*, 293 F.3d 1127, 1132 (9th Cir. 2002) (the PAA provides "the exclusive means for pursuing claims" for nuclear incidents).

In addition, Bridgeton, Republic, and Allied agree with Cotter that Plaintiffs further fail to state a claim under the PAA because they fail to allege key elements of a PAA claim, including: (1) the defendants breached the levels permitted by federal regulation and so breached a federal standard of care; (2) the plaintiffs were exposed to radiation in excess of the normal background level of radiation in the environment; (3) the plaintiff has injuries; and (4) radiation was the cause of plaintiff's injuries. *See, e.g., In re TMI Litig.*, 67 F.3d 1103, 1119 (3d Cir. 1995), *cert. denied*, 516 U.S. 1154 (1996); *In re TMI Litig.*, 193 F.3d 613, 659 (3d Cir. 1999); *McClurg*, 933 F. Supp. 2d at 1187; *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF, 2017 WL 2929444, at *6 (E.D. Mo. July 7, 2017).  Because Plaintiffs allege no breach of any

federal standard owed to them by Bridgeton, Republic, or Allied and no specific levels of exposure caused by these Defendants' alleged conduct, their claims must be dismissed.[3]

### III.    RELIEF REQUESTED

Because Plaintiffs' claims are preempted by the Price Anderson Act, and Plaintiffs actively disclaim any cause of action pursuant to the Act and fail to plead key elements of the Act, their claims should be dismissed.

In the alternative, if the Court cannot determine applicability of the Price Anderson Act at this stage of the litigation, Bridgeton Landfill, LLC, Republic Services, Inc., and Allied Services, LLC request for efficiency that the Court grant a preliminary phase of fact and expert discovery, including *Daubert* and dispositive motions, on the applicability of the Price Anderson Act to Plaintiffs' claims.

---

[3] Bridgeton, Republic, and Allied agree with Cotter that Plaintiffs' threadbare allegation that "[e]xposures to radioactive wastes should be as low as is reasonably achievable" fails to meet the requirements of pleading a federal dose for a federal standard of care. Cotter's Motion, ECF No. 165 at 13-14. *See, McClurg*, 2015 WL 867455, at *7 (requiring a federal dose limit and alleged exceedance).

14

Dated: May 1, 2023               Respectfully submitted,


By:  /s/ Jessica K. Rosell
    William G. Beck    #26849(MO)
    Allyson E. Cunningham    #64802(MO)
    Jessica K. Rosell    #61247(MO)
    LATHROP GPM LLP
    2345 Grand Blvd., Ste. 2200
    Kansas City, MO  64108-2618
    Telephone: (816) 292-2000
    Fax: (816) 292-2001
    Email: william.beck@lathropgpm.com
    Email: allyson.cunningham@lathropgpm.com
    Email: jessica.rosell@lathropgpm.com

    Kayla A. Brewe    #69231(MO)
    LATHROP GPM LLP
    7701 Forsyth Blvd., Ste. 500
    Clayton, MO  63105
    Telephone: (314) 613-2800
    Fax: (314) 613-2801
    Email: kayla.brewe@lathropgpm.com

    ATTORNEYS FOR DEFENDANTS
    BRIDGETON LANDFILL, LLC, ALLIED
    SERVICES, LLC AND REPUBLIC
    SERVICES, INC.