UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN C. KITCHIN, JR., et al., *on behalf of themselves and all others similarly situated*, Plaintiffs, | ) | |
| v. | ) | No. 4:18 CV 672 CDP |
| BRIDGETON LANDFILL, LLC, et al., Defendants. | ) | |

**MEMORANDUM AND ORDER**

On February 1, 2024, I granted defendants' motion to dismiss plaintiffs' Second Amended and Supplemental Complaint, concluding that plaintiffs' exclusively state-law claims were preempted by the Price-Anderson Act (PAA) as the asserted facts showed that the claims constituted a "public liability action" that arose out of a "nuclear incident" as defined by the Act. I gave plaintiffs an opportunity to seek leave to amend their complaint, however, to properly assert a claim under the PAA. Plaintiffs filed their motion for leave to amend on February 22, 2024.[1] The Landfill defendants[2] opposed the motion.

[1] Plaintiffs filed an amended motion for leave on February 26, 2024, but only for the purpose of submitting an unredacted copy of their proposed Third Amended and Supplemental Complaint.

[2] Bridgeton Landfill, LLC; Republic Services, Inc.; and Allied Services, LLC.

Shortly after the motion to amend was fully briefed, I stayed this action pending appeal on a question raised in a related case[3] that was central to defendants' assertion here that plaintiffs' proposed amendment of their pleading was futile. All avenues of that appeal closed on May 18, 2026, when the United States Supreme Court denied certiorari in the related case. I therefore lifted the stay in this action and permitted the parties to file supplemental briefs on plaintiffs' motion for leave to file a Third Amended and Supplemental Complaint. Only plaintiffs and defendant Bridgeton Landfill, LLC, filed supplemental briefs.

Upon careful review of the parties' respective arguments and the present state of the law, I will grant plaintiffs leave to file their Third Amended and Supplemental Complaint.

## I. Relevant Background

The background of this litigation as well as the background and purpose of the PAA is thoroughly set out in my Memoranda and Orders entered May 8, 2019 (ECF 51) and February 1, 2024 (ECF 193) and will not be repeated here. I incorporate those backgrounds, however, as if fully set forth herein and will provide additional background as needed to address the parties' arguments.

In their proposed Third Amended and Supplemental Complaint, plaintiffs affirmatively allege a public liability action under the PAA arising out of a nuclear

---

[3] *Mazzocchio v. Cotter Corp.*, Case No. 4:22CV292 MTS (E.D. Mo.).

incident whereby defendants' alleged unlawful storage and release of radioactive materials contaminated and caused damage to plaintiffs' properties, including their use and enjoyment of the properties. As the PAA provides that "the substantive rules of decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs," 42 U.S.C. § 2014(ii),[4] plaintiffs invoke Missouri state law to provide the substantive bases for liability and corresponding relief, and specifically Missouri state law governing (1) Trespass, (2) Permanent Nuisance, (3) Temporary Nuisance, (4) Negligence, (5) Negligence Per Se, (6) Strict Liability/Absolute Liability, (7) Injunctive Relief seeking scientific and medical monitoring, (8) Civil Conspiracy, and (9) Punitive Damages. The named plaintiffs bring their PAA claim on behalf of themselves and putative class members comprising a Property Damage Subclass and a Medical Monitoring Subclass.

The Landfill defendants initially responded to plaintiffs' motion for leave to amend on March 7, 2024 (before the action was stayed) and argued that plaintiffs' renewed attempt to amend their complaint was futile because the proposed amended complaint failed to plead a standard of care based on federal dosage limits and, further, asserted claims for medical monitoring, punitive damages, and

[4] When plaintiffs filed their motion for leave and their proposed third amended complaint in February 2024, the definition of a public liability action and reference to applicable law were set out in § 2014(hh). When the ADVANCE Act of 2024 was signed into law on July 9, 2024, § 2014(hh) was redesignated as § 2014(ii).

strict liability that are inconsistent with and preempted by the PAA. Arguing that the proposed amended complaint could therefore not survive a motion to dismiss, the Landfill defendants asked that I deny plaintiffs' motion for leave to amend. Defendant Cotter Corporation (N.S.L.) did not respond to plaintiffs' motion.

In the meantime, the Eighth Circuit Court of Appeals had accepted an appeal in *Mazzocchio v. Cotter Corp.*, Case No. 4:22CV292 MTS (E.D. Mo.), on the district court's interlocutory order holding that federal nuclear dosage regulations did not provide the exclusive standard of care in a public liability action under the PAA. Given that the question of pleading federal dosage requirements was central to defendants' argument of futility here, I stayed this case pending that appeal. On October 30, 2024, the Eighth Circuit affirmed the district court's decision, holding that federal law does not preempt state standards of care in a public liability action. *Mazzocchio v. Cotter Corp.*, 120 F.4th 565 (8th Cir. 2024). The Supreme Court denied defendants' petition for writ of certiorari in that case on May 18, 2026.

I lifted the stay in this case on June 1, 2026, and permitted the parties to file supplemental briefs on plaintiffs' February 2024 motion for leave to file an amended complaint. In their supplemental brief, plaintiffs address all bases of futility that the Landfill defendants raised in their initial opposition to the motion to amend. For defendants' part, only Bridgeton Landfill filed a supplemental brief wherein it disagrees with the *Mazzocchio* decision and challenges the proposed

amended complaint's class action allegations and request for medical monitoring. No other defendant filed a supplemental brief.

## II. Discussion

Under Federal Rule of Civil Procedure 15(a)(2), the Court has discretion to grant leave to amend a complaint and should freely do so "when justice so requires." Denial of leave to amend is appropriate in limited circumstances where the motion to amend was filed in bad faith, with dilatory motive, or with undue delay; where leave to amend would be unduly prejudicial to the opposing party; or where amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018). An amendment is futile if it cannot withstand a Rule 12(b)(6) motion to dismiss. *Hillesheim*, 897 F.3d at 955.

In opposing plaintiffs' motion for leave here, defendants invoke Rule 12(b)(6) and argue that the proposed third amended complaint fails to state a claim and that amendment is therefore futile. My futility analysis is therefore guided by the legal standard that governs Rule 12(b)(6) motions to dismiss. *See Northland Parent Ass'n v. Excelsior Springs Sch. Dist. #40*, 571 F. Supp. 3d 1104, 1109 (W.D. Mo. 2021); *Mitchell v. Wells Fargo Co.*, No. 4:24 CV 377 CDP, 2024 WL 3580938, at *1 (E.D. Mo. July 30, 2024).

To survive Rule 12(b)(6) scrutiny, a complaint "must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). The requirement of facial plausibility means that the factual content of the complaint's allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678) (alteration in *Park Irmat*). I must liberally construe the complaint and grant all reasonable inferences in plaintiffs' favor. *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020). Conclusory allegations and legal conclusions couched as factual allegations are not taken as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 677-78.

A. Federal Dosing Standards

For the reasons set out in the Eighth Circuit's *Mazzocchio* opinion, I reject the Landfill defendants' assertion (and Bridgeton Landfill's reassertion) that plaintiffs must allege exposure above the federal nuclear dosage limit to state a claim under the PAA. Accordingly, to the extent defendants contend that plaintiffs' proposed third amended complaint fails to sufficiently allege that the contamination at issue exceeds federal dosing standards, that perceived failure does not render the amended complaint futile. *See generally Mazzocchio*, 120 F.4th 565.

B. Class Allegations

In their proposed third amended complaint, plaintiffs bring their PAA claim individually and on behalf of two putative classes: 1) the Property Damage Subclass, defined as "all Missouri citizens who currently own real property within the 11.0 square mile geographic region in the vicinity of the West Lake Landfill" with defined boundaries; and 2) the Medical Monitoring Class, defined as "all Missouri citizens who currently reside, or have resided since 1973, on a property" within that 11.0 square mile region. (ECF 199-1, Prop. Third Amd. Compl. at ¶¶ 134, 135.)

In its supplemental brief, Bridgeton Landfill challenges the class allegations, arguing that plaintiffs fail to allege actual contamination or injury to every parcel of land within the 11-square-mile putative class area. Bridgeton Landfill contends that mere existence of contamination "somewhere within the class area" or "some supposed stigma" are not enough to state a plausible classwide claim, and that plaintiffs must instead show parcel-by-parcel injury across the entire putative class. (ECF 231, Br. Landfill Oppos. Brief at p. 6.) Bridgeton Landfill also argues that a medical-monitoring claim cannot be maintained as a class action *per se*.

Upon review of the proposed amended complaint and the parties' respective arguments regarding the class allegations, I agree with plaintiffs that making a determinative ruling now on the sufficiency of those allegations would be

premature. As noted by the Eighth Circuit and repeatedly reinforced by this Court and others, "the propriety of class action status can seldom be determined on the basis of the pleadings alone." *Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977) (citation modified). *See also Giesmann v. American Homepatient, Inc.*, No. 4:14CV1538 RLW, 2015 WL 3548803, at *6 n.3 (E.D. Mo. June 8, 2015) ("The Court is not entertaining a motion to certify the class and finds these issues better left for a fully briefed and supported motion for class certification."); *McCullen v. Union Pac. R.R. Co.*, No. 19-00347-CV-W-ODS, 2019 WL 3456815, at *3 (W.D. Mo. July 31, 2019) (listing cases). Motions to dismiss class allegations should be met "with a great deal of skepticism," and dismissing class allegations prior to discovery and class certification proceedings is "rare" and "generally disfavored." *Miles v. Medicredit, Inc.*, 526 F. Supp. 3d 487, 494 (E.D. Mo. 2021). "Where the pleadings themselves do not conclusively show whether [Rule 23's class action] requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue." *Walker*, 563 F.2d at 921.

To the extent Bridgeton Landfill argues that medical-monitoring claims are not suitable for class actions regardless of the evidence presented, Missouri law holds otherwise in the context of toxic tort cases. *See Meyer ex rel. Coplin v. Fluor Corp.*, 220 S.W.3d 712, 719 (Mo. banc 2007); *Elsea v. U.S. Eng'g Co.,* 463

S.W.3d 409 (Mo. Ct. App. 2015). *Cf. Ratliff v. Mentor Corp.*, 569 F. Supp. 2d 926 (W.D. Mo. 2008) (distinguishing medical-monitoring claim for latent injuries in toxic tort cases versus garden variety products liability actions). While I am aware that, unlike the State of Missouri, the Eighth Circuit is "not nearly so welcoming of class actions seeking medical monitoring rights" as demonstrated by its decisions in *In re St. Jude Med., Inc.*, 425 F.3d 1116 (8th Cir. 2005) and *In re St. Jude Med., Inc.*, 522 F.3d 836 (8th Cir. 2008), *see Hood v. Gilster-Mary Lee Corp.*, No. 3:14-CV-05012-MDH, 2016 WL 5852866, at *2 (W.D. Mo. Sept. 30, 2016), the differences between this case and the *St. Jude* cases are significant enough to warrant a fuller development of the record here before foreclosing plaintiffs' opportunity to pursue a class claim for medical monitoring. Aside from the fact that the *St. Jude* cases themselves were decided on a developed record, I also note that *St. Jude* addressed the propriety of certifying a product-defect medical-monitoring class of more than 11,000 heart-implant recipients from 17 states with differing substantive state laws, whereas this case is limited to Missouri law involving only Missouri citizens within an 11-mile geographic area exposed to a toxic substance emanating from one source. In this circumstance, I conclude it would be better to address the issue of certifying a medical-monitoring class in this toxic tort case on a fully developed record rather than summarily dismissing the claim.

Construing the proposed third amended complaint in plaintiffs' favor as I must and taking its factual allegations as true, I conclude that the complaint asserts sufficient factual allegations to state plausible class action claims against the defendants. Instead of foreclosing the possibility of classwide relief at the initial pleading stage, I consider it more appropriate to determine the matter on a fully briefed motion for class certification after giving the parties an opportunity to conduct discovery and further develop the record on the relevant issues. *See Miles*, 526 F. Supp. 3d at 493-94.

C. Medical Monitoring – Bodily Injury

Aside from challenging the class allegations involving the Medical Monitoring Subclass, the Landfill defendants also argue that plaintiffs' request for medical monitoring – whether sought individually or on behalf of a class – fails because plaintiffs do not allege bodily injury, which defendants argue the PAA requires for such relief. But there is no such requirement in the PAA, and the plain language of the Act shows that state law governs whether that requested remedy is available. Because Missouri law does not require present bodily injury for a plaintiff to obtain medical monitoring as a remedy for being exposed to toxic substances, I reject defendants' argument that plaintiffs' request for medical monitoring here is futile.

In addition to seeking monetary relief for property damage, plaintiffs seek

injunctive relief in the form of scientific monitoring to evaluate the levels of radioactive contamination throughout the properties, provide clean-up of the contaminated properties, and provide medical testing as may be indicated by the scientific evaluations. Citing a science-based report from the Environmental Protection Agency, plaintiffs allege that exposure to radiation can cause damage to human cells that can lead to several bodily injuries, including cancer, damage to major organ systems, and genetic mutations that can be passed down to future generations. (ECF 199-1, Prop. Third Amd. Compl. at ¶¶ 38-42; *id*. at ¶ 38 n.8.) Plaintiffs also allege that given the latency of the biological effects of radiation, the adverse health conditions may take years to manifest and, further, that the risk of developing those conditions will continue far into the future given that the rate of radioactive decay will cause their properties to remain contaminated for thousands of years. Plaintiffs therefore request medical monitoring as a remedy to detect disease from their exposure to radioactive contamination on their properties, rather than to seek recovery for their enhanced risk of disease from that exposure.

Plaintiffs do not allege that they or any member of the putative class presently suffer bodily injury caused by radiation exposure. Defendants contend that that failure to allege present bodily injury dooms plaintiffs' request for medical monitoring as, defendants argue, the PAA requires bodily injury for an aggrieved party to obtain such relief. Applying the Eighth Circuit's plain-language

analysis of the PAA in *Mazzocchio*, I disagree.

In *Mazzocchio*, the Eighth Circuit reviewed the history of the PAA and its relationship with and reliance on state tort law in permitting a plaintiff to recover for injuries from a defined nuclear incident. 120 F.4th at 567-69. The court particularly noted the decision in *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984), where the United States Supreme Court explained that "Congress in enacting the PAA assumed that 'state tort law would apply' when someone was injured in a nuclear accident." *Mazzocchio*, 120 F.4th at 568 (quoting *Silkwood*, 464 U.S. at 252, 256). As the Supreme Court determined in *Silkwood*, that applicable state tort law includes state-law remedies, "in whatever form they might take[.]" *Silkwood*, 464 U.S. at 256.

The *Mazzocchio* court observed that Congress amended the PAA after the Supreme Court decided *Silkwood* and that, while those amendments included a limitation on a plaintiff's ability to recover punitive damages, "Congress did not repudiate the Court's understanding of the role that state tort law plays in a public liability action." *Mazzocchio*, 120 F.4th at 568. "In fact, Congress approved it," *id.*, as expressly articulated in 42 U.S.C. § 2014(ii):

> A public liability action shall be deemed to be an action arising under section 2210 of this title, and the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section.

Quoting the Tenth Circuit, the Eighth Circuit observed that under § 2014(ii), "normal state law principles continue to govern unless they conflict with the rules found in § 2210." *Mazzocchio*, 120 F.4th at 569 (quoting *Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1095 (10th Cir. 2015)). Accordingly, unless the state law at issue conflicts with § 2210, state law controls. To consider whether the substantive state law at issue conflicts with *other* provisions of the PAA relating to public liability actions would be to disregard the plain statutory text of § 2014(ii). That I cannot do. *Mazzocchio*, 120 F.4th at 569.

Missouri law permits future medical monitoring in the setting of a tort theory of recovery seeking reasonably necessary diagnostic testing to detect latent injuries or diseases that may develop as a result of exposure to toxic substances. *Meyer*, 220 S.W.3d at 716-17; *Elsea*, 463 S.W.3d at 417. Because "a physical injury requirement is inconsistent with the reality of latent injury and with the fact that the purpose of medical monitoring is to facilitate the early diagnosis and treatment of latent injuries caused by exposures to toxins," a present physical injury is not required to obtain medical monitoring as a remedy for exposure to toxic substances. *Meyer*, 220 S.W.3d at 718.[5] Defendants do not cite any

[5] Missouri is not alone in this regard. *See, e.g.*, *Bell v. 3M Co.*, 344 F. Supp. 3d 1207 (D. Colo. 2018) (Colorado law); *Baker v. Saint-Gobain Performance Plastics Corp.*, 232 F. Supp. 3d 233 (N.D.N.Y. 2017) (New York law); *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424 (W. Va. 1999) (West Virginia law). *See also In re Philips Recalled CPAP, Bi-Level PAP, & Ventilator Prods. Litig.,* No. 2:21-MC-1230, 2023 WL 7019667, at *2 (W.D. Pa. Sept. 28, 2023) (listing

provision of 42 U.S.C. § 2210 of which this Missouri law runs afoul, and my careful reading of § 2210 reveals none. As noted by the Supreme Court, the state tort law that applies to injuries from a nuclear incident includes state-law remedies "in whatever form they might take." *Silkwood*, 464 U.S. at 256. As future medical monitoring without requiring present bodily injury is a form of remedy available under Missouri tort law for exposure to toxic substances and is not inconsistent with § 2210, it applies to this public liability action arising under the PAA.[6]

I am aware that other federal courts have held that medical monitoring is not available under the PAA absent bodily injury. *See*, *e.g.*, *June v. Union Carbide Corp.*, 577 F.3d 1234 (10th Cir. 2009); *In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986 (9th Cir. 2008); *In re Berg Litig.*, 293 F.3d 1127 (9th Cir. 2002). I am also aware that I reached the same conclusion nine years ago in *Dailey v. Bridgeton Landfill, LLC*, when I dismissed the medical-monitoring/medical-testing claim under the PAA because it did not allege bodily injury. 299 F. Supp. 3d 1090, 1102-03 (E.D. Mo. 2017) (citing *In re Berg*, 293 F.3d at 1132-33). But with the Eighth Circuit's explicit direction in *Mazzocchio* that the plain text of §

---

thirteen States and the District of Columbia as not requiring proof of present physical injury to seek medical monitoring) (subsequent history omitted).

[6] Indeed, § 2210 itself recognizes an injured party's potential recovery for latent injuries that may not be discovered until a later time. *See* 42 U.S.C. § 2210(i)(2)(C), (o)(1)(c). Notably, despite § 2210's limitation on certain forms of recovery, *e.g.*, § 2210 (q) (costs for precautionary evacuations), (r) (lessor liability), (s) (punitive damages), there is no articulated limitation for latent injuries not yet discovered or a requirement that a party suffer a present bodily injury in order to obtain a remedy for such injuries.

2014(ii) controls the extent to which state tort law governs a public liability action, and the Supreme Court's guidance regarding the applicability of state tort law remedies in such actions, I must "take a path different" from those other cases. *Cf. Mazzocchio*, 120 F.4th at 569-70 (disagreeing with their sister circuits' interpretation of § 2014(ii) regarding the role state tort law plays in a public liability action). As Missouri state tort law does not require a present physical injury for a plaintiff to obtain medical monitoring as a remedy for exposure to toxic substances, and that law is not inconsistent with the provisions of § 2210, the absence of a claim of present bodily injury does not foreclose an injured party's request to obtain medical monitoring as relief under the PAA.[7]

D. Strict Liability and Punitive Damages

For similar reasons, plaintiffs' strict-liability theory and claim for punitive damages are not futile.

As noted in *Mazzocchio*, the Supreme Court in *Silkwood* was "clear that state-law standards of negligence and strict liability would continue to play a role in compensating those injured in a nuclear accident, notwithstanding the federal government's occupation of the field of nuclear safety." *Mazzocchio*, 120 F.4th at 568. As Missouri law considers "strict liability an appropriate principle for

[7] As the plaintiffs here allege damage to their property to bring their PAA claim within the definition of a "nuclear incident" under § 2014(q), I need not and do not decide whether a stand-alone medical-monitoring claim without a separate assertion of property damage or bodily injury is sufficient to meet the statutory definition of a "nuclear incident."

activities generating radioactive emissions," *Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d 854, 870 (Mo. Ct. App. 1985) (citation modified), and that law is not inconsistent with any provision of § 2210, plaintiffs' seeking to apply Missouri's substantive law of strict liability for defendants' alleged release of radioactive material that contaminated their properties is not futile.

Likewise, neither the PAA in general nor § 2210 in particular prohibits punitive damages. In their initial objection to plaintiffs' motion to amend, the Landfill defendants concede that "the United States Supreme Court held in *Silkwood v. Kerr-McGee Corporation* that the statutory language at the time of that decision did not preempt state punitive damages awards[.]" (ECF 200, Defts' Resp. to Pltfs' Amd. Mot. for Lve. at p. 9.) They argue, however, that the PAA was amended after that decision in response to *Silkwood's* observation regarding the availability of punitive damages. *Id.* That is true. But the relevant amendment does not affect plaintiffs' claim for punitive damages here. Included among the 1988 amendments to the PAA was the addition of § 2210(s), which provides that "[n]o court may award punitive damages in any action with respect to a nuclear incident or precautionary evacuation *against a person on behalf of whom the United States is obligated to make payments under an agreement of indemnification covering such incident or evacuation*." (Emphasis added.) As no defendant here has an indemnification agreement with the United States, §

2210(s)'s limitation on punitive damages does not apply. *See* S. REP. 100-218, 12, 1988 U.S.C.C.A.N. 1476, 1487 ("The bill clarifies that an award of punitive damages is prohibited if the award would result in any obligation of the United States to make any payments for public liability. . . . The bill does not otherwise affect current law regarding punitive damages."). As no other limitation on punitive damages appears in § 2210, it cannot be said that Missouri law on punitive damages is inconsistent with the provisions of § 2210 in the circumstances of this case. Plaintiffs' claim for punitive damages is therefore not futile.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' Motion for Leave to File Third Amended Complaint Pursuant to Court Order [194], as amended [199], is **GRANTED.** Defendants are reminded of their obligation to respond to plaintiffs' Third Amended and Supplemental Complaint within the time prescribed by the federal rules.

Catherine D Perry

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 10th day of September, 2026.