**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN C. KITCHIN, JR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BRIDGETON LANDFILL, LLC, et al.,<br><br>Defendants. | Case No. 4:18-cv-00672-CDP |

**DEFENDANT COTTER CORPORATION (N.S.L.)'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED AND SUPPLEMENTAL COMPLAINT**

RILEY SAFER HOLMES & CANCILA LLP
Brian O. Watson, #68678MO
Lauren E. Jaffe, #6316795IL
Shaun Zhang, #6327966IL
1 South Dearborn St., Ste 2200
Chicago, Illinois 60603
(312) 471-8700 (main)
(312) 471-8701 (fax)
bwatson@rshc-law.com
ljaffe@rshc-law.com
szhang@rshc-law.com
docketdept@rshc-law.com

Jennifer Steeve, #308082CA
100 Spectrum Center Drive, Suite 650
Irvine, CA 92618
(949) 359-5515 (main)
(312) 471-8701 (fax)
jsteeve@rshc-law.com
docketdept@rshc-law.com

**ATTORNEYS FOR DEFENDANT COTTER CORPORATION (N.S.L.)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ... 1

BACKGROUND AND RELEVANT PROCEDURAL HISTORY ... 2

LEGAL STANDARD ... 3

ARGUMENT ... 4

I. Plaintiffs' State-Law-Based "Subpart" Claims Are Preempted by Federal Law. ... 4

A. The PAA Converts Plaintiffs' State Law Claims into a Single Federal Action. ... 4

B. The Federal Regulations Displace State Standards for Federal Licensees—Like Cotter—Under Field Preemption Principles. ... 5

C. The PAA Expressly Preempts No-Fault Liability in Public Liability Actions. ... 8

D. Plaintiffs' "Subpart" Claims Also Fail Under Ordinary Conflict Preemption. ... 8

II. Plaintiffs Have Not Pled Facts Sufficient to Establish a PAA Claim Against Cotter. ... 12

A. Plaintiffs Fail to Plead That Cotter Breached the Standard of Liability. ... 12

B. Plaintiffs Fail to State a Claim for Bodily Injury Under the PAA. ... 13

C. Plaintiffs Fail to State a Claim for Property Damage Under the PAA. ... 13

III. Plaintiffs' "Subpart" Claims (A)–(E), (G)–(I) Independently Fail Under State Law. ... 13

CONCLUSION ... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Chevron Corp.*,
960 F. Supp. 2d 761 (E.D. Tenn. 2012) ... 5, 10, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 3, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 3

*In re Berg Litig.*,
293 F.3d 1127 (9th Cir. 2002) ... 5, 11, 13

*Brock v. Dunne*,
637 S.W.3d 22 (Mo. 2021) ... 9

*Brown v. Medtronic, Inc.*,
628 F.3d 451 (8th Cir. 2010) ... 7

*Cook v. Rockwell Int'l Corp.*,
618 F.3d 1127 (10th Cir. 2010) ... 13

*Cotroneo v. Shaw Env't & Infrastructure, Inc.*,
639 F.3d 186 (5th Cir. 2011) ... 5

*In re Cotter Corp. (N.S.L.)*,
22 F.4th 788 (8th Cir. 2022), *cert. denied*, 143 S.Ct. 422 (2022) ... 2

*Cotter Corp., N.S.L. v. United States*,
127 F.4th 1353 (Fed. Cir. 2025), *cert. denied*, 146 S.Ct. 2678 (2026) ... 11

*Dailey v. Bridgeton Landfill, LLC*,
299 F. Supp. 3d 1090 (E.D. Mo. 2017) ... 5

*El Paso Nat. Gas Co. v. Neztsosie*,
526 U.S. 473 (1999) ... 4, 5

*Elmore v. Owens-Illinois, Inc.*,
673 S.W.2d 434 (Mo. 1984) ... 8

*State ex rel. Ely v. Bandall*,
299 S.W. 155 (1927) ... 14

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
458 U.S. 141 (1982)....................8

*Frank v. Envtl. Sanitation Mgmt., Inc.*,
687 S.W.2d 876 (Mo. 1985) ....................8, 14

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000).................... *passim*

*Golden v. CH2M Hill Hanford Grp., Inc.*,
528 F.3d 681 (9th Cir. 2008) ....................13

*In re Hanford Nuclear Rsrv. Litig. v. E.I. DuPont de Nemours & Co.*,
534 F.3d 986 (9th Cir. 2008) ....................11

*Hines v. Davidowitz*,
312 U.S. 52 (1941)....................8

*Int'l Broth. of Elec. Workers v. Monsees*,
335 S.W.3d 105 (Mo. Ct. App. 2011)....................8

*Jackson v. Wiersema Charter Serv., Inc.*,
No. 4:085-CV-0027-JCH, 2009 WL 1310064 (E.D. Mo. May 11, 2009)....................15

*June v. Union Carbide Corp.*,
577 F.3d 1234 (10th Cir. 2009) ....................11, 12

*Junior Coll. Dist. of St. Louis v. City of St. Louis*,
149 S.W.3d 442 (Mo. 2004), *as modified on denial of reh'g* (Nov. 23, 2004) ....................14

*Kerr-McGee Corp. v. Farley*,
115 F.3d 1498 (10th Cir. 1997) ....................5

*Kurns v. R.R. Friction Prods. Corp.*,
565 U.S. 625 (2012)....................5, 7

*Looney v. Hindman*,
649 S.W.2d 207 (Mo. banc 1983)....................13

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ....................7

*Martin v. St. Louis Cnty. Cir. Ct.*,
No. 4:22-cv-00608-SRC, 2022 WL 2643512 (E.D. Mo. July 8, 2022)....................15

*Martinez v. Kilroy Was Here LLC*,
551 S.W.3d 491 (Mo. Ct. App. 2018)....................10

*Matthews v. Centrus Energy Corp.*,
15 F.4th 714 (6th Cir. 2021) ....................................................................................5, 12

*Mazzocchio v. Cotter Corp.*,
No. 4:22-CV-292-MTS, 2023 WL 5831960 (E.D. Mo. Sept. 8, 2023), *aff'd*,
120 F.4th 565 (2024), *cert. denied*, 146 S.Ct. 2655 (2026) ........................................... *passim*

*Mazzocchio v. Cotter Corp*.
120 F.4th 565 (8th Cir. 2024) ........................................................................................ *passim*

*McClurg v. Mallinckrodt, Inc.*,
No. 4:12-cv-00361-AGF, 2017 WL 2929444 (E.D. Mo. July 7, 2017) .................................12

*McClurg v. MI Holdings, Inc.*,
933 F. Supp. 2d 1179 (E.D. Mo. 2013)...........................................................................5, 10, 13

*McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*,
131 F. Supp. 3d 352 (W.D. Pa. 2015), *aff'd*, 869 F.3d 246 (3d Cir. 2017) .........................9, 10

*Nieman, v. NLO, Inc.*,
108 F.3d 1546 (6th Cir. 1997) ..............................................................................................5

*O'Conner v. Commonwealth Edison Co.*,
13 F.3d 1090 (7th Cir. 1994) ................................................................................................5

*Pet Quarters, Inc. v. Depository Tr. and Clearing Corp.*,
559 F.3d 772 (8th Cir. 2009) ............................................................................................3, 4

*Pinares v. Raytheon Techs. Corp.*,
No. 10-80883-CIV-MARRA, 2023 WL 2868098 (S.D. Fla. Apr. 10, 2023)............................9

*Roberts v. Fla. Power & Light Co.*,
146 F.3d 1305 (11th Cir. 1998) ..............................................................................................5

*Secure Energy, Inc. v. Coal Synthetics, LLC*,
No. 4:08-cv-17196-JCH, 2010 WL 1691184 (E.D. Mo. Apr. 27, 2010)................................15

*Steward v. Honeywell Int'l, Inc.*,
469 F. Supp. 3d 872 (S.D. Ill. 2020)..................................................................................5, 10

*In re TMI Litig.*,
193 F.3d 613 (3d Cir. 1999)..................................................................................................12

*In re TMI Litig.*,
67 F.3d 1103 (3d Cir. 1995), *cert. denied*, 516 U.S. 1154 (1996) ..........................................12

*Williams v. Bayer Corp.*,
541 S.W.3d 594 (Mo. Ct. App. 2017)....................................................................................15

**Rules**

Fed. R. Civ. P. 10(c) .......... 7

Rule 12(b)(6) .......... 15

**Statutes**

Price-Anderson Act .......... *passim*

42 U.S.C. 5801, 5841–42 .......... 7

42 U.S.C. § 2012(i) .......... 9, 10

42 U.S.C. § 17373 .......... 10

42 U.S.C. § 2014(ii) .......... 7, 8

42 U.S.C. § 2014(q) .......... 11, 12

42 U.S.C. §§ 2210(n)(1) .......... 8

42 U.S.C. § 2210(s) .......... 11

**Other Authorities**

Atomic Energy Act .......... 12

Missouri Clean Water Act .......... 10, 11

Missouri Solid Waste Management Law .......... 10

Mo. Ann. Stat. § 644.016(21) .......... 11

Mo. Ann. Stat. § 644.051.1 .......... 11

10 C.F.R. § 20.105(a) (1960) .......... *passim*

10 C.F.R. § 20.106 (1964) .......... *passim*

10 C.F.R. § 40.13(a) .......... 8

19 C.S.R. § 20-10.020(E) .......... 15

Mo. Code Regs Ann. Tit. 19 § 20-10.040 .......... 10

Mo. Code Regs Ann. Tit. 10 § 80-3.010 .......... 11

## INTRODUCTION

Plaintiffs allege that their properties have been damaged from radioactive material in the vicinity of Bridgeton Landfill and West Lake Landfill ("Landfill"). This Court dismissed Plaintiffs' Second Amended Complaint for failing to assert the sole type of claim allowed here—a public liability action under the Price-Anderson Act ("PAA"). Plaintiffs now use the new chance offered by their Third Amended Complaint to wedge their nine previously dismissed state law claims into a PAA public liability action as "Subparts." However, as the Supreme Court, Eighth Circuit, this Court, and other federal courts have explained, the PAA converts all state law claims into a single public liability action—not repackaged state-law "Subparts."

This motion does not ask the Court to disregard its prior ruling on Plaintiffs' motion to amend (ECF 240) or the Eighth Circuit's ruling in *Mazzocchio v. Cotter Corporation*. 120 F.4th 565 (8th Cir. 2024). Rather, Cotter asks this Court to answer the critical, dispositive question left undecided in those decisions as to Cotter, a federal licensee whose conduct was explicitly governed by federal nuclear dosage regulations. In *Mazzocchio*, the Eighth Circuit addressed only whether such federal regulations provide the *exclusive* standard of care in a public liability action for *all defendants*. *Id*. at 566–67. The Eighth Circuit concluded that such regulations did not and that there was "at least some room" for state law, which will not always be preempted. *Id*. at 570. But just as state law will not always be preempted, it will not always control.

Indeed, the Eighth Circuit did not disturb Judge Schelp's opinion that "if defendants can identify federal statutes, regulations, or other binding safety standards that controlled their alleged conduct . . . the court would determine whether those federal laws preempt state law, including state-tort law." *Mazzocchio v. Cotter Corp.*, No. 4:22-CV-292-MTS, 2023 WL 5831960, at *11 (E.D. Mo. Sept. 8, 2023), *aff'd*, 120 F.4th 565 (2024), *cert. denied*, 146 S.Ct. 2655 (2026). Because Cotter was a federal licensee, federal law preempts state law *as to Cotter*

based on field preemption, among other preemption principles not addressed in *Mazzocchio*.

As such, Plaintiffs' "Subpart" claims remain preempted by the PAA and the federal regulations that governed Cotter. Plaintiffs' Third Amended Complaint does not plausibly allege all elements of a public liability action against Cotter. And, PAA and preemption aside, Plaintiffs have failed to plead several of their state-law "Subpart" claims even under state law.

**BACKGROUND AND RELEVANT PROCEDURAL HISTORY**

Plaintiffs allege that in 1969, Cotter purchased radioactive materials stored at a site located on Latty Avenue in Hazelwood, Missouri ("Latty"), which were created by a government contractor as part of the Manhattan project. TAC ¶ 8. These materials allegedly included 8,700 tons of leached barium sulfate residues ("LBSR"), containing approximately 7 tons of uranium. *Id.* ¶ 10. Plaintiffs allege that in 1973, Cotter mixed the LBSR with soil at Latty and "caused [it] to be dumped" at the Landfill, resulting in alleged contamination of Plaintiffs' properties. *Id.* ¶ 59. While operating between 1969 and 1973, Cotter was a federal licensee, holding a source material license issued by the Atomic Energy Commission (AEC). *See* ECF 74-1 (copy of license). Plaintiffs allege no Cotter conduct at the Landfill or after 1973.

Plaintiffs originally filed this lawsuit in Missouri state court against several Landfill affiliates (the "Landfill Defendants"). ECF 1-1. After removing to federal court, the Landfill Defendants filed a Third-Party Complaint against Cotter. ECF 74. After the Eighth Circuit affirmed that "the PAA provides federal question jurisdiction over the claims against Cotter" and "the PAA applies broadly to any event causing bodily or property damage from nuclear material," *In re Cotter Corp.*, *(N.S.L.)*, 22 F.4th 788, 795–96 (8th Cir. 2022), *cert. denied*, 143 S.Ct. 422 (2022), Plaintiffs sued both Cotter and Landfill Defendants in a Second Amended and Supplemental Complaint, but declared the PAA was "inapplicable." ECF 151.

The Court dismissed the Second Amended Complaint because, as Plaintiffs' claims arose

out of a nuclear incident, they could be "pursued under *only* the PAA." ECF 193 at 3 (emphasis added). Plaintiffs then moved to amend their complaint, which only the Landfill Defendants opposed on the grounds that the proposed amendments failed to plead a standard of care based on federal dosage limits. ECF 199, 200. The Court rejected the Landfill Defendants' argument that Plaintiffs must allege exposure above the federal nuclear dosage limit to state a claim under the PAA, reasoning that the Eighth Circuit in *Mazzocchio* had held "that federal law does not preempt state standards of care in a public liability action." ECF 240 at 4, 6. But the Landfill Defendants did not discuss how *Mazzocchio* applies to Cotter.

The Court's reading of *Mazzocchio* did not address Cotter's arguments in this current motion. While *Mazzocchio* held that PAA has room for both federal and state law, 120 F.4th at 568, the Eighth Circuit did not disturb the principle that "ordinary preemption principles" would apply in a public liability action, such that "the applicable standard of care depends on the facts of each case and the claims asserted against each defendant." 2023 WL 5831960, at *11 (E.D. Mo. Sept. 8, 2023), *aff'd*, 120 F.4th 565 (2024), *cert. denied*, 146 S.Ct. 2655 (2026). The Eighth Circuit left open the question of whether Cotter's alleged conduct, which occurred at Latty under a federal license, should be exclusively governed by federal nuclear dosage regulations.

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted). "'[N]aked assertion[s]' devoid of 'further factual enhancement'" and "formulaic recitation of the elements of a cause of action will not do." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Congress may "preempt state law by defining the scope of preemption, or impliedly where congressional intent to supersede state law may be inferred." *Pet Quarters, Inc. v.*

*Depository Tr. and Clearing Corp.*, 559 F.3d 772, 780 (8th Cir. 2009). "Implied preemption exists where a federal statutory or regulatory scheme is so pervasive in scope that it occupies the field, leaving no room for state action—this is termed field preemption." *Id.* "Implied preemption also occurs where state law has not been completely displaced but is superseded to the extent that it conflicts with federal law—this is known as conflict preemption." *Id.*

**ARGUMENT**

The PAA creates a single federal action for any liability arising out of a nuclear incident—not nine state-law "Subparts" claims. First, Plaintiffs' purported "Subparts" should be dismissed under express, field, and conflict preemption principles, because their liability standards conflict with the PAA and the federal regulations that controlled Cotter's alleged conduct. Second, the Third Amended Complaint should be dismissed because it fails to satisfy the necessary elements of a PAA claim. Third, Plaintiffs have failed to plead state-law claims for their "Subparts," which should be dismissed independently of PAA and preemption grounds.

**I. Plaintiffs' State-Law-Based "Subpart" Claims Are Preempted by Federal Law.**

As the Court found in *Mazzocchio*, "the standard of care to be used in a PAA action must be made on a case-by-case basis and determined under ordinary preemption principles." *Mazzocchio*, 2023 WL 5831960, at *1. "[I]f defendants can identify federal statutes, regulations, or other binding safety standards that controlled their alleged conduct with respect to the nuclear properties during the relevant time period, the court would determine whether those federal laws preempt state law, including state-tort law." *Id.* at *11.

**A. The PAA Converts Plaintiffs' State Law Claims into a Single Federal Action.**

As the Supreme Court stated, the PAA's "pre-emptive force . . . is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim." *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 484 n.6 (1999); *see also* ECF 193, Order Dismissing 2d Am.

& Suppl. Compl. (quoting *El Paso*, 526 U.S. at 484). The PAA converts Plaintiffs' claims into "a 'public liability action' . . . arising under federal law." *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 194 (5th Cir. 2011); *see also Dailey v. Bridgeton Landfill, LLC*, 299 F. Supp. 3d 1090, 1097 (E.D. Mo. 2017) (Perry, J.) (PAA "'transforms into a federal action' any public liability action.") (quoting *El Paso*, 526 U.S. at 484).

Plaintiffs admit, as they must, that their claim is a "public liability action" arising out of a "nuclear incident." TAC ¶¶ 7, 144–150. As this Court and others across the country recognize, "for claims arising from a nuclear incident, a plaintiff can sue under the [PAA] as amended, or not at all." *Matthews v. Centrus Energy Corp.*, 15 F.4th 714, 721–22 (6th Cir. 2021). Plaintiffs' lawsuit is therefore governed solely and expressly by the PAA, and their "Subpart" claims should be dismissed because, to the extent Plaintiffs seek to assert them separately from their PAA claim, they legally fail. *See id.*; *see also In re Berg Litig.*, 293 F.3d 1127, 1132 (9th Cir. 2002); *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1306 (11th Cir. 1998); *Nieman, v. NLO, Inc.*, 108 F.3d 1546, 1552–53 (6th Cir. 1997); *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir. 1997); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1100 (7th Cir. 1994); *Steward v. Honeywell Int'l, Inc.*, 469 F. Supp. 3d 872, 880 (S.D. Ill. 2020); *Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 766–68 (E.D. Tenn. 2012); *Mazzocchio*, 2023 WL 5831960, at *4; *McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1186–87 (E.D. Mo. 2013) ("*McClurg I*").

### B. The Federal Regulations Displace State Standards for Federal Licensees—Like Cotter—Under Field Preemption Principles.

Where federal law sets the standard for federal licensees in a field, there can be "no exception for state common-law duties and standards of care." *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 637 (2012); *see Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 872 (2000). Indeed, Judge Schelp acknowledged in *Mazzocchio* that the federal limits in 10 C.F.R. §§ 20.105(a) (1960) and 20.106 (1964) were "binding safety standards that controlled [Cotter's]

alleged conduct with respect to the nuclear properties during the relevant time period." 2023 WL 5831960, at *11. Because Plaintiffs assert state-law "Subpart" claims that impose differing standards from the ones set by federal law, which occupy the entire field of nuclear safety regulation for licensees such as Cotter, the "Subparts" claims should be dismissed.

In granting leave to file the Third Amended Complaint, this Court found that "to the extent [Landfill] defendants contend that plaintiffs' proposed third amended complaint fails to sufficiently allege that the contamination at issue exceeds federal dosing standards, that perceived failure does not render the amended complaint futile." ECF 240 at 6. However, this Court's ruling that "federal law does not preempt state standards of care in a public liability action" did not have the opportunity to address the arguments Cotter advances here. *Id*. at 4. Therefore, the Court's application of *Mazzocchio* in that order should not extend beyond the Landfill Defendants' limited arguments that were before the Court. *Id.*

Again, *Mazzocchio* addressed whether "federal nuclear dosage regulations provide the exclusive standard of care in a public liability action" based on field preemption of all state standards for *all defendants*, regardless of whether they were federal licensees, government contractors, or unregulated third parties. 120 F.4th at 566, 569–70. The Eighth Circuit decided no, Congress left "at least some room" for state law, and "state-law standards" would "continue to play a role" in public liability actions and therefore were not preempted in all circumstances. *Id.* at 568.

The Eighth Circuit did not address—as this Court should—whether the liability standard for *federal licensees like Cotter* is established by the federal nuclear regulations that governed the licensee's conduct[1]—an issue that was not raised by Landfill Defendants in opposing

[1] Cotter preserves the arguments it made before the Eighth Circuit and the Supreme Court for further review. *See, e.g.*, Br. for the U.S. as Amicus Curiae at 19–21, *Cotter Corp. v. Mazzocchio*,

Plaintiff's motion to amend the complaint. Because those regulations directly governed Cotter, then under 42 U.S.C. § 2014(ii), the PAA displaces any overlapping state standard within the field of nuclear safety for Cotter. *See Kurns*, 565 U.S. at 637.

**Undisputed federal licensee.** It is undisputed that Cotter operated under an AEC source material license. *See* ECF 74-1 (copy of license). Cotter's involvement with the radioactive material at Latty occurred between 1969, when Cotter allegedly "purchased and assumed responsibility" for it, and 1973, when Cotter allegedly "caused" a mixture of remaining LBSR and approximately 39,000 tons of soil to be disposed in the Landfill. TAC ¶¶ 8–11, 52–59. As a federal licensee, Cotter's activities were governed by 10 C.F.R. §§ 20.105(a) and 20.106, which expressly permitted radiation releases to members of the general public in whole body doses of up to 0.5 rem per individual per year and of specific radionuclides up to set limits, respectively.

**No alleged landfill conduct.** Plaintiffs allege their properties were harmed by nuclear material that migrated from the Landfill, not Latty, and Plaintiffs allege no conduct by Cotter at the Landfill. TAC ¶¶ 17, 98–104, 116–123. Plaintiffs' allegations and cited materials show that Cotter's handling of the material ended when the soil mixture left Latty, that B&K Construction Company, not Cotter, disposed of the material at the Landfill, and that the Landfill accepted the mixture from B&K. *Id.* ¶ 59; ECF 169-3, Hamrick Dep. I, at 153, 170, 178; ECF 169-5, at 6.[2]

In addition, Plaintiffs affirm that whether the material at the Landfill was "licensed or regulated" and whether it "fall[s] within the jurisdiction of the Nuclear Regulatory Commission" (NRC),[3] TAC ¶ 14, is a question determined by concentration levels of radioactive material set

No. 24-1001 (U.S. April 2026) (recommending "further percolation" of Cotter's arguments).

[2] Material "incorporated within a complaint are considered part of the pleadings, and courts may look at such documents 'for all purposes'." *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459–60 (8th Cir. 2010) (citing Fed. R. Civ. P. 10(c)); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 n.3 (5th Cir. 2009) (considering "depositions found in the complaint and its attached exhibits").

[3] The NRC succeeded the AEC, which licensed Cotter. *See* 42 §§ U.S.C. 5801, 5841–42.

forth by ***federal regulations***, which only reinforces that the field has been preempted for federal licensees. The Third Amended and Supplemental Complaint fails to plausibly allege that Cotter could have violated its governing federal regulations (*i.e.*, 10 C.F.R. §§ 20.105(a), 20.106) for licensed material (*see* 10 C.F.R. § 40.13(a) (exempting material with less than .05% of source material from certain licensing requirements). Thus, Plaintiffs' PAA claim against Cotter fails.

**C. The PAA Expressly Preempts No-Fault Liability in Public Liability Actions.**

The PAA provides that the NRC, and not each state, may require defendants in specific circumstances involving *extraordinary* nuclear occurrences to "waive [] any issue or defense as to conduct of the claimant or fault." 42 U.S.C. §§ 2210(n)(1). Thus, the PAA *only* allows the NRC to impose no-fault liability in conditions not present here, as there was no extraordinary nuclear occurrence. This limitation disposes of Plaintiffs' trespass, nuisance, and strict liability claims, which are inconsistent with Section 2210(n)(1)[4] and thus expressly preempted by 42 U.S.C. §§ 2014(ii), which disallows, in a public liability action, reliance on state law that "is inconsistent with the provisions of such section." Count I, Subparts (A), (B), (C), and (F) should therefore be dismissed under express preemption.

**D. Plaintiffs' "Subpart" Claims Also Fail Under Ordinary Conflict Preemption.**

The state-law Subparts Plaintiffs seek to apply to Cotter also fail under ordinary conflict preemption principles because they seek to impose standards that "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in the PAA. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982); *see also Geier*, 529 U.S. at 883–86; *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). Congress enacted the PAA *both* "to

[4] Missouri law does not require a showing of fault for trespass, *see Int'l Broth. of Elec. Workers v. Monsees*, 335 S.W.3d 105, 108–09 (Mo. Ct. App. 2011), nuisance, *see Frank v. Envtl. Sanitation Mgmt., Inc.*, 687 S.W.2d 876, 880 (Mo. banc 1985), or strict liability, *Elmore v. Owens-Illinois, Inc.*, 673 S.W.2d 434, 438 (Mo. 1984).

protect the public and to encourage the development of the atomic energy industry, in the interest of the general welfare and the common defense and security." 42 U.S.C. § 2012(i). Here, complying with the relevant state standards would either frustrate the PAA's objectives or make it impossible for Cotter to further Congressional purposes, particularly for no-fault standards, which would require Cotter to not operate at all. *See Geier*, 529 U.S. at 873–74 (ordinary preemption principles implicate both federal-state conflicts where state law "stands as an obstacle" and those where it is "impossible" to comply with both state and federal law).

**Count I, Subparts (A), (B), (C), (F) – Trespass, permanent nuisance, temporary nuisance, strict liability.** As established in n.4, Missouri does not require a showing of fault for trespass, nuisance, or strict liability. Holding Cotter liable regardless of whether it complied with its license or its governing federal regulations is an obstacle to Congress's goals of public protection and encouraging development of the atomic energy industry. *See Geier*, 529 U.S. at 866, 879, 881–82 (state law "no airbag" tort claim conflicts with and is preempted by federal regulation that imposed a gradual phase-in). These Subparts are therefore preempted under conflict preemption and should be dismissed. *See also Pinares v. Raytheon Techs. Corp.*, No. 10-80883-CIV-MARRA, 2023 WL 2868098, at *8 (S.D. Fla. Apr. 10, 2023) (no-fault claims are inconsistent with the PAA); *McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*, 131 F. Supp. 3d 352 (W.D. Pa. 2015), *aff'd*, 869 F.3d 246 (3d Cir. 2017).

**Count I, Subpart (D) – Negligence.** A negligence claim requires a "legal duty on the part of the defendant to conform to a certain standard of conduct to protect others against unreasonable risks." *Brock v. Dunne*, 637 S.W.3d 22, 29 n.8 (Mo. 2021). Plaintiffs attempt to impose duties on Cotter beyond the federal standards that governed Cotter's conduct, including the duty: (a) "to ensure the safe and legal handling, storage, and disposal of the radioactive wastes in order to prevent significant injury to property and persons" and (b) "to ensure that the

radioactive wastes were safely disposed of at an appropriate facility." TAC ¶¶ 200–201. Plaintiffs do not identify any laws, regulations, or guidelines applicable to the "safe" or "legal" handling, storage, and disposal of the radioactive wastes.

While the Eighth Circuit noted in dicta that compliance with federal safety standards may not end a negligence inquiry, it did not decide whether preemption applied to Cotter as a federal licensee. *See Mazzocchio*, 120 F.4th at 569. Imposing these state-law duties on Cotter would obstruct one of Congress's objectives in the PAA, which was to encourage private investment in the civilian nuclear industry by providing a predictable legal framework. *See Geier*, 529 U.S. at 866, 879, 881–82; 42 U.S.C. §§ 2012(i), 17373. Therefore, Subpart (D) should be dismissed.

**Count I, Subpart (E) – Negligence per se.** A negligence per se claim under Missouri law requires only "[t]he violation of a statute, which is shown to be the proximate cause of the injury." *Martinez v. Kilroy Was Here LLC*, 551 S.W.3d 491, 496 (Mo. Ct. App. 2018). The liability standard in such claims is drawn from the statutes that Plaintiffs allege were violated—here, the Missouri regulations for Protection Against Ionizing Radiation, Missouri Solid Waste Management Law and Regulations, Missouri Clean Water Act, Missouri Air Conservation regulations, and eight federal regulations "to the extent applicable." TAC ¶¶ 217–219.

The duties under the Missouri regulations for Protection Against Ionizing Radiation are inconsistent with Cotter's duties under the federal regulations and cannot govern public liability against Cotter. *See, e.g.*, Mo. Code Regs Ann. Tit. 19 §§ 20-10.040 (referring to separate "maximum permissible dose" limits); *Geier*, 529 U.S. at 866, 879, 881–82; *McClurg I*, 933 F. Supp. 2d at 1186–87 (dismissing state law claims); *Steward*, 469 F. Supp. 3d at 880 (same); *McMunn*, 131 F. Supp. 3d at 365–66 (same); *Adkins*, 960 F. Supp. 2d at 766–68 (same).

The Missouri Solid Waste Management Law and Regulations clearly conflict with the federal regulations applicable to Cotter because the federal regulations *allow* some, limited,

amounts of concentrations above natural background level, while the Missouri Solid Waste Management Law and Regulations completely prohibit disposing both regulated hazardous waste and radioactive materials. *Compare* 10 C.F.R. § 20.106 & Appx. B (1964) (detailing limits for "concentrations in air and water above natural background") *with* Mo. Code Regs Ann. Tit. 10 § 80-3.010(2)(B)(2)(A)–(B) ("types of excluded waste at the landfill" include "regulated hazardous waste" and "radioactive materials"); *Geier*, 529 U.S. at 866, 879, 881–82.

The Missouri Clean Water Act likewise conflicts with the federal regulations governing Cotter. *Compare* 10 C.F.R. § 20.106 & Appx. B (1964) (setting limits for "concentrations in air and water above natural background") *with* Mo. Ann. Stat. § 644.051.1 (prohibiting "pollution of any waters of the state"), *and* Mo. Ann. Stat. § 644.016(21) ("pollution" includes "discharge of any . . . radioactive . . . substance into any waters of the state as will or is reasonably certain to create a nuisance or render such waters harmful, detrimental or injurious to public health, safety or welfare[.]"); *Geier*, 529 U.S. at 866, 879, 881–82. Thus, Subpart (E) should be dismissed.

**Count I, Subpart (G) – Injunctive relief.** Plaintiffs' requested relief, including medical monitoring, is inconsistent with the PAA because the PAA requires a claim for bodily injury, not merely future potential harm. *See* 42 U.S.C. § 2014(q); *In re Hanford Nuclear Rsrv. Litig. v. E.I. DuPont de Nemours & Co.*, 534 F.3d 986, 1009 (9th Cir. 2008) (affirming dismissal of medical monitoring claims); *June v. Union Carbide Corp.*, 577 F.3d 1234, 1248 (10th Cir. 2009) (same); *In re Berg Litig.*, 293 F.3d at 1133 (same). Nor do Plaintiffs tie their request for "testing" and "clean up" to any standard, let alone one the PAA imposes. Subpart (G) should be dismissed.

**Count I, Subpart (I) – Punitive damages.** The PAA precludes punitive damages against Cotter because, contrary to this Court's earlier finding, ECF 240 at 16, the United States is obligated to indemnify Cotter with respect to this nuclear incident, which the Federal Circuit recently clarified. 42 U.S.C. § 2210(s); *Cotter Corp., N.S.L. v. United States*, 127 F.4th 1353,

1370, 1373 (Fed. Cir. 2025), *cert. denied*, 146 S.Ct. 2678 (2026) (holding, with respect to Cotter's same alleged conduct, that Cotter sufficiently alleged entitlement to PAA indemnity). Thus, Subpart (I) should be dismissed.

## II. Plaintiffs Have Not Pled Facts Sufficient to Establish a PAA Claim Against Cotter.

The PAA provides a single federal claim to remedy two types of injuries—bodily injury or property damage, which Plaintiffs must allege or not sue at all. 42 U.S.C. § 2014(q); *see June*, 577 F.3d at 1250; *Matthews*, 15 F.4th at 728. For either, Plaintiffs must plead four elements: (1) Cotter breached the liability standard by releasing radiation in excess of levels permitted by the governing federal regulations; (2) Plaintiffs were exposed to, or their properties damaged by, this radiation released by Cotter in excess of the normal background radiation level in the environment; (3) Plaintiffs have bodily or property injuries; and (4) the radiation Cotter released caused those injuries. *See In re TMI Litig.*, 67 F.3d 1103, 1119 (3d Cir. 1995), *cert. denied*, 516 U.S. 1154 (1996); *In re TMI Litig.*, 193 F.3d 613, 659 (3d Cir. 1999); *McClurg v. Mallinckrodt, Inc.*, No. 4:12-cv-00361-AGF, 2017 WL 2929444, at *6 (E.D. Mo. July 7, 2017). Plaintiffs have failed to plead these elements, and their entire public liability action should be dismissed.

### A. Plaintiffs Fail to Plead That Cotter Breached the Standard of Liability.

As noted above in Section I(B), Cotter's activities were governed by 10 C.F.R. §§ 20.105(a) (1960) and 20.106 (1964). Yet, Plaintiffs allege no exposure level, time, place, or any other fact pertaining to Cotter's alleged breach of the standard owed to them. Instead, Plaintiffs make a general allegation that "[i]f the radioactive materials dumped at the Landfill were licensed and regulated by the Atomic Energy Act, Cotter is in violation of 10 C.F.R. § 20.105 and 20.106 because they released radiation into unrestricted areas in the environment in excess of levels permitted by those regulations." TAC ¶ 108. Such conclusory allegations do not satisfy the required breach element. *See Adkins*, 960 F. Supp. 2d at 772–73 (E.D. Tenn. 2012)

(PAA claim dismissed for conclusory pleading of breach of PAA standard of care); *McClurg I*, 933 F. Supp. 2d at 1187 (similar). Because Plaintiffs fail to plead plausible allegations that Cotter breached the standard of care, their PAA claim should be dismissed.

### B. Plaintiffs Fail to State a Claim for Bodily Injury Under the PAA.

Despite Plaintiffs' conclusions about the alleged radiation on their properties "above background," Plaintiffs do not allege any *bodily injury* or any *personal exposure* to radiation that Cotter—or any defendant—allegedly released. *See* TAC ¶¶ 17–20, 29, 114–115. Thus, the Complaint fails to state each element of a PAA bodily injury claim and should be dismissed.

### C. Plaintiffs Fail to State a Claim for Property Damage Under the PAA.

Plaintiffs allege that their properties have radiation "above background," which they claim has caused diminution of value, loss of use and enjoyment, and annoyance and discomfort. *See, e.g.*, TAC ¶¶ 29–30, 115. But the only facts Plaintiffs plead to support their contention that radiation beyond "background" caused these alleged injuries are allegations about the *potential* health risks allegedly associated with exposure to radiation, *see, e.g.*, TAC ¶¶ 91–97; 237–238. Taken together, the only reasonable inference is that Plaintiffs believe their properties have been damaged because of alleged health risks from radiation exposure. *See id.* ¶¶ 237–38.

But a property damage claim under the PAA requires a showing of actual damage or loss of use, not fear of exposure. *See Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1140–42 (10th Cir. 2010). At best, that claim is an incognizable emotional injury. *In re Berg. Litig.*, 293 F.3d at 1132 ("the [PAA] does not reach purely emotional injuries"); *Golden v. CH2M Hill Hanford Grp., Inc.*, 528 F.3d 681, 683–84 (9th Cir. 2008). Thus, Plaintiffs' property damage claims fail.

## III. Plaintiffs' "Subpart" Claims (A)–(E), (G)–(I) Independently Fail Under State Law.

**Count I, Subpart (A) – Trespass.** A "trespass" is a "*direct* physical interference with the person or property of another." *Looney v. Hindman*, 649 S.W.2d 207, 212 (Mo. banc 1983).

Plaintiffs allege that Cotter *could not have* directly interfered with their property—Plaintiffs allege Cotter's conduct ended in 1973, and Plaintiffs does not—and cannot—allege that Cotter owned or handled the material from the Landfill. TAC ¶ 59; ECF 169-3, at 153, 170. Therefore, because any contamination from the Landfill to Plaintiffs' property could not have occurred directly from Cotter, Plaintiffs' trespass claim (Subpart (A)) against Cotter should be dismissed.

**Count I, Subparts (B), (C) – Permanent and Temporary Nuisance.**

To claim nuisance, Plaintiffs must allege "the unreasonable, unusual, or unnatural use *of one's property* so that it substantially impairs the right of another to peacefully enjoy his property." *Frank*, 687 S.W.2d at 880 (citation omitted) (emphasis added). Fatal to Plaintiffs' nuisance claims is that Plaintiffs do not allege that Cotter owned any land. *See id.; State ex rel. Ely v. Bandall*, 299 S.W. 155, 157 (1927) ("nuisance must be brought against the owner of the fee"). Therefore, these Subpart claims should be dismissed.

**Count I, Subpart (D) – Negligence.** Cotter cannot be held to owe a duty to Plaintiffs who entered the scene after Cotter's alleged conduct ended in 1973. Nor can Cotter be held responsible for B&K's conduct in transporting the materials and the Landfill Defendants' alleged conduct in accepting materials and spreading them over a large area as daily cover. *See* TAC ¶¶ 61, 127–28 (defining Plaintiffs in connection with allegedly affected property *since 1973*); ECF 169-3, Hamrick Dep. I, at 153, 170, 178 (B&K conduct); *see also Junior Coll. Dist. of St. Louis v. City of St. Louis*, 149 S.W.3d 442, 450 (Mo. 2004), *as modified on denial of reh'g* (Nov. 23, 2004) (no duty to plaintiff relating to defects arising *after* the defendant's alleged conduct).

**Count I, Subpart (E) – Negligence per se.** This claim fails for four reasons. First, Plaintiffs do not allege any Cotter conduct at the Landfill, much less any that could implicate each of the cited Missouri laws. Second, the Missouri regulations for Protection Against Ionizing Radiation do not apply to Cotter because the Missouri regulations expressly exempt

federal licensees. 19 C.S.R. § 20-10.020(E) (exempting the "use of radioactive sources licensed by the [NRC] to installations in Missouri"). Third, this claim fails to identify any rule of the Missouri Air Conservation Commission that Cotter allegedly violated, much less *how* it was violated. Fourth, Plaintiffs' bare allegation that "Defendants violated" a list of eight federal regulations "to the extent applicable," with no allegations on how Cotter violated each, TAC ¶ 218–19, does not meet the federal pleading standards. *See Iqbal*, 556 U.S. at 678.

**Count I, Subparts (G), (I) – Injunctive relief, punitive damages.** These Subparts should be dismissed because under Missouri law, there is no independent cause of action for injunctive relief, *Secure Energy, Inc. v. Coal Synthetics, LLC*, No. 4:08-cv-17196-JCH, 2010 WL 1691184, at *3 (E.D. Mo. Apr. 27, 2010), or punitive damages, *Jackson v. Wiersema Charter Serv., Inc.*, No. 4:085-CV-0027-JCH, 2009 WL 1310064, at *3 (E.D. Mo. May 11, 2009).

**Count I, Subpart (H) – Civil conspiracy.** Missouri does not recognize an independent cause of action for "civil conspiracy." *Williams v. Bayer Corp.*, 541 S.W.3d 594, 612 (Mo. Ct. App. 2017). Because Plaintiffs' civil conspiracy claim is derived from their other deficient state law claims, *see* TAC ¶ 245, this claim, too, should be dismissed. Plaintiffs also do not allege any facts to support the purported conspiracy: they do not explain who among the defendants made any agreement, the nature of the agreement, or when it was reached. "A complaint setting forth only vague, conclusory, or general allegations that the defendants engaged in a conspiracy cannot withstand a Rule 12(b)(6) motion to dismiss." *Martin v. St. Louis Cnty. Cir. Ct.*, No. 4:22-CV-00608-SRC, 2022 WL 2643512, at *4 (E.D. Mo. July 8, 2022).

## CONCLUSION

For these reasons, Cotter respectfully requests that the Court dismiss Plaintiffs' Third Amended and Supplemental Class Action Complaint against Cotter.

Dated: October 27, 2026

Respectfully submitted,

*<u>/s/ Brian O. Watson</u>*
RILEY SAFER HOLMES & CANCILA LLP
Brian O. Watson, #68678MO
Lauren E. Jaffe, #6316795IL
Shaun Zhang, #6327966IL
1 South Dearborn St., Ste 2200
Chicago, Illinois 60603
(312) 471-8700 (main)
(312) 471-8701 (fax)
bwatson@rshc-law.com
ljaffe@rshc-law.com
szhang@rshc-law.com
docketdept@rshc-law.com

Jennifer Steeve, #308082CA
100 Spectrum Center Drive, Suite 650
Irvine, CA 92618
(949) 359-5515 (main)
(312) 471-8701 (fax)
jsteeve@rshc-law.com
docketdept@rshc-law.com

**ATTORNEYS FOR DEFENDANT COTTER CORPORATION (N.S.L.)**

**CERTIFICATE OF SERVICE**

I certify that on October 27, 2026, these papers were filed through the CM/ECF system, which will automatically serve an electronic copy upon all counsel of record.

Respectfully submitted,

*/s/ Brian O. Watson*
Brian O. Watson, #68678MO